# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

STEVEN J. PALANGE ,

for himself and as parent of KP

*PLAINTIFF*                                    C.A NO.1:19-cv-00340-JJM-PAS

v.

Michael Forte, Margarita Palange, Sandra Lanni, Richard E. Updegrove Jr.,
Tanya Gravel, Lois Iannone, Ronald Pagliarini, Peter Neronha, Jean
Maggiacomo, Courtney E. Hawkins, Tyler Technologies(TT), TT President and
CEO Lynn Moore, TT President Courts and Justice Division Rusty Smith,
Associate Director of Child Support Services Sharon Santilli,  Deputy Director,
External Affairs Yvette Mendez,  Paul Suttel Chief Justice Rhode Island
Supreme Court,  Carol Malaga Family Court Stenographer.
DEFENDANTS.

## A SUPPLEMENTAL AMENDED COMPLAINT

This amended complaint keeps all parts of the verified amended complaint in its entirety

except that the claim for injunctive relief is withdrawn.  It supplements the complaint with

additional facts, claims, parties and exhibits.

## PARTIES

Plaintiff.  I am Steven Palange,  the plaintiff, in this case, the father of K.P, a minor child, and

citizens of Rhode Island. I am pro se in this matter. Defendants  Michael Forte is the

Chief Judge of the Rhode Island Family Court and resides in Rhode Island,

Margarita Palange is a resident of California and at all relevant times was a

resident of Rhode Island, Sandra Lanni is an Associate Judge in the Rhode

Island Family Court, Richard E. Updegrove Jr Is a Rhode Island Family Court

attorney and a resident of Rhode Island., Tanya Gravel is an attorney practicing

in family court and was at all relevant times the attorney for me, Lois Iannone is

the Guardian Ad Litem of K.P (a minor child) my daughter and appointed by the

family court to investigate and report to the court what are the best interest of

KP, Ronald Pagliarini is the Chief Court Administrator of the Rhode Island

Family Court, Peter Neronha is the Attorney General for Rhode Island, Jean

Maggiacomo is a Deputy Clerk of the Rhode Island Supreme Court, Courtney E.

Hawkins is the Director of Rhode Island Department of Human Services, Tyler

Technologies is a company from Plano, Texas that delivers Rhode Island

computerized systems for court operations and child support operations, Tyler

Technologies President and CEO Lynn Moore from Plano Texas, Tyler

Technologies President Courts and Justice Division Rusty Smith from Plano,

Texas,  Associate Director of Child Support Services Sharon Santilli,  Deputy

Director, External Affairs Yvette Mendez,  Paul Suttel is the Chief Judge of The

Rhode Island Supreme Court,  Carole Malaga is a court reporter in the Rhode

2

Island Family Court.  The identity and quantity of all defendants are not known to me at this time.

All governmental defendants are sued in their official capacities only.

## VENUE

The District of Rhode Island is the proper venue because the actions and omissions that give rise to this lawsuit occurred in the State of Rhode Island.

## JURISDICTION

This is a federal question dealing with issues of ongoing violations of the United States Constitution and federal laws thus 28 USC 1331establishes this Court's jurisdiction. Supplemental state law Jurisdiction is invoked under 28 USC 1367.  Supreme Jurisdiction is enumerated in US Constitution, Article III, Section 2., and Article Six Supremacy Clause.

## FACTS:

On December 18, 2013,  The Rhode Island Family Court Entered a Final Judgment, Decree with an attached Marriage Settlement Agreement (MSA) as an Exhibit in the matter of Palange v. Palange W-12-0361 concerning the family of K.P,  a minor child, Margarita Palange, and Steven Palange.  Which merged

3

the terms of shared and equal placement and custody, parenting time, reasonable and liberal visitation of the MSA into the final judgment and decree.   **EXHIBIT 1  CERTIFIED FINAL JUDGMENT FROM RHODE ISLAND FAMILY COURT**

The family lived in the same town of Wakefield Rhode Island with K.P enjoying two homes shared with each of her parents and the family enjoying K.P happily, equally and under the terms of the final judgment.

On or about May 09, 2018, defendant Margarita Palange (Margarita) invoked membership into a corrupt influenced family court primarily ruled by defendant Chief Judge of Rhode Island Family Court administratively Michael Forte.   She sought to be free from the terms and bounds of the Final Judgment of the Rhode Island Family Court (RIFC) and her obligations and duties of the MSA.   In addition to keeping all benefits and rights to the judgment of divorce, Margarita desired a financial award of continual child support payments, custody, placement, control, of KP. expedited and without due process of law.

4

Furthermore,  Margarita sought help from the defendants to punish me for some

of the content of my past online media speech and to silence the prospective

dissemination of my thoughts, information, and knowledge.

On or about May 09, 2018, Margarita contracted with defendant attorney

Richard Updegrove (Updegrove) to accomplish such ends.

Invoking a well-established practice and technique in Rhode Island Family

Courts of discrimination against fathers and abuse of the state and federal

Ex-Parte family domestic violence restraining order laws, and provisions of the

U.S. Social Security Act Title 4 (D) Margarita and Updegrove created and

applied a false, frivolous, dishonest and unlawful POST FINAL JUDGMENT

EMERGENCY MOTION EX-PARTE and an AFFIDAVIT OF MARGARITA

PALANGE.  **SEE EXHIBIT 2**  Which cites no statutory authority and

disregards well-established laws, procedures, rules, and rights under Rhode

Island and federal law.


Defendants Forte, Margarita, Sandra Lanni, Updegrove, Tanya Gravel, Lois

Iannone, Ronald Pagliarini, Peter Neronha, Jean Maggiacomo, Courtney E.

Hawkins, Tyler Technologies(TT), TT President and CEO Lynn Moore, TT

President Courts and Justice Division Rusty Smith, Associate Director of Child

5

Support Services Sharon Santilli, Deputy Director, External Affairs Yvette

Mendez and Chief Judge and Carole Malaga administratively authorized and or

participated in the policy and practice that took custody of K.P. and snatched her

from her father, me, against statutory law and without due process of law.

Pursuant to the prior agreements, conspiracies, practices, and such on May 09,

2018, Sandra Lanni, against statutory law, and against the best interest of KP

signed an Order granting the defendant's Motion, ex parte, and no record, with

no findings of facts and no statute or rule of law cited. **SEE EXHIBIT 3**

**ORDER BY JUDGE LANNI and EXHIBIT 4 EMAIL FROM CAROL**

**MALAGA**


Since then till the present time of this writing, we have been separated and KP

has been moved to the State of California without my consent and against the

judgment and MSA.

The Final Judgment of Divorce and the MSA has not been altered or modified

by a court of law.  It was never appealed.   It is final.  The principles of Res

Judicata and the finality of judgments protect the lawful effect and rights

memorialized  in the MSA and Judgment of the Rhode Island Family Court.

There has been no attempt on record to modify or appeal any part of the Final Judgment for Divorce.

Since then till present, the defendant and other persons working on their behalf have engaged in numerous acts to silence me in The Rhode Island Supreme, Superior and Family Courts, the press, the public, and my communications with my daughter K.P..

In addition, the defendants have each acted individually and collectively to deprive K.P. and me of our naturally loving and caring bonds, relationships, and integrity to our family without due process, equal protection of the law, and without good cause.

On May 09, 2018, the defendants implemented a pre-arranged, continual plan, rule to obtain custody, placement of K.P, restrict all visitation and parenting and child support orders from me.

Defendants have filed numerous false pleadings against me and concerning K.P in the subject cases. Attorney Updegrove' petition was signed without truth, with false accusation and in retaliation for my speech

7

and prospective speech. Furthermore, all defendants knew about and relied upon administrative policy within the operations of Rhode Island Courts of causing and requiring the practices of dishonest court and legal services. Obtaining child custody without due process of law, obtaining child support orders without due process of law.

Since May 09, 2018, all of the defendants have been engaged in a plan of racketeering, providing and causing through unlawful command influence dishonest legal services, kidnapping K.P. from me and moving her to California, false arrest, false imprisonment, malicious prosecutions, unwarranted threats by armed police, filing false pleadings in courts, defrauding the courts, obstructing due process, manufacturing counterfeit judgments, void judgments, obstructing justice and defrauding the Supreme Court by causing Clerks, including but not limited to defendant Maggiacomo without judicial authority, to refuse or grossly delay the processing and filing my notices of appeals, sign Judicial Orders denying my rightful appeals without being heard and by concealing my appeals from the Judges of the Supreme Court and many other nefarious ongoing violations of law contrary to the best interest of K.P., justice, myself and the people of the State of Rhode Island and the integrity of the courts.

8

MICHAEL B. FORTE.; JUDGE SANDRA LANNI; RONALD PAGLIARINI; PETER
NERONHA; JEAN MAGGIACOMO; Deputy Clerk; COURTNEY E. HAWKINS,
Tyler Technologies, and Chief Judge Paul Sutel fail to train, monitor, supervise
and discipline persons working on their behalf and under their control so
as to ensure their actions, policies, practices and rules do not violate the
rights of citizens, K.P. and myself and to be free from discrimination in
governmental services. They enforce unconstitutional policies of
requiring judges to routinely pre hear and adjudicate family cases in
secretive, non-recorded, systemic in family court "chambers meetings",
altering the truth and reliability of transcripts, having non-stenographic
and non-recorded hearings that adversely affect the civil rights of K.P. and
me. And a policy of discriminating against men in family law cases.

This ongoing activity will continue to repeat itself and continue to violate
the Constitution. I appealed on January 16, 2019 for the first time, it took
82 days to get to the Supreme Court. I motioned for a stay pending
appeal on April 08, 2019. I appealed again on April 25, 2019 which took
153 days to be transmitted to the Supreme Court. And, on that same day
I filed another Motion to Stay pending appeal. On May 01, 2019, The
case was transmitted to the Supreme Court. On June 07, 2019the
transmittal was remanded back to the family court. No explanation
given. On August 29, 2019 I filed another appeal to the supreme court
and on that same day an appeal from a family magistrate's decision to the
family court per law. On September 4, 2019 two cases were transmitted

9

to the Supreme Court SU-2019-156-A is currently pending and set for an argument to show cause on December 10, 2020.  On September 10, 2019 another case was transmitted to the Supreme Court.  On October 23, 2019 appeal SU-2019-372-A was denied without a hearing, or articulation and without the signature of a Judge.  On November 29, 2019 another case was transmitted back to the Supreme Court after it was returned via an interim remand.  On December 16, 2019, I appealed another family court magistrate's decision, pending.  And on July 1, 2019 a Motion To Vacate all the ill gotten judgments, decrees and orders created without jurisdiction or without lawful authority.  SEE EXHIBIT Case summary W20120361

I and males in general are targeted and discriminated against because of gender as males and our access to petition the government for redressals of our grievances is obstructed violating, inter alia, the OMNIBUS CRIME CONTROL ACT OF 1968 42 USC 3789d (2) (c)  " Prohibition of discrimination...Private Action`.....(1) No person in any state shall, The word "shall" usually connotes the imperative and contemplates the imposition of a duty.  Brown v Amaral, 460 A.2d 7, 10 (R.I. 1983), on the grounds of... sex...be denied benefits, be subjected to discrimination under any programs or activities funded in whole or in part with funds made by the people of the United States made available under this chapter, and 42 USC 2000d. "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the

benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

The defendants and all other relative perpetrators and offenders are motivated to achieve illegal and ill-gotten monetary gains via dishonesty, subverting the due administration of justice in Rhode Island, presenting false claims to the United States for monies paid to them for participation in federally funded programs and abusing the state and federal child

custody and support programs under title IV of the Social Security Act .

The defendants' policy, customs, laws, and applications of such programs are in direct conflict with the Constitutions of the United States and the State of Rhode Island. They are unconstitutional, null and void.   And they have injured KP,myself and others including the defendants themselves.   They have broken the courts and have rendered them useless to KP and I.

Attorney Updegrove, Margarita, and other state actors conspired with Judge Lanni and the other defendants to issue an  Order "Suspending Visitation" to circumvent the state's and federal government's child custody and modification of custody and child support laws.   Suspending Visitation in this matter is equal to an indefinite loss of all custodial rights and visitation and family with K.P without access to honest and impartial appellate review.   The record reflects that

All of the defendants actions and omissions May 09, 2018, are not warranted by law and are in violation of clearly established rights, laws and Constitutions of Rhode Island and the United States.

The record in this case clearly reveals unnecessary delay and unnecessary increased cost of litigation

The ex-parte Motion pleads **" This conduct is clearly scaring our eight-year-old daughter, and is inimical to her best interest".** The Motion itself does not allege any past, current or prospective injury or threat to life, property or limb. These are conclusory allegations not deserving the assumption of proof.

Margaritas Affidavit of May 09, 2018, without honest cause, states that "<u>I am in fear that my child may be injured, both physically and emotionally, if the existing unsupervised visitation continues...</u>".

15-15-4 Upon a proper filing under 15-15-4 a judge may enter any temporary orders that it deems necessary to protect the appellee from abuse "If it clearly appears from specific facts shown by affidavit....that **immediate and irreparable injury, loss, or damage will result to the plaintiff before notice can be served and a hearing held".**

Section 15-15-4 prohibits a judge from issuing Temporary Restraining Orders ex-parte when there is no emergency.  The persons involved, including but not limited to Margarita Palange and her attorney, Mr. Updegrove seeking such

12

powerful relief are required, under 15-15-4 (3), to clearly show, in writing, that **"immediate and irreparable injury, loss, or damage will result to the plaintiff before notice can be served and a hearing held on the matter".** Otherwise, *"No temporary order shall be granted."*

**Parent-child custodial rights are sensitive, they are fragile, and they are very important. All requests seeking ex-parte relief affecting custodial rights of children and parents are extraordinary and that sort of relief depends upon the existence of emergency exigent circumstances.**

Nowhere in the affidavit does Margarita state any facts or knowledge of any

past, present or threatened injury to K.P., herself, to me, to anyone.

The appellees' attorney Updegrove, the family court has no jurisdiction to continue to deny my rights to the terms of the divorce and the family, custodial, and placement rights of my daughter.

Section 15-15-4 (2) requires the temporary order to expire, not to exceed 21 days. *"Unless within the time fixed the order, by consent or for good cause shown and after hearing of argument by the parties is extended for an additional period".*

The record of W12-0361 reflects that I did not consent and I did not consent. No good cause was shown or found, and there has never been a hearing of argument.

No consent or agreement exists in writing after December 18, 2013.   Any statements, assertions   made in the record to the contrary, as there are many, are false.

Family Court Rule 1.4 mandates that "All agreements of parties or attorneys touching the business of the court **shall** be in writing, unless orally made or assented to by them in the presence of the court when disposing of such business, or the agreements will be considered of no validity.

13

Matters read into the record **shall** be reduced to writing and presented to the court for entry within ten days or earlier if the case is continued for hearing prior thereto."

No agreement was read into the record and no agreement has been reduced to writing in this case  since the final judgment of divorce.   The record is absolutely void of any legal agreement to modify the judgment of divorce written or spoken.

The Order of May 09, 2018, and all other subsequent orders till present, in this case, is in violation of R.I.G.L. Section 15-5-16 (d) (1) "In regulating the custody of children, the court **shall** provide for the reasonable right of visitation by the natural parent….." . As will be demonstrated further in this writing the orders denying visitation and custody are corruptly influenced by non-judicial sources.

The appellee, her attorney and the Family Court are bound by the rules of Post Final Judgment Relief.  Family Court Rule 64A (a) entitles me to notice, due process, an operative complaint.  The court, appellee, and her attorney are bound to **Rule 64A** and mandated when seeking post-final judgment relief to **"a party seeking post-final judgment relief shall serve a summons, complaint, language assistance notice……".**

Furthermore, Rule 64(a) requires that "**A. party seeking temporary support, custody, or attorney's fees and cost or modification of such orders shall make service of the notice of motion and accompanying papers….upon the party against whom relief is sought..".**

**Under Kenney v. Hickey 486 A.2d 1079 (1985**
**IN Rhode Island , the question of the custody of minor children of divorced parties, whether provided for in a final decree or otherwise, continues within the jurisdiction and control of the**

14

trial court.   However, as defendant argues, the trial court should not exercise that jurisdiction without a showing that there has been some alteration or change in circumstances and conditions that existed at the time of the entry of the final decree. King v. King, 114 R.I. 329, 331, 333 A.2d 135, 137 (1975). The burden of showing a change is on the moving party, and until such a point, the prior custody award contained in a decree is conclusive. Id.; Vieira v. Vieira, 98 R.I. 454, 457, 204 A.2d 431, 433 (1964); Lawrence v. Lawrence, 85 R.I. 13, 16, 125 A.2d 218, 220 (1956); Kelley v. Kelley, 77 R.I. 229, 231, 74 A.2d 452, 453 (1950). Once the record discloses a sufficient change in circumstances to permit a reopening of the decree, then the "polestar for the trial justice's guidance" is what, in the circumstances of the particular case, is best for the children's welfare. Goldstein v. Goldstein, 115 R.I. 152, 154, 341 A.2d 51, 52 (1975).

I have not been served with any complaint or motion to modify the final judgment of December 18, 2013.   There are no changes in circumstances in fact available to or alleged by Margarita Palange that would warrant modification of the final judgment.  Judge Forte, Judge Lanni, Ronald Pagliarini, Courtney Hawkins, Margarita Palange Attorneys Tanya Gravel, Richard Updegrove Jr.  Lois Iannone, all other defendants knowingly, caused, encouraged and authorized converting the illegal May 09, 2018 ex-parte order into sole custody and placement without due process of law.   The Family Court record of W12-0361 is unclear as to when the final judgment of shared custody and placement of Katerina was modified and awarded sole placement to Margarita and child support rights awarded to the Department of Human Services

Courtney Hawkins.   However,   Judge Lanni does mention on
March 07, 2019 hearing that;

"But the fact is, that right now and for the last
number of months, you have not -- Ms. Palange
has had primary placement of your child.".....''The
Court can always modify child support.   But the
reason it was modified to begin with, to the child
support order that was put in place, is because
currently you <u>do not have shared placement.</u>
so , therefore, there was a modification put in
place.   If, in the future, shared placement comes
back, then child support will automatically be
modified at that time as part of that.

The group's intent to subvert the due administration of family court
justice, act against the health, welfare and best interest of Katerina
and deny a proper trial, hearing or due process is evidenced also on
March 07,2019:

"So I can't do anything about that.
 And Ms. Iannone is court excused into and
maybe through the month of July.   I can't
remember the exact date.   So if you're going to
call her -- if you just want her report to be
admitted, that's fine, because the statute allows
that.   But you're entitled to cross-examine on the

16

*record,  and you've indicated that you want to do that.*   Therefore,  I can't -- you know,  I can't do anything about that right now.   Perhaps by the time we finish this,  it will be time to start the other part of this case.".

The facts are that the record is void of any trial concerning custody, placement, or visitation till present time of this writ, as of November 23, 2020 it has been 929 day of no custody, placement and visitation between my daughter and I.   And not one trial or show cause hearing.

Nowhere in the affidavit does Margarita state any facts or knowledge of any past, present or threatened injury to K.P., herself, to me, to anyone. Not even property.  They are self-serving statements That run afoul from the truth in pleadings and signatures clause of Rule 11. The Motion and Affidavit are devoid of sufficient non-conclusory factual allegations to support a reasonable inference that injury occurred or there is a threat of an immediate nature of suffering irreparable harm. The pleadings are conclusory, not supported by relevant facts and there are no facts shown warranting jurisdiction.  Such a pleading is not permissible. *See Ashcroft v. Iqbal*, the court must "identify[] the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, at 16. That is, the court must separate pleadings of fact from pleadings of conclusion. Next, the court must evaluate the factual assertions to determine whether **"they plausibly suggest an entitlement to relief."** *Id.* at 17.07-1015, at

17

14 (U.S May 18, 2009). "To be clear, we do not reject these bald allegations on the grounds that they are unrealistic or nonsensical. We do not so characterize them any more than the Court in *Twombly* rejected the plaintiffs' express allegation of a "contract, combination or conspiracy to prevent competitive entry," because it thought that claim too chimerical to be maintained. **It is the conclusory nature of the respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth**". Courts are required to "identify the allegations in the complaint that are not entitled to the assumption of truth." That is, the court must separate pleadings of fact from pleadings of conclusion. Next, the court must evaluate the factual assertions to determine whether "they plausibly suggest an entitlement to relief."...The Supreme Court through the *Iqbal* decision requires courts to tighten pleading standards. By requiring courts to see with sufficient specificity and plausible allegations of misconduct or malfeasance **in all civil actions, the Supreme Court has made clear that nonspecific "notice" pleadings can no longer unleash costly and injurious litigation.**

    The First Circuit affixes a "two-step pavane" to determine whether a complaint meets the plausible standard. A.G. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citation omitted). First, courts must "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Then, courts must "determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct

alleged.'" A.G., 732 F.3d at 80 (quoting Morales-Cruz, 676 F.3d at 224). Conclusory statements "presented as an ipse dixit, unadorned by any factual assertions that might lend it plausible," are insufficient to pass the plausible threshold. "When allegations, though disguised as factual, are so threadbare that they omit any meaningful factual content, we will treat them as what they are: naked conclusions."

The appellee's Motion and Affidavit presented to the court is devoid of any apparent or specific or plausible threat posed by me and are void simply by virtue of Ashcroft too.

We are entitled to fair notice, a fair opportunity to be heard, to have a compulsory process to compel the attendance of witnesses and testimony. We are entitled to an operative complaint to have fair notice as to which facts and issues we have to defend ourselves from or are relevant to our best interest. We also have a right to argue issues of law and jurisdiction before trial. We have the right to honest governmental, Court, and legal services. We have the right to family integrity. The right to be free from deprivation of life, liberty, property and the quantity and quality of it. All said is denied to K.P and me and apparently other citizens of Rhode Island likely situated. In all likelihood, we will continue to suffer these deprivations of our Rights.

19

Rhode Island Courts readily adhere to the rule that **equity will not intervene in circumstances in which there is an adequate remedy at law.** See Wickes Asset Management, Inc. v. Dupuis, 679A.2d 314, 322 (R.I. 1996). That Rule has been disregarded by the Family Court, administrators, and legal professionals in this matter. An injunction is an extraordinary remedy available only when there is no adequate remedy at law. Ward v. Caral, 460 A.2d 7, 10 (R.I. 1983). There are no extraordinary, immediate threats of irreparable harm, loss, or injury alleged in the Motion or Affidavit brought to Judge Lanni and the administrative defendants on May 09, 2018, or existing in fact. Furthermore, the fundamental requisite of due process is the opportunity to be heard at a meaningful time and in a meaningful manner; this certainly requires one to be forewarned about the subject matter of the hearing with sufficient detail so an intelligent explanation or rebuttal can be formulated. See Avanzo v. Rhode Island Department of Human Services, 625 A.2d 208, 210-11 (R.I. 1993) (citing Goldberg v. Kelly, 397 U.S. 254, 268-69 (1970)). Margarita violated Rule 11. And so did Attorney Updegrove when they both signed and filed an affidavit and Motion without a warrant, good cause and void of the necessary factual and actual material that is critical to invoking the jurisdiction of the court and the resources of the court and the people of Rhode Island. No emergency exigent circumstances are present or prospective or probable or impending. The claim and signatures and oath affixed of "fear" are self-serving, fantasy, disingenuous, not true and serves ulterior and selfish and criminal motives. Defendants Pagliarini and Forte enforce and require a policy of private attorneys and judicial staff to violate, routinely, Rule 11 and Rule 1.

Judge Sandra Lanni, after reading and hearing the Motion for Emergency and Affidavit, did not have jurisdiction to hear the matter any further.   The Court lacked subject matter jurisdiction.   The necessary factual criteria showing and findings of facts to issue an Emergency ex parte restraining order restraining Steven and K.P. from each other does not exist, were not shown, and they were not found and stated on the record.   This judgment is not void merely because it is erroneous." Allstate Insurance Co. v. Lombardi, 773 A.2d 864, 869 (R.I. 2001) (quoting Jackson v. Medical Coaches, 734 A.2d 502, 506 (R.I. 1999)). For a judgment to be vacated as void under Rule 60(b)(4), "the court entering the judgment" either must have "lacked jurisdiction" or "the court's action [must have] amount[ed] to a plain usurpation of power constituting a violation of due process." Id. (quoting Hoult v. Hoult, 57 F.3d 1, 6 (1st Cir. 1995)). Deprivation of any parent-child custody and any constitutional right is a serious matter with serious consequences.   It was and continues to heartbreak K.P and I.

K.P. and me did not have notice and an opportunity to be heard as is required under the due process clauses of the 4th, 5th, and 14th Amendments before we were deprived of our rights to be a family and remain together.   K.P. and I have been physically separated for nearly three years now because of these frauds upon the court and subversions to the due administration of justice in Rhode Island.

The order of May 9th, 2018, represents "a plain usurpation of power constituting a violation of due process." See Allstate Insurance Co., 773 A.2d at 869 (quoting

21

Hoult, 57 F.3d at 6), beyond the pale as to evince "a plain usurpation of power constituting a violation of due process." Id. (quoting Hoult, 57 F.3d at 6), the procedural posture of the case at the time when the order was entered justifies vacating it under Rule 60(b) the circumstances of this case present a manifest injustice "justifying relief from the operation of the" order. See Super. R. Civ. P. 60(b)(6).

Res judicata and collateral estoppel, also known as claim and issue preclusion, are related doctrines, Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). Case 1:05-cv-00032-M Document 46 Filed 01/13/06 Page 15 of 37 PageID #: 413 Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. The matter of custody, visitation and child support were already litigated resulting in a final judgment on December 18th, 2013. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. Allen v. McCurry, 449 U.S. at 94, 101 S.Ct. at 414 (citation omitted); accord Gonzalez-Pifia v. Rodriguez, 407 F.3d 425, 429-30 (lst Cir. 2005); see also Breneman v. United States ex rel. F.A.A., 381 F.3d 33, 38 (lst Cir. 2004) (applying doctrine of res judicata); Mancao v. Orleans Bd. of Trade, 773 F.2d 1, 5 (Ist Cir. 1985) (embracing rule stated in 5 24 of Restatement (Second) Judgments regarding the scope of claim preclusion); Wiaains v. Rhode Island, 326 F.Supp. 2d 297, 303 (D.R. I. 2004) ("Collateral estoppel 'is the doctrine which renders conclusive in a subsequent action on a different claim the

determination of particular issues actually litigated in a prior action.'") (quoting
Providence Teachers Union v. McGovern, 319 A.2d 358, 361 (1974)); ElGabri v.
Lekas, 681 A.2d 271, 275-77 (R.I. 1996) (citing Maneuo); E.W. Audet & Sons,
Inc. v. Firemen's Fund Ins. Co. of Newark, New Jersey, 635 A.2d 1181, 1186
(R.I. 1994) (explaining both doctrines) .' The doctrine of collateral estoppel has
both a constitutional and a statutory basis. "Under the Constitution's Full Faith
and Credit Clause, see U.S. Const. Art. IV, § 1, federal courts and state courts
must accord state court judgments the same preclusive effect as other courts
within that state." Buraos v. Hopkins, 14 F.3d 787, 790 (2"d Cir. 1994).


The statutory basis is found in the third paragraph of 28 U.S.C. § 1738, which
provides in relevant part: [ Jl judicial proceedings . . . shall have the same full
faith and credit in every court within the United States and its Territories and
Possessions as they have by law or usage in the courts of such State, Territory or
Possession from which they are taken. Where there is a parallel state and federal
litigation, a federal court may be bound to recognize the claim- and issue
preclusive effects of a state-court judgment. Exxon Mobil, 125 S.Ct. at 1527.   In
determining whether a state court decision has a preclusive effect, the "federal
court must use the same law that a state court would employ in making such a
determination." Pascoag Reservoir & Dam, LLC v. Rhode Island, 217 F.Supp.2d
206, 213 (D.R.I. 2002)(citing Texaco Puerto Rico, Inc. v. Medina, 834 F.2d 242,
245 (lSt Cir. 1987) ).  Thus, this Court must apply the law of this state to
determine if preclusion applies.  "Under this doctrine, 'final judgment on the
merits of an action precludes the parties or their privies from relitigating claims
that were raised or could have been raised in [a previous] action. "

Gonzalez-Pifia v. Rodriguez, 407 F.3d 425, 429 (ISt Cir. 2005) (quoting

Breneman v. United States ex rel. F.A.A., 381 F.3d 33, 38 (lst Cir. 2004) ).

"Specifically, res judicata applies when the following exist: (1) a final judgment

on the merits in an earlier proceeding, (2) sufficient identicality between the

causes of action asserted in the earlier and later suits, and (3) sufficient

identicality between the parties in the two actions." Id.   As such, the Order of

May 09, is a nullity, void and all subsequent Orders and judgments stemming

from the nullity of May 09, are too void and trespassers. As citizens injured and

threatened with certain future injuries and deprivations from such ongoing

unlawful governmental conduct we are entitled to a declaration of my rights and

the rights of K.P..

There are no, judicial findings of facts explaining the factual and legal basis the

court relied upon in issuing the ex parte restraining order.  Judge Lanni refuses

and continues to refuse to articulate her decisions in writing and record

explaining the factual and legal basis she relied upon in coming to any of her

decisions. With the intent to conceal from the record the frauds upon the Court

and culpable conduct and motives of the defendants.

There is no stenographic record or transcript of the hearing in violation of §

**8-5-5 Reports of superior, family and district court and traffic tribunal. –
Court reporters shall report stenographically or electronic court reporters
or similar recording personnel shall report electronically the proceedings in
the trial of every action or proceeding, civil or criminal, in the superior
court, family court...**

24

There is virtually no record to review except Judge Lanni's written Ruling which is devoid of any articulation explaining the factual and legal basis relied upon in coming to its conclusions and judgment, the Motion, and the Affidavit. This judgment is not a true judgment. It is bogus, a sham, counterfeit and in direct conflict with the state and federal Constitutions.

The May 9th Order and all other proceedings and orders that followed May 9th are void and unconstitutional The U.S. Supreme Court stated in Vallely v. Northern Fire & Marine Ins. Co., 254 U.S. 348 (1920) Courts are constituted by authority, and they cannot go beyond the power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities. They are Page 254 U. S. 354 not voidable, but simply void, and this even prior to reversal. *Elliott v. Peirsol,* 1 Pet. 328, 26 U. S. 340; *Old Wayne Life Assn. v. McDonough,* 204 U. S. 8.

A void judgment is a nullity from the beginning and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." Ex parte Seidel, 39 S.W.3d 221, 225 (Tex. Crim. App. 2001), Ex parte Spaulding, 687 S.W.2d at 745 (Teague, J., concurring). **The law is well-settled that a void order or judgment is void even before reversal", VALLEY v. NORTHERN FIRE & MARINE INS. CO., 254 U.S. 348,41 S. Ct. 116 (1920)** "Courts are constituted by authority and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are

25

regarded as nullities; they are not voidable, but simply void, and this even prior
to reversal." WILLIAMSON v. BERRY, 8 HOW. 945, 540 12 L. Ed. 1170, 1189
(1850). It has also been held that "It is not necessary to take any steps to have a
void judgment reversed, vacated, or set aside, It may be impeached in any action
directly or, collateral.' Holder v. Scott, 396 S.W.2d 906, (Tex.Civ.App.,
Texarkana 1965. FRCP RULE 60(b) FRCP Rule 60(b) provides that the court
may relieve a party from a final judgment and sets forth the following six
categories of reasons for which such relief may be granted: (1) mistake,
inadvertence, surprise, or excusable neglect; (2) newly discovered evidence
which by due diligence could not have been discovered in time to move for a
new trial under Rule 59; (3) fraud, misrepresentation, or misconduct by an
adverse party; (4) circumstances under which a judgment is void; (5)
circumstances under which a judgment has been satisfied, released, or
discharged, or a prior judgment upon which it is based has been reversed or
otherwise vacated, or it is no longer equitable that the judgment should have
prospective application; or (6) any other reason justifying relief from the
operation of the judgment. F.R.C.P. Rule 60(b)(1)-(b)(6). To be entitled to relief,
the moving party must establish facts within one of the reasons enumerated in
Rule 60(b).  A Party Affected by VOID Judicial Action Need Not APPEAL.
State ex rel. Latty, 907 S.W.2d at 486. It is entitled to no respect whatsoever
because it does not affect, impair, or create legal rights." Ex parte Spaulding, 687
S.W.2d at 745 (Teague, J., concurring). This cannot be ignored, its fact recorded!
Judgment is a void judgment if the court that rendered judgment lacked
jurisdiction of the subject matter, or of the parties, or acted in a manner

inconsistent with due process, Fed. Rules Civ. Proc., Rule 60(b)(4), 28 U.S.C.A.,

U.S.C.A. Const. Amend. 5 —Klugh v. U.S., 620 F.Süpp. 892 (D.S.C. 1985).

A court cannot confer jurisdiction where none existed and cannot make a void

proceeding valid. A void judgment which includes judgment entered by a court

which lacks jurisdiction over the parties or the subject matter, or lacks inherent

power to enter the particular judgment, or an order procured by fraud, can be

attacked at any time, in any court, either directly or collaterally, provided that the

party is properly before the court. See Long v. Shorebank Development Corp.,

182 F.3d 548 (C.A. 7 Ill. 1999).

When rule providing for relief from void judgments is applicable, relief is not

discretionary matter but is mandatory, Omer. V. Shalala, 30 F.3d 1307 (Cob.

1994).

A void judgment may be attacked at any time by a person whose rights are

affected. See El-Karch v. Texas Alcoholic Beverage Comm'n, 874 S.W.2d 192,

194 (Tex. App.--Houston [14th Dist.] 1994, no writ)

Black's Law Dictionary, Sixth Edition, P. 1574: Void judgment. One which has

no legal force or effect, the invalidity of which may be asserted by any person

whose rights are affected at any time and at any place directly or collaterally.

Reynolds v. Volunteer State Life Ins. Co., Tex.Civ.App., 80 S.W.2d 1087, 1092.

One which from its inception is and forever continues to be absolutely null,

without legal efficacy, ineffectual to bind parties or support a right, of no legal

force and effect whatever, and incapable of confirmation, ratification, or

27

enforcement in any manner or to any degree. Judgment is a "void judgment" if the court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process. Klugh v. U.S., D.C.S.C., 610 F.Supp. 892, 901.

The Courts Have A Responsibility To Correct a Void Judgment and the courts should have voided the May 9th order and all subsequent proceedings and orders. The statute of limitations does not apply to a suit in equity to vacate a void judgment. (Cadenasso v. Bank of Italy, p. 569: Estate of Pusey, 180 Cal. 368, 374 [181 P. 648].) Void order may be attacked, either directly or collaterally, at any time, In re Estate of Steinfield, 630 N.E.2d 801. Void order which is one entered by the court which lacks jurisdiction over parties or subject matter, or lacks inherent power to enter judgment, or order procured by fraud, can be attacked at any time, in any court, either directly or collaterally, provided that party is properly before the court, People ex rel. Brzica v. Village of Lake Barrington, 644 N.E.2d 66 (Ill.App. 2 Dist. 1994).

Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the court". In Bulloch v. the United States, 763 F.2d 1115, 1121(10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury.... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted. Mich. 97

(10/13/58). Under Federal law which is applicable to all states, the U.S. Supreme Court stated that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them.   They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as trespassers."

Since May 09, 2018 til present I and K.P. have not been heard or have had any true access to the Rhode Island courts.

A great number of the defendants are experienced and seasoned attorneys and practitioners of the law.   Their errors and omissions are so gross that coupled with their background implies and indicate corruption, bias, discrimination against me and a complete disregard to K.P.'s best interest.   The challenged judgments are in direct conflict with good policy in Rhode Island which is that child-custody awards must be made in the 'best interest[s]' of the child." quoting Petition of Loudin "[T]he best interests of the child standard remain amorphous and its implementation has been left to the sound discretion of the trial justices." Id. Several factors must be taken into consideration by the Judge in making the best interests of the child determination. However, no single factor is determinative; rather "[t]he trial justice must consider a combination of and an interaction among all the relevant factors that affect the child's best interests." Due process and evolved Rhode Island Law dictates that there must also be a showing that a substantial change in circumstances since the last custody order. The Rhode Island Supreme Court ruled "Moreover before a final custody decree

can be reopened or amended, the moving party must establish by a fair preponderance of the evidence that the conditions or circumstances existing at the time the decree was entered have so changed that it should be modified in the interest of the children's welfare." Pettinato v. Pettinato "Until and unless the moving party meets this burden, the prior custody award should remain intact." The defendants knew that they could not modify the existing Judgment of Divorce and Marital Settlement agreement, obtain sole custody of K.P. and obtain Orders of Child support and monies paid for the collection of child support equitably. They chose to steal it all and cover it up with secrecy, obstructions of justice and snatching K.P. from me and bringing her to California in violation RIGL 9-1-43 child-snatching and 42-112-1 The Civil Rights Act of 1990 and other laws.

Most Recently, the Rhode Island Supreme Court stated in Jamie Souza v Michael Souza No. 2016-310-Appeal. (N 08-154) ".Here, the trial justice changed the prior agreed-upon joint custody arrangement, which was memorialized in the final judgment of divorce in 2010, to sole custody in favor of the plaintiff, seemingly based upon the determination that the parties cannot co-parent, without reference to the best interests of the children. Awarding sole custody here goes a step too far. The plaintiff, to succeed in such a motion, would have to show by a fair preponderance of the evidence that circumstances had changed such that the placement should be modified in the interest of the children's welfare and that the change of placement was in the best interests of the children. See Vicente, 950 A.2d at 462. Here, the trial justice applied no such test in concluding that the plaintiff should be awarded sole custody. We,

30

therefore, vacate the portion of the order that awards sole custody to the plaintiff, and remand the case to the Family Court for further proceedings consistent with this opinion."

Margarita and the other defendants and her attorney had no grounds, conditions or circumstances to modify the existing Order. Vexatious litigation tactics must be challenged by seeking the protection of the court in the context of the case in which they are committed, such as through  As the First Circuit has made clear, a claim of fraud of the court may be sustained as an independent action only if the issue raised is "egregious" and Case 1:17-cv-00016-S-PAS Document 18 Filed 05/03/17 Page 15 of 23 PageID #: 16 involves "an unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter involving an officer of the court." Roger Edwards LLC v. Fiddes & Sons Ltd., 427 F.3d 129, 133 (1st Cir. 2005).

A  series of frauds upon this Court and violations of due process occurred.  The Conspiracy between Margarita and others was joined by my own Attorney Tanya Gravel pursuant to an ongoing and systemic practice of dishonesty applied to the administration and adjudications in Family and Supreme Court. The defendants filed false and frivolous pleadings into court, obtaining false judgments and have continued on in a course of conduct of concealing their illegal conduct and protecting their ill-gotten gains and profits till present time.

31

## CHAPTER 2 MAY 30TH, 2018

On or about May 29, 2018, I retained the services of Tanya Gravel to represent my interest in that matter and paid her $2,000 in cash.  I also provided the **MOTION, AFFIDAVIT OF MARGARITA, AND THE SUMMONS to her.**

On or about May 30th the second series of frauds upon this Court and violations of due process occurred.  The Conspiracy between Margarita, the defendants and others were joined into by my own Attorney Tanya Gravel.

Upon my arrival at Family Court, in the hallway, in the presence of my Attorney Tanya Gravel, Stephanie Gonzales, Margarita Palange, and several Sherriffs Attorney Updegrove aggressively approached and accosted me, put himself within two inches of my face, and demanded that I submit to everything Margarita wants or words similar to that.

I told him "you need to get away from me I consider this assault".  It was then that Attorney Gravel stepped in between the two of us.

Attorney Updegrove stated, "I didn't think he was represented." Attorney Gravel said, "He is now".

Shortly thereafter, while in the hallway Attorney Gravel demanded more money and told me that I already paid her ($2,000) was used up.  Based upon the

32

information I have now that demand for more money may have been for payment for bribes or another form of ill gotten gain and quid pro quo. I told her I wasn't paying anymore until she worked on my case. Shortly thereafter, Both Attorneys Updegrove and Gravel disappeared from my sight for a substantial time. When my attorney did reappear, she told me that she was in a "chambers conference" with Attorney Updegrove and Judge Lanni. "We have to agree, that's the way it works. NO. I vehemently told her no that I do not agree to anything except that I wanted K.P. back.

## IN CHAMBERS CONFERENCE MAY 30, 2018 MCGRATH JUDICIAL COMPLEX WAKEFIELD JUDGE SANDRA B. LANNI CHAMBERS AND COURTROOM

To circumvent the laws mandating due process and fair trials Judge Lanni, and Attorney Updegrove invited Attorney Gravel and required her to attend a secretive and off the record meeting with them in Judge Lanni's chambers. By all appearances, it is evident that it is the routine practice of Family Court operations to replace recorded public hearings with off the record, private "conferences" discussing the facts and judgment with the attorneys and the Judge. They come to an agreement as to the outcome and adjudication of the case. On May 30th Judge Lanni had an ex-parte conference with Attorney Updegrove. And, or Later that morning Judge Lanni and Attorney Updegrove summoned Attorney Gravel to join them in private. Judge Lanni and Attorney Uprdegrove intimidated, and or influenced, and or threatened, and or frightened, and or bullied her into submission to agree to Margarita's demand despite the

33

best interest of justice, K.P. and her own client me.  Attorney Gravel should have moved the Court for a dismissal of Margarita's Motion and Affidavit; they were devoid of any factual or legal basis for jurisdiction.

As a continual operation and entity Courtney Hawkins Director of Rhode Island Department of Human Services, Judge Lanni, Attorney Updegrove, Margarita, Ronald Pagliarini, Peter F. Nerona, Judge Michael Forte and all other defendants had a mutual understanding and agreements to circumvent Final Judgment, Agreement, Law, Constitutional Rights, the custodial rights of my daughter and I and due process of law and then enslave me into a money paying obligor to benefit the personal lives of all participators in this conspiracy.  The defendants are seeking a substantial amount of money from me, which is a substantial monetary gain and profit for them.  This group manufactured a counterfeit judgment and now ongoingly extorts money from me under threat of malicious prosecution, false arrest, false imprisonment, and other punishments.

To Wit I have not seen my daughter in nearly three years now, I have no involvement in any matter concerning my daughter, she has been moved out of state.  I did not approve of this.  All of my rights to K.P. and Final Judgment of Divorce and Contractual rights outlined in the Marriage Settlement Agreement are de factually terminated.   Without lawful authority.

This group has all stated and adjudicated that I waive my rights and or that I agreed to all of this hardship, deprivations, and cost.  They are wrong and. There is no written, spoken or recorded agreement and I did not agree to lose or

34

"suspend" any custody of Kat. We have not had a trial, have not been heard and have not had our day in court.

When Attorney Gravel reappeared from Judge Lanni's chambers May 30th, 2018 She told me and demanded, in the hallway, that we have to agree to everything and I said no and continued to say no. We argued. I continued to say no.

We then entered the Courtroom and I continued to say no to anything other than I wanted my daughter back and there was no just cause to take her from me.. The transcript of May 30th, 2018 is missing portions and is missing portions of the proceeding, especially, the beginning of the hearing.

A waiver of a constitutional right will not be presumed or lightly found. Ruggerio v. Langlois, 100 R.I. 186, 193, 211 A.2d 823, 827 (1965) on rehearing 106 R.I. 15, 255 A.2d 731 (1965). Furthermore, a valid waiver of constitutional rights by an accused cannot be presumed from a silent record. State v. Feng, 421 A.2d 1258, 1267 (R.I. 1980). (Context of a plea to felony charges). A finding that there has been a waiver is essentially fact driven with the fact-finding process to be performed by the justice or magistrate who presided over the proceeding where the waiver is alleged to have occurred. In the criminal context,   In determining whether a waiver of a constitutional right has been voluntary, knowing and intelligent, courts may take into consideration the totality of circumstances and facts surrounding a particular case. Wilkicki v. Brady, 882 F. Supp. 1227,1231-32 (D.R.I. 1995).

35

**John C. O'Donnell, III v.Anne A. O'Donnell.No. 2012-52-Appeal**

**Supreme Court of Rhode IslandNovember 18, 2013**

Newport County Family Court No. N 99-537 Associate Justice Karen Lynch Bernard " It is well settled that in order to form an enforceable agreement, "[e]ach party must have and manifest an objective intent to be bound by the agreement." *Opella v. Opella*, 896 A.2d 714, 720 (R.I. 2006) (citing *Weaver v. American Power Conversion Corp.*, 863 A.2d 193, 198 (R.I. 2004)); *Rhode Island Five v. Medical Associates of Bristol County, Inc.*, 668 A.2d 1250, 1253 (R.I. 1996). Thus, "a litigant must prove mutual assent or a 'meeting of the minds between the parties.'" *Opella*, 896 A.2d at 720 (quoting *Mills v. Rhode Island Hospital*, 828 A.2d 526, 528 (R.I. 2003) (mem.)).

In pertinent part, Rule 1.4 of the Family Court Rules of Practice, entitled "Agreements, " provides that "[a]ll agreements of parties or attorneys touching the business of the court shall be in writing, *unless orally made or assented to by them in the presence of the court* when disposing of such business, or they will be considered of no validity." (Emphasis added.) It is well settled that "a marital settlement agreement * * * that has been 'incorporated by reference, but not merged into the final divorce decree, retain[s] the characteristics of a contract.'" Hazard v. Hazard, 45 A.3d 545, 550 (R.I. 2012) (quoting Zaino v. Zaino, 818 A.2d 630, 637 (R.I. 2003)); *see also*

36

Esposito v. Esposito, 38 A.3d 1, 5 (R.I. 2012); Paul v. Paul, 986 A.2d 989, 995

(R.I. 2010); Riffenburg v. Riffenburg, 585 A.2d 627, 630 (R.I. 1991).

Accordingly, "[i]t is not the function of this Court, or the Family Court, to

set aside a property settlement agreement * * * simply because a party no

longer wishes to be bound by its terms or is unhappy with the result."

Vanderheiden v. Marandola, 994 A.2d 74, 78 (R.I. 2010).


Due process is the opportunity to be heard at a meaningful time and in a

meaningful manner; this certainly requires one to be forewarned about the

subject matter of the hearing with sufficient detail so an intelligent explanation

or rebuttal can be formulated.  See Avanzo v. Rhode Island Department of

Human Services, 625 A.2d 208, 210-11 (R.I. 1993) (citing Goldberg v. Kelly,

397 U.S. 254, 268-69 (1970).


The Supreme Court ruled in Arnold v. Lebel, 941 A.2d 813 (2007) that it

prohibited ex-parte communications with anyone about contested or material

adjudicatory facts or opinions concerning the merits of an applicant's

administrative appeal. Id. at 820. The Court went on to hold that the function of

the statutory requirement was to prevent litigious facts from reaching the

decision-maker off the record in an administrative hearing. Id. at 820.

The defendants are public servants and or citizens and must behave honestly,

openly and lawfully.  The defendants operate against those principles. They are

benefactors, creators, protectors, and participators in clearly unlawful practices.

37

They routinely violate rights and laws that routinely upset the workings of justice in Rhode Island.

"[t]his Court will review an otherwise moot case only when the issues are 'of extreme public importance, which are capable of repetition but which evade review.'" an opportunity to challenge the information gleaned through such communications. - Campbell v. Tiverton Zoning Board, 15 A.3d 1015, 1022 (R.I. 2011) (quoting H.V. Collins Co., 990 A.2d at 848). A case is "capable of repetition yet evading review" if there is a "reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975).

The record of this case clearly demonstrates that Margarita and her collaborators have done everything in this case in opposition to securing the just, speedy, and inexpensive adjudication in this action. These folks have invested much money, time, and effort in contravention to Rule 1. To obtain ill-gotten judgments, awards and profits, in violation of the Supreme Law of the Land. Furthermore, the practices of the administration of the Rhode Island Family Courts is to discriminate against me for being a male, my speech, the content of my speech, and for litigating pro se and not under the influence of the administration of courts or government. And, for exposing ongoing criminal governmental conduct. A clear indicator of subverting the due administration of justice in Rhode Island is the apparent fact that I am denied access to online filing and court documents in Rhode Island. Thus all to my detriment and to the detriment to the quality of justice in Rhode Island.

38

The defendants' assertions, statements, finding of facts, orders, the judgments that declare that I waive my rights to custody of K.P. are false. The truth reveals that the actions of the aforementioned are criminal and their actions to obscure the record is evidence to indicate obstruction of justice and the collective consciousness of guilt of the defendants.

"Any rule that impedes the discovery of truth in a court of law impedes as well the doing of justice." *Hawkins* v. *United States*, 358 U.S. 74, 81 (1958) (Stewart, J., concurring) "State evidentiary rules may so seriously impede the discovery of truth, "as well as the doing of justice," that they preclude the "meaningful opportunity to present a complete defense" that is guaranteed by the Constitution, *Crane* v. *Kentucky*, 476 U.S. 683, 690 (1986)

Defendants caused Court Transcriptionist or Recorder Carolyn Malaga to alter and disturb the integrity of several transcripts of court proceedings and then to certify them as true when they are not. The transcripts omit relevant and material information to Steven's State and Federal court cases. Specifically, On or about the May 30th, 2018 hearing before Judge Lanni. Judge Lanni stated in Court, on the record, her explanation that she awarded sole legal and physical custody of K.P. to Margarita for the sole reason that I have a Rhode Island medical marijuana license. Those statements as well as any indicators that I resisted any agreements have been erased from the May 30th, 2018 transcript. Also, on or about December 07, 2018 (not sure of date) hearing. Judge Lanni on the record, in Court, shortly after Attorney Tanya Gravel resigned and left the courtroom,

verbally warned, threatened and hollered at Steven to not proceed in that case

pro se. Those communications have been deleted from the transcript.

Attorney Tanya Gravel Communicated to Steven on behalf of Updegrove,

Margarita and others to stop posting information on the internet and warned him

that if he continues to post he will never get to be with his daughter K.P. again.

Although the judgments award temporary sole physical and legal custody of

K.P. to Margarita, the defendants caused Judge Lanni to act against the law and

award "custody" without any findings of facts demonstrating the reasons she and

they relied upon in coming to her decision and Order.

There has never been a trial to determine custody of K.P.

In the entire court proceedings, there is no articulation explaining the factual and

legal basis for the Orders.

On or about May 30, 2018, the defendants persuaded and caused my own

Attorney Tanya Gravel to meet in secret, with Judge Lanni and, off the record,

agree to various orders of child custody and mislead me in my rights to an

effective defense and deceptively stating to me I will have a trial at a later date to prove my innocence.

The defendants are benefactors of, participants in an unlawful practice employed in the Rhode Island Courts of governmental and legal services dishonesty made rule of law by Michael B. Forte and defendants.

The defendants have caused individuals to falsely arrest and imprison me on or about July 31, 2019, in retaliation for attempting to present my case and evidence to the court.

The defendants caused excessive uses of force and pain upon me in retaliation for attempting to present my case to court.

The defendants, directly and indirectly, threaten me to not speak to the public or the courts about my knowledge of unlawful conduct engaged in by legal services professionals and officers in Rhode Island.  Defendants routinely cause the court security officers to threaten and silence me from presenting my case to the court.

41

The defendants have obtained numerous false judgments and Orders of the courts by defrauding the courts and abuses of public trust in the honesty of the legal profession and court services in Rhode Island.

The defendants have without judicial authority and contrary to the official agreement and Court Order and the best interest of K.P the defendants using legal service dishonesty and court employee corruption have corruptly subverted the due administration of Justice in Rhode Island's Family and Supreme Courts.

April 8, 2019 hearing,  Junge Lanni:

"Between the time that the first order was entered in this case changing placement, even on an emergency basis,  until now there was a motion for child support"------"I think it's now ten months that you haven't had any visitation at all with your daughter"----------"But the basis of the child support motion was that circumstances have changed and the circumstance that has changed is that your wife has had physical placement of your child since whenever the order entered, and a motion for child support was filed, and that you don't have placement"----------"Were on trial now...relating to child support....That's what we're here for right now. With regard to any other issues including, custody, placement, and parenting time,  those issues right now are not before the court.......I understand you have a right to call her (Guardian Ad Litem Lois Iannone) in terms of the

42

custody, placement and parenting time.  I've already said we're putting that aside because you want to call her"--------
I agree we need a trial.  The reason that we're not yet having a trial is because Ms. Iannone is court excused by the Chief Judge of the Rhode Island Family court.  This Court must abide by the Chief Judge's decision".

I was never heard or notified of the decision to ex-parte and secretly to "excuse defendant Iannone.  Nor was I privy, notified or heard in any of the processes that led to the order of visitation to be suspended.  And I was not privy, notified and heard in any of the processes that changed custody, placement or parenting time.  The defendants actions have caused great emotional harm with physical and painful effects and overwhelming feelings of sadness
I have not been served with any complaint or motion to modify the final judgment of December 18, 2013.  All defendants knowingly converted the illegal May 09, 2018 ex-parte order into sole custody and placement without due process of law.  The Family Court record of W12-0361 is unclear as to when the final judgment of shared custody and placement of Katerina was modified and awarded sole placement to Margarita and child support rights awarded to the Department of Human Services Courtney Hawkins. Nor does it reflect if and when I was ever notified.  Judge Lanni does mention on March 07, 2019, hearing that;

"But the fact is, that right now and for the last number of months, you have not -- Ms. Palange has had primary placement of your child."....."The Court can always modify child support.  But the

43

reason it was modified, to begin with, to the child support order that was put in place, is because currently you **do not have shared placement.** so, therefore, there was a modification put in place.   If in the future, shared placement comes back, then child support will automatically be modified at that time as part of that."

A court can only modify the placement of my child if it has jurisdiction.   In this case, under the circumstances, absent a showing of a change of substantial circumstances, founded upon the facts and the procedures, rules, and law governing the modification of a child custody decree, there is no court that has the jurisdiction to violate the judgment of the Rhode Island Family Court and the MSA.

The group's intent to subvert the due administration of family court justice, act against the health, welfare, and best interest of Katerina, and deny a proper trial, hearing or due process is evidenced also on March 07, 2019 HEARING TRANSCRIPT: TRANSCRIPT PAGES 70, 71, 72.

The defendants' intent is clear, to delay a trial concerning custody indefinitely and to conceal from the court record material to my case and knowledge of culpable conduct of the other defendants of this federal matter.

44

The facts are that the record is void of any trial concerning custody, placement, or visitation till the present time of this writ, as of November 23, 2020, it has been 929 days of no custody, placement, and visitation between my daughter and I and there still has been no trial.   Furthermore, the defendants have all agreed to not apply the best interest of the child standard to this case from May 09, 2018 till present.

A report was created on October 30, 2018, by attorney Iannone stating:

**"At this time this GAL does not feel that the Pettinato factors should be applied in this case at this time...... Steven Palange should not physically visit with his eight-year-old daughter...The GAL recommends that at this time temporary sole placement and temporary sole custody should be given to Margarita Palange".**   And submitted to the family court on October 31, 2018.

Chief family court administrator Ronald Pagliarini, Chief family court Judge Michael Forte, Judge Lanni, Attorneys Updegrove, Iannone, Gravel, appelle Margarita Palange, and all other defendants conspired with each other to create that recommendation and to continue to influence the decisions of the court off the record and further conspired to come to a pre arranged and agreed upon judgments, decisions, and orders of the family court off the record.

In addition to seizing and concealing the writings and testimony of Guardian Ad Litem Attorney Lois Iannone, the perpetrating and perpetuating named group of defendants all agreed and employed a tactic and practice of unlawful command or administration influence of family court proceedings and have severely tainted Palange v. Palange amounting to prosecutorial misconduct and a series of miscarriages of justice.

45

Despite that the May 09, 2018, order suspending visitation is without judicial authority and is a nullity. The command and administration of Rhode Island's Family Court, namely Michael Forte, Ronald Pagliarini amongst other defendants, with prejudice, bias, or criminal intent caused an Order awarding supervised visitation to be vacated with no good cause to do so, without hearing, with no notice, with no record and ex-parte.

## EXHIBIT 1: email from attorney gravel to me

Email October 23, 2018, "Additionally, I spoke to Judge Lanni's clerk and then the family services unit and the unit informed me you are next on the list to be called for supervised visits. She said she'll give you a call by the end of this week and hopefully you'll get a visit in before the next court date so you can see your daughter..

Best,

Tanya GraveL, The Law Offices of Tanya M. Gravel, Esq.,Inc.

## EXHIBIT 2:

EMAIL FROM ATTORNEY GRAVEL TO ME.   October 24, 2018.

**"Hi Steven, yes your next court date is October 31st....Amanda from the family services unit called me to let me know she scheduled the supervised visits but then was told by the chief of staff in family court that they couldn't supervise the visits. I left a message with him and I'm waiting to hear back.  Best Tanya Gravel"**

## EXHIBIT 3:

October 25, 2018 Email from Attorney gravel to me.
"Hi Steven I spoke to Ron as to why your visits were cancelled. I will call you shortly.  Best, Tanya Gravel".

46

EXHIBIT 4:

October 25, 2018

MOTION TO SUSPEND SUPERVISED VISITATION by Margarita Palange, Attorney Updegrove

EXHIBIT 5:

TRANSCRIPT OCTOBER 31, 2018

Judge Lanni "we do have a report of the Guardian Ad Litem....we did have both a chamber conference and a bench conference....So I should say that--I've already advised the attorneys of this, but I just should say it on the record, that the last time we were here, there was an order that was entered after the last court date, which was September 24, that would provide Mr. Palange with supervised visitation at the family court.

In the interim, *I have been advised by the court that they will not provide supervised visitation in this case. And this----I have no control over that.........So that part of the order has to be vacated......*

*given the recommendations of the guardian ad litem and given the current situation, I really feel as though the plaintiff should have temporary sole custody without prejudice and without making any findings. I know there are various restraining orders in this case.*

EXHIBIT 6:

TRANSCRIPT DECEMBER 07, 2018

47

LOIS IANNONE "I TRIED TO COORDINATE, GOING BACK TO 10/24, COORDINATE VISITS, SUPERVISED VISITS. I RECEIVED NOTICE FROM THE COURT ADMINISTRATOR **THAT VISITATION HAS BEEN SUSPENDED**.....IT'S A NUMBER OF THINGS YOUR HONOR, AND THEY ARE WELL STATED IN MY FEE AGREEMENT OR MY FEE STATEMENT."

JUDGE LANNI "SECONDLY, I AM ORDERING THAT AT THIS POINT IN TIME THERE IS NOTHING FURTHER THAT MS. IANNONE NEEDS TO DO, SO THERE IS NO REASON TO CONTACT HER AGAIN.....MS. IANNONE YOU DON'T HAVE TO BE HERE THAT DAY."

LOIS IANNONE "THANK YOU"

JUDGE LANNI "BUT IF YOU COULD SUBMIT TO THE COURT SOMETHING INDICATING WHETHER OR NOT YOU'VE BEEN PAID".

EXHIBIT 7:

TRANSCRIPT JANUARY 24, 2019

JUDGE LANNI   "SO TO THE EXTENT YOU ARE UNHAPPY WITH TEMPORARY ORDERS, THE SOONER WE GET TO TRIAL THE BETTER.

I DO HAVE SOMETHING THAT I NEED TO ADDRESS.  *MS. IANNONE HAS A COURT EXCUSAL THAT GOES TO JULY.*

SO YOU KNOW, SHE OBVIOUSLY CANNOT FUNCTION AT THIS POINT IN TIME AS THE GUARDIAN AD LITEM FOR THE CHILD........

WELL HERE'S THE PROBLEM SIR.  YOU DON'T HAVE TO HAVE A NEW GUARDIAN AD LITEM.  BUT SINCE YOU WANT TO CROSS-EXAMINE MS. IANNONE, WE'LL HAVE TO WAIT AND HAVE THE TRIAL AFTER JULY, WHICH MEANS YOU WON'T HAVE A

PERMANENT ORDER AND THE CURRENT ORDERS WILL REMAIN
IN PLACE……..

CHIEF JUDGE FORTE HAS DECLINED TO HAVE YOU PARTICIPATE IN
THE COURT SUPERVISED PROGRAM………

NOT ISSUES RELATING TO CUSTODY, PLACEMENT, PARENTING
TIME, BECAUSE YOU HAVE INDICATED THAT YOU'RE GOING TO
WANT TO CALL MS. IANNONE"

EXHIBIT 8:

TRANSCRIPT FEBRUARY 18, 2019
JUDGE LANNI "SHE (IANNONE) IS COURT EXCUSED".

EXHIBIT 9:

TRANSCRIPT FEBRUARY 22, 2019
JUDGE LANNI "BECAUSE THE COURT ALWAYS HAS THE
JURISDICTION TO MODIFY COURT ORDERS RELATING TO CHILDREN
REGARDLESS OF THE PARTIES' AGREEMENT"

The defendants have also engaged in a policy and conduct of obstructing
my appeals.  In one instance, an appeal filed on January 16, 2019 was
not transmitted to the Supreme Court until April 08, 2019.  In many other
instances, some appeals were summarily dismissed by clerk defendants
that have no judicial authority to dismiss the appeal.  And, appeals from
Family Court Child Support Magistrates decisions appear to be covered
up and not processed.

The procedural due process of myself was denied to Katerina and me and
continue to be deprived.

The defendants routinely obstruct from the court's view evidence, facts,

documents and testimony relevant to the best interest of K.P and my defenses.

I have been barred by the R.I. Family Court's IT Department after I requested

several times to get access to the State of Rhode Island Electronic Filing System.

I have a string of emails between himself and an unidentified IT employee of the

Court who repeatedly claimed Pro Se did not have a Right to submit Pleadings

electronically.  I was finally informed by a Court IT employee representing the

IT Dept that my repeated requests for access had to be addressed by the Court's

legal department.  I am denied access to the online access

My and K.P. Due Process Rights to reliable legal services were violated in this

case.


Specifically, on or about October 24, 2018, Mr. Forte had his assistant Ronald

Pagliarini call Me to inform me that based on anti-RI Family Court social media

posts, that he, Michael B. Forte was terminating supervised visitation between

K.P. and I. Termination of my and K.P supervised visitation was in retaliation for

postings about the court I made to online media.

Mr. Forte and the other commanding defendants are responsible for supporting

and enforcing practices and patterns of allowing Justices to have routine  private

chamber conferences with lawyers without the benefit of a stenographic or audio

recording, without my consent as was done to Me in every hearing I was

represented by counsel.


These off transcript discussions beyond the protections cited offer the

opportunity to make private backroom dealings that violate both Due Process

and Constitutional Rights as was done to W12-0361.

The U.S Supreme court found in ex parte Young that an official who engages in

an unconstitutional action cannot be held to be performing it on behalf of the

state even if the official complies with the state's own laws. As well as Article 3

of the Constitution supremacy clause makes the constitution superior to all

contrary laws. Those who violate the supremacy clause reduces an official to the

level of a private citizen who can be sued. The official could be a state actor

under the 14th amendment, his infringement upon due process rights could be

challenged.  In 1908 the Supreme Court held that when a state official

VIOLATES THE LAWS AND CONSTITUTION OF THE UNITED STATES,

THE OFFICER IS STRIPPED OF HIS OFFICIAL OR REPRESENTATIVE

CHARACTER THE OFFICER IS  stripped of his and is subjected in his person

to the consequences of his individual conduct.      Ex parte Young, 209 U.S. 123,

123 (1908).

This means that Michael B. Forte is sued in his official capacity. Because of his

individual ongoing conduct that violates and continues to violate the clearly

established Constitutional rights of  minor K.P and the rights of myself.,

including but not limited to, equal protection under the laws and continues to

ignore his obligations and duties to ensure that cases are adjudicated fairly and in

compliance with the laws in Family Court subject us to deprivations of serious

civil rights deprivations and serious injury.


Finally, declaratory judgments and relief are not available in the Rhode Island

Courts.  I have attempted several times in the family court, the Superior Court,

and the Rhode Island Supreme Court to no avail, and no hearings ever had.

There is a very strong and powerful effort and force of the defendants for me to

not put on any record the Constitutional violations that have occurred and are

ongoingly occurring.  I cannot exercise and protect my federal rights in the

Rhode Island Courts.  I ask that this U.S District  Court accept only the Final

Judgment of Divorce of the Rhode Island Family Court December 18, 2018

52

under 28 USC sec. 1738 as well as other law appropriately applicable here as the only legitimate Judgment and decree in Palange v. Palange W-2012-0361.   All others claimed by the defendants afterward are nullities and void.   I have requested Declaratory Relief in Rhode Island Courts on numerous occasions the defendants are obstructing me from having a trial or hearing or hearing.   It is not available to me.   My daughter has been taken from me and I can't get a trial for nearly three years.   I don't have a trial date set by the family court.   This is fact and not disputed or disputable.

An appeal I filed on April 25, 2019 in this case was withheld from the Supreme Court until September 04, 2019.   That appeal Su-0156-A is currently pending. Another appeal was filed on January 16, 2019, and delayed transmittal to the Supreme Court till April 08, 2019.   The record also clearly reflects that there has never been a motion to modify custody or placement.   The defendants are adamant to not allow me to be heard, have an open and honest hearing, and to indefinitely violate the sanctity and security of the rights afforded to me by the final judgment of divorce.   I have a Motion to Vacate the family court Orders. The defendants cause the court to not hear the motion.   Accordingly the record reflects I am far from over to ending litigation unless the defendants capitulate

53

and return our lives to the status Quo and honor the sanctity of the final judgment

The defendants have created an unlawful debt and are collecting an unlawful debt.

The record and facts are clear. There is not a final judgment in this case that I am contesting.  I seek declaration of my rights to the final judgment of 2018 and I have never ceased litigating the matter.   I am by no far a "state court loser". The prior verified amended complaint remains as part of this complaint except this amended complaint 2 withdraws any prayer for injunctive relief.  This complaint seeks declaratory judgments only until such declaratory judgment have been awarded

## COUNTS

All facts in the Statement of Facts are hereby incorporated into all the following Counts;

## DEPRIVATION OF MY CIVIL RIGHTS

54

Count 1. Deprivation of the right to free speech Rhode Island Constitution Article 1 section 21

Count 2. Deprivation of the right to petition the government for a redressal of grievances Rhode Island Constitution Article 1 section 21

Count 3. Deprivation of the right to due process of law Rhode Island Constitution Article 1 section 2

Count 4. Deprivation of the right to equal protection under the laws Rhode Island Constitution Article 1 section 2

Count 5. Deprivation of the right to obtain justice Rhode Island Constitution Article 1 section 5 Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which may be received in one's person, property, or character. Every person ought to obtain right and justice freely, and without purchase, completely and without denial; promptly and without delay; conformably to the laws.

Count 6. Deprivation of property and family integrity without due process of law Rhode Island Constitution Article 1 section 6The right of the people to be secure in their persons, papers, and possessions, against unreasonable searches and seizures, shall not be violated; and no warrant

shall issue, but on complaint in writing, upon probable cause, supported by oath or affirmation, and describing as nearly as may be, the place to be searched and the persons or things to be seized.

## Counts Under the United States Constitution and Federal Law

Count 7 Deprivation of 1st Amendment Rights.

Count 8 Deprivation of 4th Amendment Rights.

Count 9 Deprivation of 5th Amendment Rights.

Count 10 Deprivation of Due Process of law under the 14th Amendment.

Count 11 Deprivation of Equal Protections under the laws

Count 12 Fraud upon the court

Count 13 practices, patterns and policies of unconstitutional governmental conduct

Count 14 Unconstitutional applications of state and federal law concerning domestic violence, child custody and child support programs

Count 15 Discrimination under 42 U.S.C 2000(d)

Count 16 Discrimination under 42 U.S.C 3789(d)

Count 17 Equitable jurisdiction pursuant to 42 U.S.C 1983

Count 18 Equitable jurisdiction pursuant to 42 U.S.C 1985

Count 19 Violation of Rhode Island General Law 9-1-43 Child
Snatching.

Count 20 R.I.G.L 42-112-1 and 42-112-2

Count 21 Rule 60 Rhode Island

Count 22 Rule 60 United States

Count 23 All writs Act of 1789

## PRAYER FOR RELIEF

### List of attached Exhibits:

1. Exhibit #1 - Transcript of May 30th, 2018 RI Family Court hearing of F.C.
   No. W20120361.
2. Exhibit #2 - Email from Margarita Palange that she left the State without
   good cause and violated her "Marriage Settlement Agreement".
3. Exhibit #3 - Email letter from Steven Palange to Margarita Palange that
   she was in violation of her Marriage Settlement Agreement.
4. Exhibit #4 - Emails to and from RI Family Court IT Technical Department
   showing that Pro Se litigants are not allowed to use the RI electronic filing
   system.
5. Exhibit #5 - The Marriage Settlement Agreement of Steven & Margarita
   Palange's final judgment on December 18th, 2013.
6. Exhibit #6 - Mr. Richard Updegrove motion for emergency relief.

7. Exhibit #7 - Judge Lanni's Order of May 9th, 2018.

8. Exhibit # 8 - Email from Carolyn Malaga stating there is no stenographic record of the May 9th, 2018 ex-parte emergency motion hearing.

The Plaintiff Demands a Trial by Jury

PRAYER FOR DECLARATORY RELIEF

I pray that the Court award declaratory judgment that:

1, The Final Judgment of December 18, 2013 is the controlling final judgment of Palange v. Palange W2012-00361.

2. That the Final Judgment has not been or attempted to be modified, reopened, appealed, vacated or reversed by any party.

3. That any judgment, decision, order of the court made since the Final Judgment is a nullity and void and has no legal effect or power.

4. That I do not owe child support.

5. That the defendants policy and practice of obtaining post judgment changes of custody is;

A. against the Rhode Island and Federal Constitutions

B. deprives myself and daughter due process of law prior to family separation

C. not in the best interest of children

6. That the defendants policy and practice of establishing child support orders are unconstitutional, not in the best interest of children and are made without due process of law and contrary to the best interest of children.

7. The defendant's conduct and policies concerning custody and support discriminate against fathers.

8. The defendants policies concerning In Chambers Hearings deprive me of due process of law

59

9. The defendants policies governing Emergency Ex-Parte Restraining Orders are unconstitutional and have violated my rights to family integrity and due process of law;

    A. Violate state law and violate federal law

    B. Is against and injurious to the best interest of children

    C. Is motivated to avoid laws, judgments, agreements and rights to establish or change child custody and child support expeditiously and without due procedures of law.

10. The defendant's conduct violates clearly established federal and state laws.

11. The defendant's conduct has caused irreparable injuries and will continue to cause immediate and irreparable injuries unless stopped by a court of law. Their conduct is cruel, inhumane and torture.

12. The defendants have conspired to defraud the United States for monies paid to Rhode Island for honest child support services.

13. The defendants have conspired to violate the Federal Racketeer Influenced Corrupt Organization Act and have injured me in my interstate business.

14. The defendants conspired to violate my federal civil rights

The plaintiff respectfully prays that this Court give relief and declare all 14 declarations to be true.

By Steven J. Palange,
Pro se


10 Grandeville Court # 934
Wakefield, Rhode Island 02879
Email: steven_palange@tlic.com
P: 401-225-6456
F: 401-295-2242


Steven J. Palange, December 1st, 2020


## CERTIFICATION OF SERVICE

I hereby certify that this document filed through the ECF System will be sent
electronically to the registered participants as identified on the Notice of Electronic
Filing (NEF) and paper copies will be sent to those indicated as non-registered
participants as listed below.


Steven J. Palange

61

# APPENDIX TO APPELLANT'S BRIEF

1. The OMNIBUS CRIME CONTROL ACT OF 1968 42 USC 3789d (2) (c)

2. Brown v Amaral, 460 A.2d 7, 10 (R.I. 1983)

3. 42 USC 2000d.

4. title  IV—GRANTS TO STATES FOR AID AND SERVICES TO

   NEEDY FAMILIES WITH CHILDREN AND FOR

   CHILD—WELFARE SERVICES

5. The Marriage Settlement Agreement

6. **Rhode Island Rule 11**

7. *See Ashcroft v. Iqbal*

8. Wickes Asset Management, Inc. v. Dupuis, 679A.2d 314, 322 (R.I. 1996)

9. Ward v. Caral, 460 A.2d 7, 10 (R.I. 1983)

10. See Avanzo v. Rhode Island Department of Human Services, 625 A.2d
    208, 210-11 (R.I. 1993) (citing Goldberg v. Kelly, 397 U.S. 254, 268-69
    (1970)).

11. R.I.G.L section 15-15-4.

12. Allstate Insurance Co. v. Lombardi, 773 A.2d 864, 869 (R.I. 2001)
    (quoting Jackson v. Medical Coaches, 734 A.2d 502, 506 (R.I. 1999))

13. Rule 60(b)(4),

14. Id. (quoting Hoult v. Hoult, 57 F.3d 1, 6 (1st Cor. 1995))

15. the 4th, 5th, and 14th Amendments

16. See Allstate Insurance Co., 773 A.2d at 869 (quoting Hoult, 57 F.3d at 6)

17. Id. (quoting Hoult, 57 F.3d at 6)

18. See Super. R. Civ. P. 60(b)(6)

19. Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). Case 1:05-cv-00032-M Document 46 Filed 01/13/06 Page 15 of 37 PageID #: 413

20. Allen v. McCurry, 449 U.S. at 94, 101 S.Ct. at 414 (citation omitted); accord Gonzalez-Pifia v. Rodriguez, 407 F.3d 425, 429-30 (lst Cir. 2005)

21. Breneman v. United States ex rel. F.A.A., 381 F.3d 33, 38 (lst Cir. 2004)

22. Maneao v. Orleans Bd. of Trade, 773 F.2d 1, 5 (Ist Cir. 1985) (embracing rule stated in 5 24 of Restatement

23. Wiaains v. Rhode Island, 326 F.Supp. 2d 297, 303 (D.R. I. 2004)

24. Providence Teachers Union v. McGovern, 319 A.2d 358, 361 (1974)); ElGabri v. Lekas, 681 A.2d 271, 275-77 (R.I. 1996) (citing Maneuo); E.W. Audet & Sons, Inc. v. Firemen's Fund Ins. Co. of Newark, New Jersey, 635 A.2d 1181, 1186 (R.I. 1994) (explaining both doctrines)

25. Under the Constitution's Full Faith and Credit Clause, see U.S. Const. Art. IV, § 1

26. Buraos v. Hopkins, 14 F.3d 787, 790 (2"d Cir. 1994).

27. Case 1:05-cv-00032-M Document 46 Filed 01/13/06 Page 16 of 37 PageID #: 414

28. Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980)

29. Exxon Mobil, 125 S.Ct. at 1527

30. Pascoau Reservoir & Dam, LLC v. Rhode Island, 217 F.Supp.2d 206, 213 (D.R.I. 2002)(citing Texaco Puerto Rico, Inc. v. Medina, 834 F.2d 242, 245 (ISt Cir. 1987) )

31. Gonzalez-Pifia v. Rodriguez, 407 F.3d 425, 429 (ISt Cir. 2005) (quoting Breneman v. United States ex rel. F.A.A., 381 F.3d 33, 38 (lst Cir. 2004) )

32. **§ 8-5-5 Reports of superior, family and district court and traffic tribunal. – Court reporters shall report stenographically or electronic court**

33. The U.S. Supreme Court stated in Vallely v. Northern Fire & Marine Ins. Co., 254 U.S. 348 (1920)

34. *Elliott v. Peirsol,* 1 Pet. 328, 26 U. S. 340; *Old Wayne Life Assn. v. McDonough,* 204 U. S. 8.

35. Ex parte Seidel, 39 S.W.3d 221, 225 (Tex. Crim. App. 2001), Ex parte Spaulding, 687 S.W.2d at 745 (Teague, J., concurring)

36. **VALLEY v. NORTHERN FIRE & MARINE INS. CO., 254 U.S. 348,41 S. Ct. 116 (1920)**

37. **WILLIAMSON v. BERRY, 8 HOW. 945, 540 12 L. Ed. 1170, 1189 (1850).**

38. Holder v. Scott, 396 S.W.2d 906, (Tex.Civ.App., Texarkana 1965. FRCP RULE 60(b) FRCP Rule 60(b)

39. F.R.C.P. Rule 60(b)(1)-(b)(6).

40. State ex rel. Latty, 907 S.W.2d at 486.

41. Ex parte Spaulding, 687 S.W.2d at 745 (Teague, J., concurring)

42. Fed. Rules Civ. Proc., Rule 60(b)(4), 28 U.S.C.A., U.S.C.A. Const. Amend. 5 —Klugh v. U.S., 620 F.Supp. 892 (D.S.C. 1985)

43. See Long v. Shorebank Development Corp., 182 F.3d 548 (C.A. 7 Ill. 1999).

44. Omer. V. Shalala, 30 F.3d 1307 (Cob. 1994)

45. See El-Karch v. Texas Alcoholic Beverage Comm'n, 874 S.W.2d 192, 194 (Tex. App.--Houston [14th Dist.] 1994, no writ)

46. Black's Law Dictionary, Sixth Edition, P. 1574: Void judgment.

47. Reynolds v. Volunteer State Life Ins. Co., Tex.Civ.App., 80 S.W.2d 1087, 1092.

48. Klugh v. U.S., D.C.S.C., 610 F.Supp. 892, 901.

49. (Cadenasso v. Bank of Italy, p. 569: Estate of Pusey, 180 Cal. 368, 374 [181 P. 648]

50. People v.Massengale and In re 32 Sande l,

51.  In re Estate of Steinfield, 630 N.E.2d 801

52. Steinfeld v. Hoddick, 513 U.S. 809, (Iii. 1994).

53. People ex rel. Brzica v. Village of Lake Barrington, 644 N.E.2d 66 (I11.App. 2 Dist. 1994).

54. In Bulloch v. the United States, 763 F.2d 1115, 1121(10th Cir. 1985)

55. In Bulloch v. the United States, 763 F.2d 1115, 1121(10th Cir. 1985),

56. Mich. 97 (10/13/58)

57. Pettinato v. Pettinato

58. California in violation RIGL 9-1-43 child-snatching and 42-112-1 The Civil Rights Act of 1990 and many other laws

59.  Jamie Souza v  Michael Souza No. 2016-310-Appeal. (N 08-154)

60. See Vicente, 950 A.2d at 462

61. Case 1:17-cv-00016-S-PAS Document 18 Filed 05/03/17 Page 15 of 23 PageID #: 16

62. Roger Edwards LLC v. Fiddes & Sons Ltd., 427 F.3d 129, 133 (1st Cir. 2005)

63. Greater Omaha Packing Co. Inc. v. Fairbank Reconstruction Corp., No. 2:13-CV-436-GZS, 2014 WL 4723083, at *9-10 (D. Me. Sept. 23, 2014).

64. Roger Edwards, 427 F.3d at 135.a motion for sanctions. See Bonilla v. Volvo Car Corp., 150 F.3d 88, 90 (1st Cir. 1998) miscarriage of justice,"

65. Beggerly, 524 U.S. at 47; Roger Edwards, 427 F.3d at 133; Greater Omaha Packing Co., 2014 WL 4723083, at *9-10.

66. United States v. Beggerly, 524 U.S. 38, 46-47 (1998)

67. Travers v. Spidell, 682 A.2d 471, 472-73 (R.I. 1996).

68. N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009)

69. Ruggerio v. Langlois, 100 R.I. 186, 193, 211 A.2d 823, 827 (1965) on rehearing 106 R.I. 15, 255 A.2d 731 (1965)

70. State v. Feng, 421 A.2d 1258, 1267 (R.I. 1980). (Context of a plea to felony charges).

71. Wilkicki v. Brady, 882 F. Supp. 1227,1231-32 (D.R.I. 1995).

72. *Opella v. Opella*, 896 A.2d 714, 720 (R.I. 2006) (citing *Weaver v. American Power Conversion Corp.*, 863 A.2d 193, 198 (R.I. 2004)); *Rhode Island Five v. Medical Associates of Bristol County, Inc.*, 668 A.2d 1250, 1253 (R.I. 1996).

73. *Opella*, 896 A.2d at 720 (quoting *Mills v. Rhode Island Hospital*, 828 A.2d 526, 528 (R.I. 2003) (mem.)).

74. Rule 1.4 of the Family Court Rules of Practice,

75. _Hazard v. Hazard_, 45 A.3d 545, 550 (R.I. 2012) (quoting _Zaino v. Zaino_, 818 A.2d 630, 637 (R.I. 2003)); _see also Esposito v. Esposito_, 38 A.3d 1, 5 (R.I. 2012); _Paul v. Paul_, 986 A.2d 989, 995 (R.I. 2010); _Riffenburg v. Riffenburg_, 585 A.2d 627, 630 (R.I. 1991).

76. _Vanderheiden v. Marandola_, 994 A.2d 74, 78 (R.I. 2010).

77. See Avanzo v. Rhode Island Department of Human Services, 625 A.2d 208, 210-11 (R.I. 1993) (citing Goldberg v. Kelly, 397 U.S. 254, 268-69 (1970).

78. Arnold v. Lebel, 941 A.2d 813 (2007)

79. Id. at 821. - 31 - Campbell v. Tiverton Zoning Board, 15 A.3d 1015, 1022 (R.I. 2011) (quoting H.V. Collins Co., 990 A.2d at 848).

80. Id. (quoting H.V. Collins Co., 990 A.2d at 848). A case is "capable of repetition yet evading review" if there is a "reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975).

81. _Hawkins_ v. _United States_, 358 U.S. 74, 81 (1958) (Stewart, J., concurring)

82. _Crane_ v. _Kentucky_, 476 U.S. 683, 690 (1986) (internal quotation marks omitted).

83. ex parte Young

84. Ex parte Young, 209 U.S. 123, 123 (1908).

85. Rhode Island Constitution Article 1 section 21

86. Constitution Article 1 section 2

87. Rhode Island Constitution Article 1 section 2

88. Deprivation of 1st Amendment Rights

89. 4th Amendment Rights.

90. 5th Amendment Rights

91. the 14th Amendment

92. 42 U.S.C 2000(d)

93. 42 U.S.C 3789(d)

94. 42 U.S.C 1983

95. 42 U.S.C 1985

96. Rhode Island General Law 9-1-43 Childsnatching

97. Count 20 R.I.G.L 42-112-1 and 42-112-2

98. Count 21 Rule 60 Rhode Island

99. Count 22 Rule 60 United States

100. Count 23 All writs Act of 1789

Respectfully submitted,

Steven J. Palange

By himself Pro Se,

10 Grandeville Ct., #934
Wakefield, RI 02879
P/C (401) 225-0650 F: 401-295-2242
E: steven_palange@tlic.com

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY OF ALL

ISSUES SO TRIABLE.


## CERTIFICATION OF SERVICE

I hereby certify that on the 1st day of December, 2020 I emailed a copy of this
document to Attorney jjsullivan@riag.ri.gov, Tamara Rocha at
trocha@courts.ri.gov and all attorneys listed.



Steven J. Palange, Pro Se

69

## CERTIFICATE OF SERVICE

I hereby certify that on Tuesday, December 1 st, 2020 I served a true and

accurate copy of the foregoing document on the following parties or their

counsel of record by email.

I hereby certify that on Tuesday, December 1 st, 2020  I emailed the foregoing

document with the United States District Court for the District of Rhode Island.

Stephen M. Prignano, Esq.
MCINTYRE TATE LLP
50 Park Row West, Suite 109
Providence, RI 02903
smp@mtlesq.com

Matthew Thomas Oliverio, Esq.
OLIVERIO & MARCACCIO LLP
55 Dorrance St, Ste 400 Providence,
RI 02903 mto@om-rilaw.com

Mark T. Nugent, Esq. MORRISON
MAHONEY LLP 10 Weybosset St,
Ste 900 Providence, RI 02903
mnugent@morrisonmahoney.com

John H. Ruginski , Jr., Esq. 127
Dorrance Street, 5th Floor
Providence, RI 02903
ESQ129@hotmail.com

Adam J. Sholes, Esq. R.I.
Department of Public Safety 311
Danielson Pike Scituate, RI 02857
adam.sholes@risp.gov

Ian P. Anderson Rhode Island
Department of Corrections Office of
Legal Counsel 40 Howard Ave
Cranston, RI 02920
ian.anderson@doc.ri.gov

Tamera N. Rocha, Esq. Rhode Island
Supreme Court 250 Benefit St.
Providence, RI 02920 Email:
trocha@courts.ri.gov

Justin J. Sullivan
Department of the Attorney General
State of Rhode Island
150 South Main Street
Providence, RI 02903
401-274-4400
Email: jjsullivan@riag.ri.gov

70