# CASE SUMMARY
## CASE NO. W20120361

| | | | |
|---|---|---|---|
| MARGARITA PALANGE V STEVEN PALANGE | § § § § | Location: | **Washington County Family Court** |
| | | Judicial Officer: | **Lanni, Sandra** |
| | | Filed on: | **09/19/2012** |

---

### CASE INFORMATION

**Related Cases**
SU-2019-0125-A   (Supreme Lower Court Case)
SU-2019-0156-A   (Supreme Lower Court Case)
SU-2019-0372-A   (Supreme Lower Court Case)

Case Type:   **Nominal Divorce Complaint**

Case Status:   **11/29/2019   On Appeal**

Case Flags:   **IV-D Case**

**Warrants**
Domestic Body Attachment - PALANGE, STEVEN (Judicial Officer: Jones, Paul )
04/27/2020    11:52 AM    Quashed
11/13/2019    11:30 AM    Issued
Fine:        $0
Bond:        $0

---

### PARTY INFORMATION

| | | |
|---|---|---|
| **Plaintiff** | **PALANGE, MARGARITA**<br>*DOB: 05/30/1977* | *Lead Attorneys*<br>**UPDEGROVE, RICHARD E., Jr.**<br>*Retained*<br>4018475684 x000(W)<br>*UPDEGROVE LAW, LTD.*<br>*314 OLIPHANT LANE*<br>*MIDDLETOWN, RI 02842*<br>RICK@UPDEGROVELAW.COM |
| **Defendant** | **PALANGE, STEVEN**<br>*DOB: 10/16/1960* | **REILLY, MATTHEW R.**<br>*Retained*<br>401-374-1440(W)<br>*63 SOCKANOSSET CROSS RD*<br>*STE 2A*<br>*CRANSTON, RI 02920*<br>mreillyesq@gmail.com |

---

| DATE | EVENTS & ORDERS OF THE COURT |
|---|---|
| 02/03/2021 | **Control Date** (Judicial Officer: Jones, Paul) |
| 11/04/2020 | *CANCELED* **Hearing on Body Attachment** |
| 11/04/2020 | Judgment Entered |
| 10/28/2020 | **DHS Motion** (Judicial Officer: Jones, Paul)<br>*Heard and Continued* |
| 10/28/2020 | Order to Enter |
| 10/28/2020 | Terms of Decree Read into the Record |
| 10/27/2020 | Objection Filed<br>*to Motion to Quash Subpoenas* |
| 10/23/2020 | Motion to Quash Subpoena<br>*Berke* |
| 10/23/2020 | Motion to Quash Subpoena<br>*DiSegna* |
| 10/23/2020 | Motion to Quash Subpoena |

WASHINGTON COUNTY FAMILY COURT

# CASE SUMMARY
### CASE NO. W20120361

*Pirolli*

| | |
|---|---|
| 10/23/2020 | Motion to Quash Subpoena<br>*Pagliarini* |
| 10/23/2020 | Motion to Quash Subpoena<br>*Lanni, J* |
| 10/23/2020 | Motion to Quash Subpoena<br>*Forte* |
| 10/20/2020 | Motion to Quash Subpoena<br>*Palange - Motion to Quash Pl. Subpoena and Protective Order* |
| 10/19/2020 | Motion to Quash Subpoena<br>*Palange - Pl Motion to Quash Subpoena* |
| 10/07/2020 | Review (Judicial Officer: Jones, Paul)<br>*Heard and Continued* |
| 10/07/2020 | Order to Enter |
| 10/06/2020 | Motion to Withdraw Motion<br>*Motion to Withdraw Motion to Modify Child Support*<br>Party: Attorney of Record REILLY, MATTHEW R. |
| 10/06/2020 | Motion to Withdraw<br>*Motion to Withdraw* |
| 08/26/2020 | Judgment Entered |
| 08/18/2020 | Objection to Motion to Modify Filed<br>*Pl. Obj to Mtn to Modify Child Support 08.18.20* |
| 08/14/2020 | Motion to Modify<br>*Motion to Modify Child Support* |
| 08/14/2020 | Entry of Appearance<br>*Entry of Appearance* |
| 07/31/2020 | Order Entered |
| 07/23/2020 | Statement of Assets, Liabilities, Income, and Expenses (DR6)<br>*Updated DR -6* |
| 07/23/2020 | Subpoena Returned<br>*Palange - Subpoena CITIZENS TLIC ROS 7.22.20* |
| 07/23/2020 | Subpoena Returned<br>*Palange - Subpoena CITIZENS Individual ROS 7.22.20* |
| 07/23/2020 | Subpoena Returned<br>*Palange - Subpoena BOA TLIC ROS 7.22.20* |
| 07/23/2020 | Subpoena Returned<br>*Palange - Subpoena BOA Individual ROS 7.22.20* |
| 07/23/2020 | Subpoena Returned<br>*Palange - Subpoena AMX TLIC ROS 7.22.20* |
| 07/23/2020 | Subpoena Returned<br>*Palange - Subpoena AMX Individual ROS 7.22.20* |
| 07/20/2020 | Objection to Motion to Adjudge Filed<br>Party: Defendant PALANGE, STEVEN |
| 07/16/2020 | Judgment Entered |

## CASE SUMMARY
### CASE NO. W20120361

| | |
|---|---|
| 07/15/2020 | **Review** (Judicial Officer: Jones, Paul)<br>*Heard and Continued* |
| 07/15/2020 | Order to Enter |
| 07/15/2020 | Terms of Decree Read into the Record |
| 07/15/2020 | Motion to Adjudge in Contempt<br>Party: Plaintiff PALANGE, MARGARITA |
| 07/15/2020 | Objection Filed<br>Party: Plaintiff PALANGE, MARGARITA |
| 07/01/2020 | Motion to Vacate<br>*Motion for Relief Under Rule 60* |
| 06/23/2020 | Transcript Requested<br>*? Appeal* |
| 04/27/2020 | **Hearing on Body Attachment** (Judicial Officer: Jones, Paul)<br>04/27/2020   Reset by Court to 04/27/2020<br>*Heard and Continued* |
| 04/27/2020 | Body Attachment Withdrawn |
| 01/22/2020 | **Reciprocal Motion** (Judicial Officer: Jones, Paul)<br>*Passed* |
| 01/22/2020 | Fails to Appear<br>*Pass* |
| 12/16/2019 | Appeal of Magistrate's Decision<br>*Appeal from 11/26/19 magistrate's order* |
| 12/13/2019 | Motion to Strike<br>*12.13.19 Palange, M - Pl. Mtn to Strike Def Mtn to Stay* |
| 12/13/2019 | Motion to Strike<br>*12.13.19 Palange, M - Pl. Mnt to Strike Def Obj* |
| 12/10/2019 | Objection to Order<br>*Defendant's Objection to Order dated 11-26-19* |
| 12/06/2019 | Entry of Appearance<br>Party: Defendant PALANGE, STEVEN |
| 12/04/2019 | Miscellaneous Motion Filed<br>*Motion to stay enforcement of family court orders* |
| 11/29/2019 | Case Transmitted to Supreme Court<br>*RETURNED AFTER INTERIM REMAND.* |
| 11/26/2019 | Judgment Entered<br>*Jones, M.* |
| 11/13/2019 | **DHS Motion** (Judicial Officer: Jones, Paul)<br>*Heard and Continued* |
| 11/13/2019 | Affidavit Filed |
| 11/13/2019 | Fails to Appear<br>Party: Defendant PALANGE, STEVEN |
| 11/13/2019 | Body Attachment Issued As Ordered |
| 10/30/2019 | *CANCELED* **DHS Motion** |
| 10/23/2019 | Appeal Denied |
| 10/23/2019 | |

## CASE SUMMARY
### CASE NO. W20120361

| | |
|---|---|
| | 📋 Case Received from Supreme Court<br>*Appeal Denied case closed SU-2019-372-A* |
| 10/10/2019 | 📋 Case Received from Supreme Court<br>*Remand Sole purpose of matters left pending from Aug 14, 2019 hearing* |
| 10/09/2019 | 🔲 *CANCELED* **DHS Motion** |
| 10/09/2019 | 📋 Summons |
| 10/08/2019 | 📋 DHS Motion for Medical Coverage |
| 10/08/2019 | 🔲 Notice of Hearing |
| 10/08/2019 | 📋 Objection Filed<br>*to hearing of 10-9-19* |
| 09/26/2019 | 🔲 Notice of Hearing |
| 09/25/2019 | **DHS Motion** (Judicial Officer: Jones, Paul)<br>*Heard and Continued* |
| 09/25/2019 | 📋 Summons |
| 09/24/2019 | 📋 DHS Motion for Medical Coverage |
| 09/20/2019 | 📋 Subpoena Returned<br>*Steven Palange* |
| 09/16/2019 | *CANCELED* **DHS Motion** |
| 09/12/2019 | 📋 Return of Service |
| 09/12/2019 | 📋 Return of Service |
| 09/11/2019 | 📋 Objection to Order<br>*Deft's Objection to Judge Jones Judgement/Order*<br>Party: Defendant PALANGE, STEVEN |
| 09/11/2019 | 📋 Order Entered |
| 09/10/2019 | 📋 Case Transmitted to Supreme Court |
| 09/10/2019 | 📋 Appeal Transcript |
| 09/10/2019 | 📋 Transcript Completed |
| 09/05/2019 | 📋 Transcripts Ordered<br>*email and US mail* |
| 09/05/2019 | 📋 Transcript Requested |
| 09/04/2019 | 📋 Case Transmitted to Supreme Court<br>*SU-2019-0156-A* |
| 09/04/2019 | 📋 Case Transmitted to Supreme Court<br>*SU-2019-0125-A* |
| 09/04/2019 | 📋 Order Entered |
| 09/03/2019 | 📋 Motion to Quash Subpoena<br>*Plaintiff's motion to quash and for protective order* |
| 08/29/2019 | 📋 Miscellaneous Document Filed<br>*Copy of unsigned Order of Magistrate Jones hearing date 08/14/2019* |
| 08/29/2019 | 📋 Transcript Requested |

## CASE SUMMARY
### CASE NO. W20120361

| | |
|---|---|
| | *(not signed or dated)* |
| 08/29/2019 | 📋 Appeal of Magistrate's Decision |
| | Party: Defendant PALANGE, STEVEN |
| 08/29/2019 | 📋 Miscellaneous Document Filed |
| | *Copy of unsigned Order 07/31/2019,08/01/2019 before Judge Lanni* |
| 08/29/2019 | 📋 Transcript Requested |
| | *(not signed or dated)* |
| 08/29/2019 | 📋 Notice of Appeal Supreme Court |
| | *Receipt No. FCW-2019-000424* |
| | Party: Defendant PALANGE, STEVEN |
| 08/22/2019 | 📋 Decision Entered |
| 08/22/2019 | 📋 Order Entered |
| 08/18/2019 | 📋 Order Entered |
| 08/14/2019 | **DHS Motion** (Judicial Officer: Jones, Paul) |
| | *Heard and Continued* |
| 08/14/2019 | Previous Orders Full Force and Effect |
| 08/14/2019 | Order to Enter |
| 08/14/2019 | Granted |
| 08/14/2019 | Heard on Oral Motion |
| | *DHS* |
| | Party: Plaintiff PALANGE, MARGARITA |
| 08/14/2019 | Order to Enter |
| 08/14/2019 | Terms of Decree Read into the Record |
| 08/14/2019 | Fails to Appear |
| | *Defendant called by Sheriff at 10:15 AM -no response* |
| | Party: Defendant PALANGE, STEVEN |
| 08/14/2019 | Order to Enter |
| 08/14/2019 | Heard on Motion to Quash |
| | *granted* |
| | Party: Plaintiff PALANGE, MARGARITA |
| 08/14/2019 | 📋 Motion to Quash Subpoena |
| | *subpoena* |
| | Party: Plaintiff PALANGE, MARGARITA |
| 08/13/2019 | 📋 Subpoena Returned |
| | *08.13.19 Palange - Subpoena BOA Ind. ROS* |
| 08/13/2019 | 📋 Subpoena Returned |
| | *08.13.19 Palange - Subpoena BOA Bus. ROS* |
| 08/13/2019 | 📋 Objection Filed |
| | *08.13.19 Objection - Palange Mtn for Continuance* |
| 08/13/2019 | 📋 Objection Filed |
| | *08.13.19 Objection - Palange Mtn to Compel Off-Transcript* |
| 08/13/2019 | 📋 Subpoena Returned |
| | *08.13.19 Palange -Subpoena Citizens Ind. ROS* |
| 08/13/2019 | 📋 Subpoena Returned |
| | *08.13.19 Palange - Subpoena Citizens Bus. ROS* |
| 08/13/2019 | 📋 Subpoena Returned |

## CASE SUMMARY
### CASE NO. W20120361

*08.13.19 Palange - Subpoena to S. Palange ROS*

| | |
|---|---|
| 08/13/2019 | Subpoena Returned<br>*08.13.19 Palange - Subpoena AMX Bus ROS* |
| 08/13/2019 | Subpoena Returned<br>*8.13.19 Palange - Subpoena AMX Ind ROS* |
| 08/13/2019 | Motion for Continuance<br>*Mag. Paul Jones*<br>Party: Defendant PALANGE, STEVEN |
| 08/09/2019 | Objection Filed<br>*Objection - Palange 8.8.19* |
| 08/07/2019 | **DHS Motion** (Judicial Officer: Jones, Paul)<br>*Heard and Continued* |
| 08/07/2019 | Order to Enter |
| 08/07/2019 | Terms of Decree Read into the Record |
| 08/07/2019 | Heard on Miscellaneous Motion |
| 08/01/2019 | **Trial** (Judicial Officer: Lanni, Sandra)<br>*Heard and Concluded* |
| 08/01/2019 | Order to Enter |
| 08/01/2019 | Exhibits Filed in Case |
| 08/01/2019 | Miscellaneous Motion Filed<br>*Deft; Motion for Default Judgment* |
| 08/01/2019 | Motion to Adjudge in Contempt<br>*Deft; Motion for Attorney Richard Updegrove to be held in contempt of court ((DHS))* |
| 08/01/2019 | Motion to Adjudge in Contempt<br>*Deft; Motion for Contempt for filing 7th Motion for Contempt ((DHS))* |
| 08/01/2019 | Motion to Adjudge in Contempt<br>*Plaintiff's 7th motion to adjudge Defendant in Contempt* |
| 07/31/2019 | **Trial** (Judicial Officer: Lanni, Sandra)<br>*Heard and Continued* |
| 07/31/2019 | Entry of Appearance<br>*Pltf: Co-counsel* |
| 07/31/2019 | Return of Service<br>Party: Defendant PALANGE, STEVEN |
| 07/31/2019 | Summons<br>*DHS* |
| 07/26/2019 | Objection Filed<br>*Mootion to quash*<br>Party: Defendant PALANGE, STEVEN |
| 07/24/2019 | CANCELED **DHS Motion** |
| 07/24/2019 | Motion to Quash Subpoena<br>*Motion to Quash Subpoena* |
| 07/23/2019 | Objection Filed<br>*Palange - Pl, Obj to Mtn Default Judgment 7.23.19* |
| 07/23/2019 | Objection Filed<br>*Palange - Obj to Mtn 07.23.19* |

*Printed on 12/01/2020 at 2:42 PM*

# CASE SUMMARY
## CASE NO. W20120361

| | |
|---|---|
| 07/22/2019 | Motion to Adjudge in Contempt |
| | Party: Defendant PALANGE, STEVEN |
| 07/22/2019 | Miscellaneous Motion Filed |
| | *Motion for Default Judgment* |
| | Party: Defendant PALANGE, STEVEN |
| 07/18/2019 | Motion to Quash Subpoena |
| | *Motion to Quash Subpoena and for Protective Order and for Imposition of Sanctions* |
| 07/17/2019 | Objection Filed |
| | Party: Defendant PALANGE, STEVEN |
| 07/17/2019 | Objection Filed |
| | *Attorney Fees* |
| | Party: Defendant PALANGE, STEVEN |
| 07/17/2019 | Objection Filed |
| | *Motion to Quash* |
| | Party: Defendant PALANGE, STEVEN |
| 07/08/2019 | Objection to Miscellaneous Motion Filed |
| | *Objection to Defendant's Emergency Motion for Default Judgment* |
| 07/08/2019 | Emergency Motion Filed |
| | *Defendant; Emergency Motion for Default Judgement* |
| 07/04/2019 | Order Entered |
| 07/02/2019 | Objection to Miscellaneous Motion Filed |
| | *Objection to Emergency Motion for an Injunction to Enforce the Constitutional Rights of Steven Palange and His Minor Daughter K.P.* |
| 07/01/2019 | Emergency Motion Filed |
| | *Future date to be assigned case on limited remand from Supreme Court* |
| 06/26/2019 | Affidavit Filed |
| | Party: Defendant PALANGE, STEVEN |
| 06/26/2019 | Emergency Motion Filed |
| | Party: Defendant PALANGE, STEVEN |
| 06/25/2019 | Objection to Miscellaneous Motion Filed |
| | *Future date to be assigned* |
| 06/25/2019 | Objection to Miscellaneous Motion Filed |
| | *Future dte to be assigned* |
| 06/24/2019 | Objection to Miscellaneous Motion Filed |
| | *Future date to be assigned* |
| 06/24/2019 | Objection to Miscellaneous Motion Filed |
| | *Objection to Defendant's Motion to Recuse Honorable Judge Sandra Lanni* |
| 06/24/2019 | Objection Filed |
| | *future date to be assigned* |
| | Party: Defendant PALANGE, STEVEN |
| 06/24/2019 | Miscellaneous Motion Filed |
| | *future date to be assigned* |
| | Party: Defendant PALANGE, STEVEN |
| 06/24/2019 | Miscellaneous Motion Filed |
| | *Future dte to he assigned* |
| | Party: Defendant PALANGE, STEVEN |

Printed on 12/01/2020 at 2:42 PM

WASHINGTON COUNTY FAMILY COURT

# CASE SUMMARY
## CASE NO. W20120361

| | |
|---|---|
| 06/24/2019 | Miscellaneous Motion Filed |
| | *future date to be assigned* |
| | Party: Defendant PALANGE, STEVEN |
| 06/21/2019 | Case Received from Supreme Court |
| | *Appeal Dismissed 1/16/19* |
| 06/20/2019 | Control Date (Judicial Officer: Lanni, Sandra) |
| | *Heard and Continued* |
| 06/20/2019 | Miscellaneous Motion Filed |
| | *Deft: Motion to Recuse* |
| 06/19/2019 | Notice Sent |
| 06/19/2019 | Motion for Continuance |
| | Party: Defendant PALANGE, STEVEN |
| 06/17/2019 | DHS Motion for Modification or Adjustment |
| 06/12/2019 | Notice Sent |
| 06/07/2019 | Objection Filed |
| | Party: Defendant PALANGE, STEVEN |
| 06/07/2019 | Case Received from Supreme Court |
| | *Remand transmittal* |
| 05/17/2019 | Child Support Case Registration Form |
| 05/10/2019 | Motion to Enter an Order |
| | *Mtn to enter order of April 15 , 2019* |
| 05/09/2019 | Income Withholding Order (DR-29) |
| 05/09/2019 | Objection Filed |
| | *no date assigned Case at Supreme Court* |
| | Party: Defendant PALANGE, STEVEN |
| 05/09/2019 | Order Entered |
| 05/08/2019 | Control Date (Judicial Officer: Lanni, Sandra) |
| | **05/08/2019     Reset by Court to 05/08/2019** |
| | *Heard and Continued* |
| 05/08/2019 | Miscellaneous Document Filed |
| | *Income Withholding for Support* |
| 05/08/2019 | Motion for Counsel Fees Filed |
| | *Third Party: Tanya Gravel Esq* |
| 05/08/2019 | Motion for Counsel Fees Filed |
| | *Third Party: Susan Fink Esq for Tanya Gravel Esq* |
| 05/08/2019 | Motion to Quash Subpoena |
| | *Third Party: Susan Fink Esq for Tanya Gravel Esq* |
| 05/03/2019 | Objection Filed |
| | *Objection to Defendant's Motion for Definite Statement* |
| 05/03/2019 | Miscellaneous Motion Filed |
| | *Motion for Definite Statement* |
| | Party: Defendant PALANGE, STEVEN |
| 05/03/2019 | Affidavit Filed |

WASHINGTON COUNTY FAMILY COURT

## CASE SUMMARY
### CASE NO. W20120361

|  |  |
|---|---|
|  | *Affidavit* |
| 05/01/2019 | Case Transmitted to Supreme Court |
| 05/01/2019 | Appeal Transcript |
| 05/01/2019 | Transcript Completed |
| 05/01/2019 | Transcripts Ordered |
| 04/29/2019 | Transcript Requested<br>*Amended* |
| 04/26/2019 | Motion to Stay<br>*Appeal to Supreme Court*<br>Party: Defendant PALANGE, STEVEN |
| 04/25/2019 | Transcript Requested |
| 04/25/2019 | Notice of Appeal Supreme Court<br>Party: Defendant PALANGE, STEVEN |
| 04/25/2019 | Affidavit Filed<br>*Affidavit of counsel fees* |
| 04/24/2019 | Objection Filed<br>*to order and deciscion*<br>Party: Defendant PALANGE, STEVEN |
| 04/23/2019 | Miscellaneous Motion Filed<br>*Motion to Enter Proposed Decision* |
| 04/23/2019 | Miscellaneous Document Filed<br>*Decision* |
| 04/22/2019 | Objection Filed<br>*Order of April 15*<br>Party: Defendant PALANGE, STEVEN |
| 04/15/2019 | **Trial** (Judicial Officer: Lanni, Sandra)<br>*Heard and Continued* |
| 04/15/2019 | Decision Rendered<br>*Re: child support* |
| 04/15/2019 | Order to Enter |
| 04/15/2019 | Child Support Worksheet Entered<br>*2019* |
| 04/15/2019 | Child Support Worksheet Entered<br>*2018* |
| 04/15/2019 | Order Entered<br>*Order of April 8, 2019* |
| 04/15/2019 | Motion to Stay<br>*Stay Proceeding Pending Appeal*<br>Party: Defendant PALANGE, STEVEN |
| 04/15/2019 | Miscellaneous Motion Filed<br>*to accept late filing of Answer and counterclaim*<br>Party: Defendant PALANGE, STEVEN |
| 04/13/2019 | Objection Filed<br>*Plaintiff' objection to mtn to stay* |
| 04/12/2019 | Objection Filed |

WASHINGTON COUNTY FAMILY COURT
## CASE SUMMARY
### CASE NO. W20120361

*April 8 order*
Party: Defendant PALANGE, STEVEN

04/12/2019   Motion to Stay
*Appeal to Supreme Court*
Party: Defendant PALANGE, STEVEN

04/11/2019   Motion to Enter an Order
*Motion to Enter Order*

04/11/2019   Objection Filed
*Proposed March 7th*
Party: Defendant PALANGE, STEVEN

04/09/2019   Objection Filed
*Objection to Defendant Filing answer and Counterclaim Out of Time*

04/08/2019   Trial (Judicial Officer: Lanni, Sandra)
*Heard and Continued*

04/08/2019   Order to Enter

04/08/2019   Order Entered
*Order of March 7, 2019*

04/08/2019   Miscellaneous Document Filed
*Def Demand for Jury Trial*

04/08/2019   Case Transmitted to Supreme Court

04/08/2019   Answer and Counterclaim Filed
Party: Defendant PALANGE, STEVEN

04/05/2019   Objection Filed
*Violation of Due Process*
Party: Defendant PALANGE, STEVEN

04/03/2019   Emergency Motion Filed
*Motion to postpone Hearing April 8th (Motion denied)*
Party: Defendant PALANGE, STEVEN

04/03/2019   Objection to Miscellaneous Motion Filed
*Plaintiff's Objection to Motion to Postpone Hearing Schedule April 8, 2019*

03/21/2019   Objection Filed
Party: Defendant PALANGE, STEVEN

03/14/2019   Motion to Enter an Order
*Motion to Enter Order of March 8, 2019 and for Imposition of Sanctions*

03/14/2019   Objection Filed
*To Order 3/7/19*
Party: Defendant PALANGE, STEVEN

03/07/2019   Trial (Judicial Officer: Lanni, Sandra)
*Heard and Continued*

03/07/2019   Objection to Miscellaneous Motion Filed
*Objection to Defendant's Motion to Order Negotiation, Mediation and Binding Arbitration*

03/07/2019   Objection Filed
*Legal Fees*
Party: Defendant PALANGE, STEVEN

03/07/2019   Memorandum Filed
*Plaintiff's Memo re Counsel Fees*

WASHINGTON COUNTY FAMILY COURT

# CASE SUMMARY
## CASE NO. W20120361

| | |
|---|---|
| 03/06/2019 | Statement of Assets, Liabilities, Income, and Expenses (DR6)<br>Party: Defendant PALANGE, STEVEN |
| 03/06/2019 | Miscellaneous Case Closed<br>Party: Defendant PALANGE, STEVEN |
| 03/06/2019 | Affidavit Filed<br>*Affidavit of Attorney's fees (plaintiff - updated)* |
| 03/05/2019 | Objection Filed<br>*Objection to Integrity of Docket Sheet and Ex-parte Chamber Conferences* |
| 03/05/2019 | Objection Filed<br>Party: Defendant PALANGE, STEVEN |
| 03/05/2019 | Objection Filed<br>*Objection to Defendant's Objection and Motion* |
| 02/28/2019 | Order Entered |
| 02/26/2019 | Objection Filed<br>Party: Defendant PALANGE, STEVEN |
| 02/22/2019 | Trial (Judicial Officer: Lanni, Sandra)<br>*Heard and Continued* |
| 02/22/2019 | Statement of Assets, Liabilities, Income, and Expenses (DR6)<br>*Plaintiff DR6A* |
| 02/18/2019 | Trial (Judicial Officer: Lanni, Sandra)<br>*Objection to Jan 24th order*<br>*Heard and Continued* |
| 02/18/2019 | Order Entered |
| 02/16/2019 | Objection to Miscellaneous Motion Filed<br>*Plaintiff's objection to Def min for emerg hearing* |
| 02/15/2019 | Objection Filed<br>*Alienation*<br>Party: Defendant PALANGE, STEVEN |
| 02/14/2019 | Objection Filed<br>*Ad Litem*<br>Party: Defendant PALANGE, STEVEN |
| 02/14/2019 | Miscellaneous Motion Filed<br>*Equal Treatment*<br>Party: Defendant PALANGE, STEVEN |
| 02/14/2019 | Miscellaneous Motion Filed<br>*Submit an Affidavit for emergency Hearing*<br>Party: Defendant PALANGE, STEVEN |
| 02/14/2019 | Objection Filed<br>*3rd Obj to proposed Order Jan 24 2019* |
| 02/14/2019 | Objection Filed<br>*Ex Parte Motion May 8th*<br>Party: Defendant PALANGE, STEVEN |
| 02/11/2019 | Objection Filed<br>*motion to enter order* |
| 02/08/2019 | Objection Filed<br>Party: Defendant PALANGE, STEVEN |

WASHINGTON COUNTY FAMILY COURT

## CASE SUMMARY
### CASE NO. W20120361

| | | |
|---|---|---|
| 02/07/2019 | 📄 Objection Filed | |
| | Party: Defendant PALANGE, STEVEN | |
| 02/07/2019 | 📄 Motion to Enter an Order | |
| | *Motion to Enter Order of January 24, 2019 and for Imposition of Sanctions* | |
| 02/06/2019 | 📄 Objection Filed | |
| | *Jan 24th* | |
| | Party: Defendant PALANGE, STEVEN | |
| 02/04/2019 | 📄 Objection to Request for Production | |
| | *Plaintiff's Objection to Defendant's Request for Production of Documents* | |
| 01/29/2019 | 📄 Objection Filed | |
| | *Objection to Defendant's motion* | |
| 01/29/2019 | 📄 Miscellaneous Document Filed | |
| | *Re: counsel fees Atty Iannone* | |
| 01/25/2019 | 📄 Affidavit Filed | |
| | Party: Defendant PALANGE, STEVEN | |
| 01/25/2019 | 📄 Miscellaneous Motion Filed | |
| | *Motion for mediation* | |
| | Party: Defendant PALANGE, STEVEN | |
| 01/25/2019 | 📄 Letter Filed | |
| 01/24/2019 | **Control Date** (Judicial Officer: Lanni, Sandra) | |
| | *01/24/2019    Reset by Court to 01/24/2019* | |
| | *Heard and Continued* | |
| 01/24/2019 | Heard on Motion to Quash | |
| | *Granted - Butler Hospital* | |
| 01/24/2019 | 📄 Subpoena Returned | |
| 01/23/2019 | 📄 Subpoena Returned | |
| 01/22/2019 | 📄 Motion to Quash Subpoena | |
| | *Plaintiff's Motion to Quash Subpoena* | |
| 01/22/2019 | 📄 Affidavit Filed | |
| | *of Wade Myers* | |
| 01/22/2019 | 📄 Subpoena Returned | |
| | *Served* | |
| 01/22/2019 | 📄 Motion to Quash Subpoena | |
| | *Non-Party, Wade Myers, MD's, Motion to Quash and Objection to Subpoena* | |
| 01/18/2019 | 📄 Objection to Miscellaneous Motion Filed | |
| | *Palange - Pl. Obj to Def's Mtn to Quash Supoenas* | |
| 01/18/2019 | 📄 Objection to Miscellaneous Motion Filed | |
| | *Palange - Pl. Obj to Def's Misc Motion* | |
| 01/18/2019 | 📄 Motion to Quash Subpoena | |
| | Party: Defendant PALANGE, STEVEN | |
| 01/18/2019 | 📄 Miscellaneous Motion Filed | |
| | *Declaration of Rights* | |
| | Party: Defendant PALANGE, STEVEN | |
| 01/18/2019 | 📄 Objection Filed | |

## CASE SUMMARY
### CASE NO. W20120361

*Plaintiff's objection to Def mtn to accept late filing of appeal*

| | |
|---|---|
| 01/16/2019 | Miscellaneous Motion Filed |
| 01/16/2019 | Notice of Appeal Supreme Court<br>Party: Defendant PALANGE, STEVEN |
| 01/14/2019 | Objection to Miscellaneous Motion Filed<br>*Plaintiff's Objection to Defendant's Motion* |
| 01/14/2019 | Subpoena Returned<br>*Subpoena - Citizens bank - keeper of the records* |
| 01/14/2019 | Subpoena Returned<br>*Subpoena returned - Bank of America TLIC - Palange* |
| 01/14/2019 | Subpoena Returned<br>*Subpoena returned served - Bank of America - Steven Palange* |
| 01/14/2019 | Miscellaneous Motion Filed<br>*motion for certified copy of the court file*<br>Party: Defendant PALANGE, STEVEN |
| 01/11/2019 | Objection Filed<br>Party: Defendant PALANGE, STEVEN |
| 01/10/2019 | Objection to Miscellaneous Motion Filed<br>*Plaintiff's Objection to Defendant's Miscellaneous Motion* |
| 01/09/2019 | Objection Filed<br>Party: Defendant PALANGE, STEVEN |
| 01/07/2019 | Objection to Miscellaneous Motion Filed<br>*Plaintiff's Objection to Defendant's Motion for Extension of Time* |
| 01/07/2019 | Motion to Adjudge in Contempt<br>*Plaintiff's Sixth Motion to Adjudge Defendant in Contempt* |
| 01/07/2019 | Miscellaneous Motion Filed<br>*Motion* |
| 01/07/2019 | Order Entered |
| 01/03/2019 | Motion for Continuance<br>Party: Defendant PALANGE, STEVEN |
| 12/07/2018 | Control Date (Judicial Officer: Lanni, Sandra)<br>*Motion Filed*<br>*Heard and Continued* |
| 12/07/2018 | Heard on Motion to Withdraw<br>*Granted*<br>Party: Attorney of Record GRAVEL, TANYA MELISSA |
| 12/07/2018 | Entry of Appearance<br>Party: Defendant PALANGE, STEVEN |
| 12/07/2018 | Terms of Decree Read into the Record |
| 12/07/2018 | Order to Enter |
| 12/05/2018 | Affidavit Filed<br>*Affidavit of Attorney's Fees* |
| 12/05/2018 | Report Filed<br>*RI Hospital - Dr Myers* |
| 11/30/2018 | Objection to Miscellaneous Motion Filed |

WASHINGTON COUNTY FAMILY COURT
## CASE SUMMARY
### CASE NO. W20120361

*Objection to GAL's Motion for Fees*

**11/30/2018** Motion for Counsel Fees Filed
*GAL's Motion for Fees*

**11/29/2018** Objection to Motion to Adjudge Filed
Party: Defendant PALANGE, STEVEN

**11/29/2018** Motion to Adjudge in Contempt
Party: Plaintiff PALANGE, MARGARITA

**11/29/2018** Objection to Motion to Adjudge Filed
Party: Plaintiff PALANGE, MARGARITA

**11/20/2018** Motion to Adjudge in Contempt
*f*
Party: Plaintiff PALANGE, MARGARITA

**11/15/2018** Child Support Worksheet Entered

**11/15/2018** Order Entered

**10/31/2018** **Control Date** (Judicial Officer: Lanni, Sandra)
*Heard and Continued*

**10/31/2018** Miscellaneous Document Filed
*from Deft.*

**10/31/2018** Order to Enter

**10/30/2018** Motion to Withdraw
Party: Defendant PALANGE, STEVEN

**10/30/2018** Objection to Motion to Adjudge Filed
*Objection to Motion to Adjudge In Contempt and for Other Relief*

**10/30/2018** Report of Guardian Ad Litem Filed
*GAL Report*

**10/26/2018** Motion to Adjudge in Contempt
*Motion to Adjudge Defendant in Contempt and Other Relief*

**10/25/2018** Objection to Miscellaneous Motion Filed
*Objection to Motion to Suspend Visitation*

**10/25/2018** Miscellaneous Motion Filed
*10.25.18 Palange - Mtn to suspend visitation*
Party: Plaintiff PALANGE, MARGARITA

**10/24/2018** Objection to Order
Party: Defendant PALANGE, STEVEN

**10/22/2018** Objection to Motion to Adjudge Filed
*Objection to Motion to Adjudge in Contempt and For Sanctions*

**10/22/2018** Motion to Adjudge in Contempt
Party: Plaintiff PALANGE, MARGARITA

**10/16/2018** Entry of Appearance

**10/09/2018** Order Entered

**10/09/2018** Order Entered

**09/24/2018** **Trial** (Judicial Officer: Lanni, Sandra)
*Emergency*
*09/20/2018    Continued to 09/24/2018 - Per Attorney - PALANGE,*

WASHINGTON COUNTY FAMILY COURT

# CASE SUMMARY
## CASE NO. W20120361

MARGARITA; PALANGE, STEVEN

| | |
|---|---|
| 09/24/2018 | Continued to 09/20/2018 - Per Attorney - PALANGE, MARGARITA; PALANGE, STEVEN |
| 09/24/2018 | Continued to 09/24/2018 - Per Attorney - PALANGE, MARGARITA; PALANGE, STEVEN |

*Heard and Continued*

| | |
|---|---|
| 09/24/2018 | Order to Enter |
| 09/22/2018 | Objection to Miscellaneous Motion Filed |
| 09/22/2018 | Objection Filed |
| | *Objection to Plaintiff's Emergency Motion* |
| 09/21/2018 | Miscellaneous Motion Filed |
| | *Mtn to Reconsider* |
| | Party: Plaintiff PALANGE, MARGARITA |
| 09/20/2018 | Motion (Judicial Officer: Lanni, Sandra) |
| | *Heard and Continued* |
| 09/20/2018 | Referred For Supervised Visitations |
| 09/20/2018 | Motion Withdrawn |
| | *For Deft. counsel* |
| 09/19/2018 | Emergency Motion Filed |
| | Party: Plaintiff PALANGE, MARGARITA |
| 09/19/2018 | Letter Filed |
| | *So. Shore* |
| 09/19/2018 | Letter Filed |
| | *Re: Steven Palange - from Christine Omerhi Pincince, FNP* |
| 09/17/2018 | Motion to Compel |
| | *Plaintiff's Motion to Compel Compliance With Subpoena and for Sanctions* |
| 09/15/2018 | Motion to Compel |
| | *Plaintiff's mtn to compel compliance with subpoena* |
| 09/12/2018 | Emergency Motion Filed |
| | Party: Plaintiff PALANGE, MARGARITA |
| 09/12/2018 | Order Entered |
| 09/10/2018 | Subpoena Returned |
| 08/31/2018 | Miscellaneous Document Filed |
| 08/29/2018 | Objection to Motion for Visitation Filed |
| | Party: Plaintiff PALANGE, MARGARITA |
| 08/28/2018 | Miscellaneous Motion Filed |
| | *Motion to Resume Visitation* |
| | Party: Defendant PALANGE, STEVEN |
| 08/28/2018 | Subpoena Returned |
| 08/28/2018 | Motion to Adjudge in Contempt |
| | *Defendant's Second Motion to Adjudge in Contempt* |
| | Party: Defendant PALANGE, STEVEN |
| 08/28/2018 | Objection to Motion to Adjudge Filed |
| | *Objection to Plaintiff's Third Motion to Adjudge in Contempt* |
| 08/27/2018 | |

*Printed on 12/01/2020 at 2:42 PM*

WASHINGTON COUNTY FAMILY COURT

## CASE SUMMARY
### CASE NO. W20120361

|  |  |
|---|---|
|  | Motion to Adjudge in Contempt |
|  | *Third Motion to Adjudge Defendant in Contempt* |
|  | Party:  Plaintiff  PALANGE, MARGARITA |
| 08/17/2018 | Subpoena Returned |
|  | *Subpoena Returned Served Bank of America* |
| 08/15/2018 | Order Entered |
| 08/09/2018 | Objection to Motion to Adjudge Filed |
| 08/08/2018 | Subpoena Returned |
| 08/08/2018 | Subpoena Returned |
| 08/08/2018 | Subpoena Returned |
|  | *Subpoena of Patrolman David Marler* |
| 08/08/2018 | Subpoena Returned |
|  | *Subpoena of Mathew Biben - TLIC Worldwide* |
| 08/08/2018 | Motion to Adjudge in Contempt |
|  | Party:  Plaintiff  PALANGE, MARGARITA |
| 07/31/2018 | Objection to Motion to Adjudge Filed |
|  | Party:  Plaintiff  PALANGE, MARGARITA |
| 07/27/2018 | **Motion** (Judicial Officer: Lanni, Sandra) |
|  | *Heard and Continued* |
| 07/27/2018 | Motion to Withdraw |
| 07/27/2018 | Motion to Adjudge in Contempt |
|  | Party:  Defendant  PALANGE, STEVEN |
| 06/26/2018 | Objection to Motion to Adjudge Filed |
|  | *Objection to Motion to Adjudge in Contempt* |
| 06/26/2018 | Motion to Adjudge in Contempt |
|  | *Mtn to Adjudge Def in Contempt* |
| 06/25/2018 | Order Entered |
| 06/21/2018 | Objection to Miscellaneous Motion Filed |
|  | *Objection to Motion to Appoint GAL* |
| 06/20/2018 | Motion to Appoint Guardian Ad Litem Filed |
|  | *Plaintiff's Motion to Appoint Guardian Ad Litem for Benefit of Defendant* |
| 06/20/2018 | Objection to Miscellaneous Motion Filed |
|  | *Plaintiff's Objection to Defendant's Motion to Quash Subpoena for Documents* |
| 06/19/2018 | Motion to Quash Subpoena |
|  | *Motion to Quash Subpoena* |
| 06/13/2018 | **Motion** (Judicial Officer: Lanni, Sandra) |
|  | *Heard and Continued* |
| 06/13/2018 | Order Entered |
| 06/13/2018 | Report Filed |
|  | *Dr. Barratt* |
| 06/13/2018 | Motion to Strike |
|  | *Palange Plaintiff's Motion to Strike* |
| 06/13/2018 |  |

WASHINGTON COUNTY FAMILY COURT

# CASE SUMMARY
### CASE NO. W20120361

|  |  |
|---|---|
|  | Report Filed |
|  | *Yale New Haven Health* |
| 06/08/2018 | Objection to Order |
|  | *Objection to 5-30-18 Order* |
| 06/08/2018 | Motion to Adjudge in Contempt |
|  | *Mtn to Adjudge in Contempt* |
| 06/08/2018 | Objection to Motion to Adjudge Filed |
|  | *Objection to Motion to Adjudge in Contempt* |
| 05/30/2018 | **Motion** (Judicial Officer: Lanni, Sandra) |
|  | *Heard and Continued* |
| 05/30/2018 | Objection Filed |
| 05/30/2018 | Entry of Appearance |
| 05/25/2018 | Statement of Assets, Liabilities, Income, and Expenses (DR6) |
|  | *Plaintiff's DR6A* |
| 05/23/2018 | Statement of Assets, Liabilities, Income, and Expenses (DR6) |
|  | Party: Defendant PALANGE, STEVEN |
| 05/23/2018 | Entry of Appearance |
|  | Party: Defendant PALANGE, STEVEN |
| 05/15/2018 | Subpoena Returned |
|  | *Subpoena Returned Served* |
| 05/15/2018 | Summons Returned Served |
|  | *Summons Returned Served 5.10.18* |
| 05/09/2018 | Summons |
| 05/09/2018 | Coversheet Filed |
| 05/09/2018 | Entry of Appearance |
| 05/09/2018 | Ex Parte Order Entered |
| 05/09/2018 | Stipulation Filed |
| 05/09/2018 | Affidavit Filed |
| 05/09/2018 | Post Final Judgment Motion Filed |
|  | *Emergency* |
| 12/18/2013 | Final Judgment Entered Pretrial |
|  | *CAPINERI, J.* |
| 09/18/2013 | Decision Pending Entry of Final Judgment Entered |
|  | *DISEGNA J.* |
| 08/20/2013 | **Contested Track Pre-Trial** (Judicial Officer: DiSegna, Debra E.) |
|  | *Heard and Concluded* |
| 08/20/2013 | Property Settlement Agreement Filed |
| 08/20/2013 | Heard and Decision for Plaintiff and Defendant at Pretrial |
|  | *DISEGNA, J. - IRR DIFF* |
| 08/13/2013 | Order Entered |
| 07/31/2013 | Continued for Pretrial |
|  | *DISEGNA, J.* |
| 07/31/2013 | **Contested Track Pre-Trial** (Judicial Officer: DiSegna, Debra E.) |

*Printed on 12/01/2020 at 2:42 PM*

WASHINGTON COUNTY FAMILY COURT

# CASE SUMMARY
### CASE NO. W20120361

|  |  |
|---|---|
| | *Heard and Continued* |
| 07/30/2013 | Mediation Status Report |
| 07/22/2013 | Continued for Pretrial<br>*DISEGNA J.* |
| 07/22/2013 | **Control Date** (Judicial Officer: DiSegna, Debra E.)<br>*Heard and Continued* |
| 06/13/2013 | Continued For Mediation<br>*DISEGNA, J.* |
| 06/13/2013 | **Contested Track Pre-Trial** (Judicial Officer: DiSegna, Debra E.)<br>*Heard and Continued* |
| 05/23/2013 | Referred to Mediation<br>*DISEGNA, J.* |
| 05/23/2013 | Objection Filed<br>*DEFT* |
| 05/23/2013 | Motion for Relief Filed<br>*DEFT* |
| 05/23/2013 | Order to Enter<br>*DISEGNA, J.* |
| 05/23/2013 | Terms of Decree Read into the Record<br>*DISEGNA, J.* |
| 05/23/2013 | Continued for Pretrial<br>*DISEGNA, J.* |
| 05/23/2013 | **Control Date** (Judicial Officer: DiSegna, Debra E.)<br>*Heard and Continued* |
| 05/21/2013 | Motion for Relief Filed<br>*PLTF* |
| 05/09/2013 | **Control Date** (Judicial Officer: DiSegna, Debra E.)<br>*Vacated* |
| 04/25/2013 | **Control Date** (Judicial Officer: DiSegna, Debra E.)<br>*Vacated* |
| 04/17/2013 | Continued For Control |
| 04/17/2013 | Continued For Control<br>*DISEGNA, J.* |
| 04/17/2013 | Previous Date Vacated<br>*DISEGNA, J.* |
| 04/17/2013 | **Contested Track Pre-Trial** (Judicial Officer: DiSegna, Debra E.)<br>*Heard and Continued* |
| 03/13/2013 | Notice Sent |
| 03/13/2013 | Referred to Mediation<br>*DISEGNA, J. - LORI G @ KENT CTY* |
| 03/13/2013 | Previous Date Vacated<br>*DISEGNA, J.* |
| 02/28/2013 | Consent Decree Entered<br>*DISEGNA, J.* |
| 02/28/2013 | Objection Filed<br>*DEFT* |
| 02/28/2013 | Order Entered<br>*MEDIATION REFERRAL - DISEGNA, J.* |
| 02/28/2013 | Referred to Mediation<br>*LORI GIARRUSSO* |
| 02/28/2013 | Order to Enter<br>*DISEGNA, J.* |

## CASE SUMMARY
### CASE NO. W20120361

| Date | Event |
|---|---|
| 02/28/2013 | Terms of Decree Read into the Record *DISEGNA, J.* |
| 02/28/2013 | Continued for Pretrial *DISEGNA, J.* |
| 02/28/2013 | **Contested Track Pre-Trial** (Judicial Officer: DiSegna, Debra E.) *Heard and Continued* |
| 02/26/2013 | Motion for Restraining Order *PLTF* |
| 02/06/2013 | Order Entered *DISEGNA, J.* |
| 01/24/2013 | Order Entered *DISEGNA, J.* |
| 01/24/2013 | Motion for Relief Filed *DEFT* |
| 01/24/2013 | Objection Filed *DEFT* |
| 01/24/2013 | Entry of Appearance *DEFT* |
| 01/24/2013 | Continued for Pretrial *DISEGNA, J.* |
| 01/24/2013 | Passed For Entry Of Order *DISEGNA, J.* |
| 01/24/2013 | **Contested Track Pre-Trial** (Judicial Officer: DiSegna, Debra E.) *Passed* |
| 01/23/2013 | Motion for Relief Filed *PLTF* |
| 01/18/2013 | Order Entered *DISEGNA, J.* |
| 12/03/2012 | Continued for Pretrial |
| 12/03/2012 | Case Track Changed |
| 12/03/2012 | Case Continued by Agreement *DISEGNA J.* |
| 12/03/2012 | **Nominal Track Merits** (Judicial Officer: DiSegna, Debra E.) *Continued* |
| 11/05/2012 | Statement of Assets, Liabilities, Income, and Expenses (DR6) *DEFT* |
| 11/01/2012 | Passed For Entry Of Order *DISEGNA J.* |
| 11/01/2012 | **Nominal Track Motion** (Judicial Officer: DiSegna, Debra E.) *Passed* |
| 10/25/2012 | Answer to Counterclaim *PLTF* |
| 10/25/2012 | Objection to Temporary Allowances Filed *PLTF* |
| 10/19/2012 | Entry of Appearance *DEFT* |
| 10/19/2012 | Answer and Counterclaim Filed *DEFT* |
| 10/19/2012 | Objection to Temporary Allowances Filed *DEFT* |
| 10/19/2012 | Motion for Temporary Allowance *DEFT* |

Printed on 12/01/2020 at 2:42 PM

WASHINGTON COUNTY FAMILY COURT

# CASE SUMMARY
## CASE NO. W20120361

| | |
|---|---|
| 10/04/2012 | Return of Service |
| 09/25/2012 | Grounds - Irreconcilable Differences |
| 09/24/2012 | Payment Applied<br>*A Payment of -$120.00 was made on receipt FDW5685.* |
| 09/19/2012 | Motion for Temporary Allowance<br>*PLTF* |
| 09/19/2012 | Entry of Appearance<br>*PLTF* |
| 09/19/2012 | Notice |
| 09/19/2012 | Statement Listing Children Filed |
| 09/19/2012 | Counseling Form |
| 09/19/2012 | Notice of Automatic Court Orders |
| 09/19/2012 | Statement of Assets, Liabilities, Income, and Expenses (DR6)<br>*PLTF* |
| 09/19/2012 | Nominal Track Divorce Complaint Filed |
| 09/19/2012 | Marriage Certificate Filed |
| 09/19/2012 | Initial Filing Fee |
| 09/19/2012 | Initial Case Data Entry<br>*Initial case data entry by RSALOME on 24-SEP-2012\11:12:12* |

*Printed on 12/01/2020 at 2:42 PM*

STATE OF RHODE ISLAND          FAMILY COURT
WASHINGTON, Sc.

MARGARITA E. PALANGE,

    Plaintiff

    vs.                                  C. A. NO. W12-0361

STEVEN J. PALANGE,
    Defendant

### AFFIDAVIT OF PLAINTIFF MARGARITA E. PALANGE

    I, MARGARITA E. PALANGE, being duly sworn, do depose and state:

1) That I am the Plaintiff in the above entitled matter.

2) That I am the mother of KATERINA PALANGE (d/o/b 12/11/09).

3) Defendant's conduct, especially towards our daughter, has changed dramatically in the last year. This change in conduct has occurred coincidently with an increase in my ex-Husband's symptoms from Crohn's Disease; my ex-Husband has lost a lot of weight, seems to be heavily medicated insofar as his conduct exhibits periods of manic, paranoid, irrational and aggressive behavior towards myself and towards our daughter when the child is in my husband's possession.

4) My ex-Husband has had difficulty getting our daughter to school and making sure that her homework assignments are completed, and that she is prepared for tests, when in his possession overnight. As a result, we agreed to change the existing schedule so as to minimize the overnights that my ex-Husband has prior to school days (he now has only one overnight prior to a school day – Thursday night).

5) My ex-Husband has forgotten to pack drinks or snacks for school, and on one occasion during the February vacation he failed to provide my daughter with lunch for camp, forcing her to share the bus driver's lunch.

6) My ex-Husband has admitted to me that oftentimes he cannot care for our daughter while in his possession; recently he prematurely discontinued his visit with our daughter, stating that he could not provide proper care for her; in a video that he sent to me he appears clearly excited, aggressive towards our daughter, uses profane language, paranoid and manic. When he dropped our daughter off, my daughter was crying.

7) I am aware that my Husband frequently uses marijuana, oftentimes when the child is in his possession; I believe that he is taking other medication as a result of his illness, and his behavior has worsened since the beginning of the new year.

8) I am in fear that my child may be injured, both physically and emotionally, if the existing unsupervised visitation continues while my ex-husband is in his present state. I need the intervention of the Family Court to suspend visitation until my ex-husband receives counselling and appropriate psychological care so that my daughter is not at risk. I have asked the Defendant to go to counselling, both for himself and to learn how to parent our child, and he has flatly refused.

9) I am willing to permit the Defendant to contact my child by text and email, and to have regularly scheduled Facetime monitored by myself until he can be successfully treated.

_____
MARGARITA E. PALANGE

Subscribed and Sworn to before me this 9th day of May, 2018.

_____
Notary Public

STATE OF RHODE ISLAND                    FAMILY COURT
WASHINGTON, Sc.

MARGARITA E. PALANGE,
        Plaintiff

    vs.                                  C. A. NO. W12-0361

STEVEN J. PALANGE,
        Defendant

## STIPULATION

Plaintiff's DR6A is incomplete at the time of the filing of the emergency motion and shall be filed within one (1) week from the date of the filing of the motion.

MARGARITA PALANGE,
By her attorney

/S/ Richard E Updegrove, Jr., Esq.
UPDEGROVE LAW, LTD.
Richard E. Updegrove, Jr., Esq.
314 Oliphant Lane
Middletown, Rhode Island 02842
(401) 847 5684   Bar No. 2245

Date: May 9, 2018

Sandra A Lannie, g
5-9-18

STATE OF RHODE ISLAND                    FAMILY COURT
WASHINGTON, Sc.

MARGARITA E. PALANGE,
        Plaintiff

        vs.                              C. A. NO. W12-0361

STEVEN J. PALANGE,
        Defendant

## ORDER

        THIS matter came to be heard in the Family Court, Washington
County, Judge Lanni presiding; on the __9__ day of May, 2018, upon
Plaintiff's Motion for Emergency Relief, and IT IS ORDERED,
ADJUDGED AND DECREED:

1) That the Defendant's visitation with the minor child Katerina
   (d/o/b 12/11/09) be suspended ex parte; that Defendant be
   permitted to have contact with the child only by text, email or
   Facetime (at a designated time) until further order of the court.
2) That the Defendant be restrained and enjoined from bothering,
   harassing or interfering with the Plaintiff at any time or place;
3) That this matter is continued to ____5|30____, 2018 for
   hearing on other requests for relief contained in Plaintiff'
   Emergency Motion.

Electronically APPROVED and Entered as a Decree of the Family Court by:

_Sandra A Lanni, J_
Judicial Officer

___5-9-18___
Date

Filed in Washington County Family Court
Submitted: 5/9/2018 3:12:11 PM
Envelope: 1534784
Reviewer: Lauren Berke

STATE OF RHODE ISLAND       FAMILY COURT
WASHINGTON, Sc.

MARGARITA E. PALANGE,
    Plaintiff

    vs.                          C. A. NO. W12-0361

STEVEN J. PALANGE,
    Defendant

### MOTION FOR EMERGENCY AND OTHER RELIEF

    NOW comes the Plaintiff, MARGARITA E. PALANGE, and states that the parties were divorced by Final Judgment of Divorce dated December 18, 2013; that the Final Judgment incorporated by reference (but did not merge) a Marital Settlement Agreement dated August 20, 2013; that the parties have one minor child, to wit:  Katerina (d/o/b 12/11/09);  that pursuant to the Final Judgment of Divorce the parties were granted joint custody and shared placement of the minor child, with the parties having parenting time in accordance with the terms of Clause 4 (B) of the Marital Settlement; according to that provision, the Defendant had the minor child overnights on every Monday, Tuesday and every other Wednesday; the Plaintiff had the minor child overnights on every other Wednesday and every Thursday and Friday overnights; the parties alternated having the child on weekends (Saturday through Monday morning) so that the party having the weekend did not have the child on the subsequent Wednesday evening.

    That, as described in Plaintiff's affidavit which is attached hereto and incorporated by reference herein, Defendant's recent conduct, especially with regard to the child, is injurious to the child; the Defendant previously agreed that the court ordered visitation should change in order to assure that the child's school work was being completed, which did not occur on the days following the Defendant's overnight visitation; as a result, the new visitation schedule has the Plaintiff having the child overnight each Sunday, Monday, Tuesday and Wednesday; Defendant has the child overnight each

Submitted: 5/9/2018 3:12:11 PM
Envelope: 1534784
Reviewer: Lauren Berke

Thursday, Friday and Saturday – as a result, Defendant has only one overnight prior to school, thereby mitigating the harm to the child which resulted from incomplete homework on days following the father's overnight.

Recently, the Defendant's Husband's illness and medication regimen have resulted in a pronounced change in his conduct towards his daughter. Defendant's texts, emails and unsolicited video communications with Plaintiff when the child is in his possession increasingly are characterized by manic and paranoid behavior, much of which is directed towards the child. Defendant refers to his 8 year old daughter as "a monster", whose conduct makes him incapable of eating, and whom he says that he cannot control (Defendant has Crohn's disease, is heavily medicated and, upon information and belief, holds a medicinal marijuana card, regularly using this drug while in possession of the child). Plaintiff has asked if he would undergo parenting counselling, and he has refused.

Defendant has recently terminated his visitation prematurely; he dropped the child off at Plaintiff's home, calling the child profane names, causing Katerina to cry. During his rant while dropping the child off, he said that he cannot eat and "feels very weak and am about to pass out." Defendant's conduct was manic and aggressive towards both the Plaintiff and the minor child. Defendant has also noticeably lost a significant amount of weight in addition to his change in conduct.

In addition, while the child is in his possession, the Defendant has recently sent the Plaintiff unsolicited videos in which he clearly denigrates the child, makes nonsensical comments, delivered in a manic cadence.

This conduct is clearly scaring our eight year old daughter, and is inimical to her best interests. As a result, Plaintiff prays for the following relief:

1) That the Defendant's visitation with the minor child Katerina (d/o/b 12/11/09) be suspended ex parte; that Defendant be permitted to have contact with the child only by text, email or Facetime (at a designated time) until further order of the court.
2) That the Defendant be ordered to execute releases to Plaintiff's counsel permitting him to obtain reports from Defendant's primary

Submitted: 5/3/2018 3:12:11 PM
Envelope: 1534784
Reviewer: Lauren Berke

care    physician,    Crohn's    disease    specialist,    and
counselor/psychologist/psychiatrist.

3) That the Defendant be evaluated by a psychologist regarding the
threat of harm posed by the Defendant to the minor child as a
result of any visitation schedule.

4) That all communications between the parties be by text and email;

5) That the Defendant be ordered to engage in parenting counselling
forthwith, with reports of his progress and compliance provided to
Plaintiff's counsel and the Court;

6) That the Defendant be ex parte restrained and enjoined from
bothering, harassing or interfering with the Plaintiff at any time or
place;

7) That the Defendant be ordered to pay child support;

8) That the Plaintiff be awarded such other and further relief as this
honorable court may deem just, including a reasonable counsel fee
for the prosecution of this motion.

MARGARITA PALANGE,
By her attorney

/S/ Richard E Updegrove, Jr., Esq.
UPDEGROVE LAW, LTD.
Richard E. Updegrove, Jr., Esq.
314 Oliphant Lane
Middletown, Rhode Island 02842
(401) 847 5684   Bar No. 2245



STATE OF RHODE ISLAND
AND
PROVIDENCE PLANTATIONS

FAMILY COURT
FINAL JUDGMENT

| COUNTY WASHINGTON | | CIVIL ACTION FILE NO. W12-0361 |
|---|---|---|
| PLAINTIFF MARGARITA E. PALANGE | VS | DEFENDANT STEVEN J. PALANGE |

( x ) answered

( ) unanswered

This matter came on to be heard on the 20th day of August 2013, Washington Family Court, Washington County, before Honorable Justice DiSegna on the merits; and after issues being tried and a decision having been duly rendered in favor of Plaintiff and Defendant, the following findings of fact are made:

### THE FINDINGS OF FACT HAVE BEEN MADE AND ARE SO CONTAINED IN THE DECISION PENDING ENTRY OF FINAL JUDGMENT

**NOW THEREFORE**, three months having elapsed and no reason appearing why a Final Judgment should not be entered, it is **ORDERED, ADJUDGED** and **DECREED** that the Plaintiff's Complaint for Divorce and the Defendant's Counterclaim for Divorce are hereby granted and that the bond of matrimony now existing between the parties be, and the same is, hereby dissolved on the grounds of irreconcilable differences, which have led to the irremediable breakdown of the marriage. The following conditions have been set:

1. That a decision for divorce is hereby granted to the Plaintiff and Defendant on the grounds that irreconcilable differences have arisen which has caused the irremediable breakdown of the marriage.

X Continuation page attached.

1 of 3

ADMINISTRATOR CLERK

TRUE COPY ATTEST

2.  The Plaintiff and Defendant are granted joint custody and shared placement of the minor child of the parties, namely: Katerina Isabel Palange, d/o/b: 12/11/2009.

3.  Child support shall be left open.

4.  The parties are awarded all reasonable rights of visitation as outlined in Section 4B of the parties' Marital Settlement Agreement (Joint Exhibit 1).

5.  The Plaintiff shall continue to carry the Defendant on her medical health insurance plan, if available, until final Judgment. The Plaintiff shall maintain health insurance coverage for the minor child, Katerina, as long as she is eligible through the Plaintiff's current employer.

6.  The Plaintiff and Defendant are allowed to waive alimony permanently.

7.  The Property Settlement Agreement executed by the parties on August 20, 2013 (Joint Exhibit One), is incorporated by reference and not merged in this Decision, except those provisions relating to custody, visitation, and child support, which are merged.

8.  The Plaintiff is allowed to resume her maiden name of Margarita ALEKSANDROVNA EDILGEREYEVA.

**I HEREBY CERTIFY THAT THERE ARE NO MOTIONS PENDING IN THIS MATTER AND THAT FINAL JUDGMENT SHOULD BE ENTERED AT THIS TIME.**

DATED: 12/2/13

DATED AT Washington, RHODE ISLAND, THIS 18 DAY OF Dec 2013.

APPROVED: _____ 12/18/13
JUSTICE OF THE FAMILY COURT

ENTERED: _____
CLERK OF THE COURT

2 of 3

ADMINISTRATOR CLERK

TRUE COPY ATTEST

W12-0361
8-20-13

JANICE K. CANNING
DEPUTY CLERK

STATE OF RHODE ISLAND                                    FAMILY COURT
WASHINGTON, SC.

MARGARITA E. PALANGE

    VS.                                :                    C. A. No. W12-0361

STEVEN J. PALANGE                          :


## MARITAL SETTLEMENT AGREEMENT

THIS AGREEMENT made on the 20th day of August, 2013, by and between Margarita Palange, of the Town of South Kingstown, County of Washington, State of Rhode Island, hereinafter referred to as the "Wife" and Steven Palange, of the Town of South Kingstown, County of Washington, State of Rhode Island, hereinafter referred to as the "Husband", the parties hereto.

## WITNESSETH:

WHEREAS, the parties were lawfully united in marriage on December 27, 1998 and are now husband and wife; and

WHEREAS, there was one child born of the marriage, namely, Katerina Palange (12-11-2009); and

WHEREAS, in consequence of disputes and irreconcilable differences between the parties, they have separated and are now living separate and apart and intend to live separate and apart for the rest of their lives; and

WHEREAS, a Complaint for an absolute divorce is now pending in the Family Court for the County of Washington, in which the Wife is the Plaintiff and the Husband is the Defendant, and in which case the Husband has filed a Counterclaim for an absolute divorce; and

WHEREAS, the parties desire to confirm their separation and to adjust and settle between themselves all property rights and obligations growing out of the

1

ADMINISTRATOR CLERK

SP mp

**TRUE COPY ATTEST**

marriage relationship, including without limitation, questions of allowance of support or alimony for the Wife or Husband, rights of dower or curtesy or other statutory rights between the parties, including without limitation the right of equitable distribution under Rhode Island General Laws of 1956, 15-5-16.1, and questions of custody and support of the minor child, to wit: Katerina 12-11-09 of the parties.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and undertakings herein set forth, the parties covenant and agree as follows:

1. SEPARATION: The parties may and shall at all times hereafter live and continue to live separate and apart from each other; each shall be free from interference, authority and control by the other; each may reside at such place or places as he or she may select. Neither party shall molest or in any way interfere with, directly or indirectly, the other party, and neither party shall compel or endeavor to compel the other party to cohabit or dwell with him or her.

2. SUBSEQUENT DIVORCE: Nothing contained in this Agreement shall be deemed to prevent either party from instituting and maintaining a suit for an absolute divorce against the other in any jurisdiction, based upon any past or future conduct of the other, nor to bar the other from defending any such suit. In the event such suit for absolute divorce is instituted, each party shall be bound by all of the terms of this Agreement. The provisions of this Agreement shall be incorporated in any Judgment entered by any Court of competent jurisdiction, but shall not be merged therein.

3. MUTUAL RESTRAINING ORDERS: The parties shall be mutually enjoined from annoying, molesting or interfering with each other in any manner, directly or indirectly. At all times the telephone number of each party shall be provided for the other party.

4. CUSTODY AND PLACEMENT:

A. Custody. The parties shall have joint custody of the minor child, namely, Katerina Palange (dob:12-11-09). The parties will consult with one another on all major decisions concerning the minor child including, but not limited to the child's education, any elective medical choices, religious upbringing and the child's general welfare including any counseling decisions.

2

ADMINISTRATOR CLERK

TRUE COPY ATTEST  SP mP|

Each parent will keep the other reasonably informed of the child's academic, physical, medical and social activities and will forward to the other parent, in a timely fashion, copies of all significant written communications in this regard.

Any emergency issue involving the child will be handled promptly by the parent who is present or first reached. The other parent will be notified as soon as possible.

The parties are both committed to their role as parents, and they will continue to support each other in their parenting.

B. Placement. The parties shall have shared placement of the minor child. The parties agree that they will not relocate out of state of Rhode Island with the minor child without written permission from the other parent or a court order. Placement of the minor child shall be in accordance with the following parenting plan:

 i. The Husband shall have the minor child overnights on Monday, Tuesday and every other Wednesday. The Wife shall have her overnight every other Wednesday, and every Thursday and Friday.

 ii. Additionally, the parties shall alternate who has the child on the weekend, from Saturday to Monday morning. If it is the Wife's weekend, the Husband shall have the child on the Wednesday, overnight.

 iii. Neither parent shall consume more than two alcoholic beverages per day when they have the minor child.

 iv. If either parent wants to occasionally take the child when he/she would otherwise be with a third party on the other parent's day, that parent would need to give at least 48 hours notice to do so, and neither parent will unreasonably withhold their assent.

 v. Either parent may take the minor child for up to 3 consecutive nights, up to four times per year with at least 2 weeks notice to the other parent.

 vi. Either parent may take the minor child for 2 weeks of uninterrupted nonconsecutive vacation time with at least 30 days notice to the other parent.

C. Plans & Activities: The parties agree that any plans for vacations and/or activities which involve the minor child will be discussed by both parties prior to discussion of such plans with the minor child.

In the event a vacation plan or activity involve travel more than 100 miles from South Kingstown, RI, the other parent is to be provided, reasonable advance

3

ADMINISTRATOR CLERK

TRUE COPY ATTEST

notice of that travel, all information pertaining to that travel such as airline name, travel time, flight numbers, hotel names and phone numbers and an itinerary for such out-of-state travel. The parents have the right to make reasonable requests for changes in the schedule with appropriate notice and may agree between themselves as to any change in the schedule as previously noted so long as both parties agree.

D. Right of First Refusal. Should either parent have a function, activity or work-related need that requires their presence for an extended period of time (four hour period) when they are scheduled to be with the minor child, the other parent is to be contacted first for resulting child-care needs prior to anyone else being asked to assist in this regard.

5. CHILD SUPPORT: As a result of the current visitation schedule where the parties split the time equally with the minor child, the parties agree that the issue of child support will remain open.

6. EXTRA-CURRICULAR ACTIVITIES: Each party will split equally the reasonable and necessary extra-curricular activities of the minor child, provided the parents agree in advance as to the extra-curricular activity and the cost to either party. The parties agree to split equally the cost of all agreed too work-related and school related day care expenses.

7. HEALTH CARE AND DENTAL COVERAGE FOR THE MINOR CHILD: The Wife shall continue to provide healthcare and dental insurance coverage for the minor child of the parties for so long as said coverage is provided through the Wife's employment and for so long as the minor child of the parties is eligible therefore.

8. UNINSURED MEDICAL EXPENSES FOR THE MINOR CHILD: Each of the parties shall contribute equally to the reasonable and necessary uninsured or underinsured medical, dental, eye care, orthodontia and psychiatric expenses related to the minor child of the parties. Once those expenses have been paid by one of the parties, that party shall have thirty (30) days to seek reimbursement from the other party. The party seeking reimbursement shall be reimbursed within thirty (30) days after notification to the other.

9. HEALTHCARE AND DENTAL INSURANCE FOR THE PARTIES: The parties agree that they will be responsible for their own health and dental coverage. The parties shall be solely responsible for any and all uninsured or underinsured medical, dental, eye care expenses, etc. pertaining to them and shall

4

ADMINISTRATOR CLERK
TRUE COPY ATTEST

hold the other harmless thereon. The Husband understands upon entry of the Final Judgment, he shall be solely responsible for his own health insurance coverage.

10.  LIFE INSURANCE: The current policy on the Wife's life is owned by the Husband and the policy on the Husband's life is owned by the Wife. The parties agree to transfer ownership of each to the other so that the Wife owns the policy on her life and is responsible for the premium, and the Husband owns the policy on his life and is responsible for the premium. Each party shall continue in full force and effect the life insurance policy presently in existence on their respective lives, for the benefit of the other party in order to provide for the minor child, at least until the minor child turns 18 years old.

11.  TAX EXEMPTION: The Husband and Wife agree to file a joint tax return for the year 2012 and the parties agree to split equally a tax refund or tax deficiency. The payments have been made on behalf of the parties personally, as well as on behalf of the business, TLIC Worldwide, Inc.

The parties shall file a separate tax return for 2013. Any tax liability due for TLIC Worldwide, Inc. shall be the Husband's sole responsibility. In 2013, the Wife shall be allowed to claim the mortgage interest and real estate taxes paid on the marital domicile and the Husband shall be allowed to claim the minor child as a dependent. The parties shall alternate who claims Katerina as a dependent each year thereafter, as long as they maintain a shared placement schedule. If the placement/visitation schedule changes, parent with primary placement will be allowed to claim the minor child as a tax deduction.

The parties agree to cooperate with one another to execute any paperwork as may be required by the IRS or State Of Rhode Island, if any, to allow them to claim the child as a dependent.

The parties have filed joint income tax returns at all material times in the past. To the extent that the same may be audited by the Internal Revenue Service and to the further extent that said audit discloses additional taxes and/or penalties and/or interest due and payable on said joint tax returns, the parties agree as follows: the parties shall be equally responsible for all of the additional taxes penalties and/or interest.

12.  REAL ESTATE AND BUSINESS ASSETS:
A.  MARITAL DOMICILE: The parties own real estate located at 932 Saugatucket Road in South Kingstown, Rhode Island. The Husband shall transfer all of his right, title and interest in said property by Quitclaim Deed to the Wife forthwith upon the signing of this Agreement. The Wife agrees to refinance the property to release the Husband from the Promissory Note forthwith upon the

ADMINISTRATIVE CLERK

TRUE COPY ATTEST   SP_MP

signing of this Agreement, at her cost. The parties shall equally pay the mortgage, taxes, and insurance on said premises in a timely fashion as long as they are both living there. The Husband agrees to vacate on or before October 10, 2013. Upon the Husband vacating the premises, the Wife shall be solely responsible for paying the mortgage, taxes and insurance on said premises, and she agrees to hold the Husband harmless and indemnify him thereon. The parties agree that the fair market value of the house is $290,000. As of August 15, 2013, the payoff amount for the mortgage is $184,370. The parties agree that there is $105,630 Dollars of equity in this asset for purposes of equitable distribution detailed in Section 12 (C) below. This real estate shall be awarded to the Wife.

B.    Condominium: The parties have a Limited Liability Company known as Maple Tree Holdings, LLC. Maple Tree Holdings, LLC holds the title to the real estate located at 400 South County Trail, Unit 208, Liberty Park Condominium, Exeter, Rhode Island (hereinafter the "condominium"). Maple Tree Holdings, LLC holds a lease with TLIC Worldwide, Inc. TLIC Worldwide, Inc. is the parties' business, which shall be awarded to the Husband as detailed below in Section 12 within this Agreement. The Husband agrees to transfer all of his right, title and interest in Maple Tree Holdings, LLC to the Wife, at his cost, which shall include his right, title and interest in the condominium. The parties agree that the Husband shall utilize Harry Cesario to draft the paperwork necessary to transfer the LLC. Until such time as the interest is transferred, the parties shall be equally responsible for the payment of the mortgage, taxes and insurance thereon. The Husband and Wife, as owner of TLIC Worldwide, Inc. and owner of Maple Tree Holdings, LLC, respectively, they shall re-negotiate the terms of the existing lease between the two entities. The parties agree that the rent shall be $1600 per month to cover the cost of the mortgage, taxes, condo fees, and insurance. TLIC Worldwide will be responsible to pay any maintenance and repairs associated with the property.

Upon transfer of the Husband's interest in the condominium to the Wife, she shall be solely responsible for the mortgage, taxes, condo fees and insurance on said premises, and she agrees to hold the Husband harmless and indemnify him thereon. In the event the transfer cannot be effectuated via the transfer of the LLC interest, and it becomes necessary for the Wife to refinance the mortgage on this condominium in order to remove the Husband's name from the Promissory Note, she shall do so forthwith upon the signing of this Agreement.

The parties agree that the condominium has a fair market value of $105,000. The parties agree that the mortgage payoff is $43,981. Accordingly, the parties agree that there is $61,019 Dollars of equity in this asset for purposes of equitable distribution detailed in Section 12 (C) below. This real estate shall be attributed to

TRUE COPY ATTEST

the Wife, subject to the parties executing a satisfactory lease as outlined above within this section of this Agreement.

C.   Business: The Wife shall transfer all of her right, title and interest in the business known as TLIC Worldwide, Inc. to the Husband, in exchange for $50,000 in cash, and the balance from retirement funds from the Husband's SRA needed in order to equalize the parties' interest in marital assets (detailed below). The Husband shall be responsible for the cost associated with the transfer of TLIC to the Husband, and the parties agree the Husband shall utilize Harry Cesario to draft the paperwork necessary.  The $50,000 in cash shall be placed in the Wife's attorney's escrow account on or before September 1, 2013, and shall be held until such time as the Wife completes the transfer of her interest in the business.  If said amount is not placed in escrow by that date, the Husband shall be deemed to be in willful contempt and in default of this Agreement.  The Husband shall retain all right, title and interest in the business known as TLIC Worldwide, Inc., he shall be entitled to any bank accounts in the name of the business, and he shall be solely responsible for any debt associated with the business.  The Husband agrees to indemnify and hold the Wife harmless thereon. The parties agree that value of said business is $343,000.  This asset shall be attributed to the Husband at this fair market value.

D.   Division Computation: The amount to be transferred to the Wife from the Husband's SRA account to equalize the marital assets shall be $35,730.60, computed as follows:

   i.   Marital Domicile:     $105,630
        Condominium:         $61,019
        Business Value:      $343,000
        Total Marital Property: $509,649 / 2 =$254,824.50 each

   ii.  $254,824.50 Wife's share
        (166,649.00) Real estate
        ( 50,000.00) Cash from TLIC
        ( 8,400.00) Credit for Household Furniture kept by Wife
        $29,775.50 + 20% as agreed by the parties of 5955.10 = 35,730.60

        $35,730.60 to be transferred to the Wife

7

13. EQUITABLE ASSIGNMENT OF PROPERTY:

A. Bank Accounts & Investments.

The parties acknowledge that they have separate bank accounts and agree that each shall have all rights title and interest to the bank accounts each in their respective names and control. Each party waives any and all interest in the bank accounts maintained solely by the other. The Wife has an account with Bank of America with an approximate balance of $8000.00. The parties agree that the balance of said account shall be used to pay outstanding attorneys' fees and costs to effectuate the provisions of this Agreement. After payment of the aforementioned fees, each party shall be entitled to one half of the balance in this account.

B. Automobiles:  The Wife drives a 2013 Kia, which is registered to her. The Husband drives a 2009 Nissan, which is registered to him. Each party is awarded all right, title and interest in and to their respective vehicles in their current use and possession free from any claim by the other. Each shall be solely responsible for any and all costs related to their respective vehicles and shall hold the other harmless and indemnify them thereon to the extent necessary. Further, each party shall be liable and responsible for any personal property taxes on their respective vehicles presently existing or in the future.

C. Retirement.  The parties intend to equalize their interest in their retirement accounts as of July 30, 2013, including gains and losses on that amount until the actual distribution date.

    i.    The Wife has an IRA with TLIC, an SRA Plan with TLIC and a 401(k) through her employer, Phoenix Bulk Carriers. The total value of these accounts as of July 2013 is $109,338. The Wife shall retain all right, title and interest in these retirement plans and the Husband shall waive any right, title and interest he may have in these plans.

    ii.    The Husband has a SRA Plan with TLIC. The value of this account as of July 2013 is $126,944.

    iii.    Therefore, each party is entitled to:
$109,338 + 126,944 = 236,282 / 2 = 118,141
$118,141 − 109,338 = $8,803 to be transferred to Wife

8

iv.   After the transfer, the Husband shall retain all right, title and interest in the remaining balance of said SRA, and the Wife shall waive any right, title and interest she may have in his SRA.

v.    The parties shall equally pay the cost of the QDRO required, and shall each cooperate with one another to provide the information necessary to get the QDRO implemented.  The amount to be transferred shall be $44,533.60 as of July 30, 2013, including gains and losses until the distribution date.  That amount is the total of $35,730.60 (total from 12D above) plus $8,803 (this section above).

14.  DIVISION OF PERSONAL PROPERTY:  The parties agree that they have already divided their personal property, furniture and furnishings to their mutual satisfaction.  The Wife shall be entitled to the furniture and household furnishings in the marital domicile, and the Husband shall get a credit of $8400 as outlined in 12D above for this property.

15.  DIVISION OF DEBTS

The parties represent and warrant to each other that they have not incurred any debts or made any contracts for which the other or the other's estate may be liable.  The parties shall each be responsible for all debts in their individual names, except as otherwise state herein.  The parties agree to remove each others names from all joint accounts and agree to indemnify and hold harmless for all costs, expenses and liabilities in connection with a claim or action by any creditor due to the other party's failure to make payment.

16.  WAIVER OF ALIMONY:  In consideration of the terms of this Agreement, the Wife permanently waives any and all rights she may have in and to receiving alimony payments from the Husband as well as any other rights she may have in accordance with the General Laws of Rhode Island, 1956, as amended, Section 15-5-16.  Further, in consideration of the terms of this Agreement, the Husband permanently waives any and all rights he may have in and to receiving alimony payments from the Wife as well as any other rights he may have in accordance with General Laws of Rhode Island, 1956, as amended, Section 15-5-16.

9

17. ADDITIONAL INSTRUMENTS: Each of the parties shall execute any and all documents which are necessary or helpful to effectuate the provisions of this Agreement as the same may from time to time be requested by the other party or his or her representative.

18. BREACH. In the event that either party shall default in any of the undertakings of his or her part to be performed under the terms of this Agreement and after written notice from the other party the defaulting party shall not cure such default within a period of ten (10) days after the posting of such notice by regular mail addressed to the defaulting party at his or her last known address, the Wife or Husband may take all steps necessary to enforce the rights conferred upon her or him under the terms of this Agreement and to this end she or he shall have the right to employ counsel at the defaulting party's expense.   The defaulting party shall either make direct payment of all reasonable fees of such counsel or shall reimburse the Wife or Husband for any such payments made by her or him.

19. REVOCATION OF POWERS OF ATTORNEY. In the event either party has signed any powers of attorney during the marriage of the parties appointing the other party as his or her attorney in fact, including but not limited to, any general powers of attorney, any limited powers of attorney and/or any health care powers of attorney, the parties agree that, upon execution of this Agreement, any such powers are hereby revoked and voided as a result of the signing of this Agreement.

20. LIMITED WAIVER OF DISCOVERY. Both parties acknowledge that they have each been advised by his or her counsel concerning his or her rights with respect to formal discovery in the Family Court of the State of Rhode Island in connection with the above-referenced divorce proceedings and each acknowledges that he or she has voluntarily agreed to limited discovery in this matter.

21. MUTUAL PROHIBITION. The parties agree that neither will undertake any actions which may undo, overturn or challenge the conveyances made by him or her to the other party pursuant to this Agreement and each specifically covenants and agrees that he or she will not make any filing of bankruptcy within ninety (90) days of the last conveyance made to the other party pursuant to the terms of this Agreement.

10

22.   MODIFICATION AND WAIVER:   A modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement. No acts, deeds or conduct by the parties or either of them, including the failure of either party to insist upon strict performance of any of the provisions of this Agreement shall be construed as a waiver of any subsequent default of the same or similar nature.

23.   SITUS:   This Agreement shall be construed and governed in accordance with the laws of the State of Rhode Island.

24.   PARTIAL INVALIDITY.   If any provision of this Agreement is held to be invalid or unenforceable, all other provisions shall nevertheless continue in full force and effect.

25.   BINDING EFFECT:   Except as otherwise stated herein, all provisions of this Agreement shall be binding upon the respective heirs, next of kin, executors, and administrators of the parties.

26.   SEPARATE PROPERTY:   Except as otherwise more specifically provided in this Agreement, all of the property of each of the parties hereto, both real and personal, now owned by him or her, or to which he or she may hereafter become entitled, shall be and remain his or her sole and separate property, free from all rights of the other spouse and party hereto, with power in the party owning such property to deal with or otherwise dispose of the same as if he or she were single. Each of the parties shall, from time to time, execute all such deeds or other instruments as may be necessary or helpful to enable the other party hereto to convey, assign, sell, give or otherwise deal with all of his or her said property, both real and personal, including not only property which he or she now owns and possesses, but also any which he or she may own or possess in the future; and each of the parties hereto releases and quit-claims unto the other, and shall release and quit-claim unto the other, or to such others as he or she respectively may request, all of his or her rights of curtesy or of dower, as the case may be, and all other rights, statutory or otherwise, in and to any real estate of which such other spouse and party hereto is, or may become seized and possessed, or to which he or she may otherwise be or become entitled. It is the intention of this clause to permit and empower each of the parties hereto to deal with his or her own separate property now owned or hereafter acquired without any let, hindrance, claim, demand or assertion of right of or by the other party and in all respects as if each party hereto were single.

11

27.  FULL DISCLOSURE:  Each party represents that they have made a full and total disclosure of all of their assets or any assets to which they have any right or entitlement.  Each party has, throughout the proceedings, complied fully and completely with the other party and/or their accountants and attorneys so that full opportunity has existed for parties to examine any and all aspects dealing with the financial condition or assets of the other.  Each party represents that they have been represented by attorneys and accountants of their choice and that they have had full opportunity to examine the assets and records of the other.  In the event that either party has failed to divulge the same, then the parties will share the relative value of the undisclosed asset based upon the equities earned, and the party who failed to disclose said asset shall bear the full cost of the other's legal fees incurred from any legal proceedings necessary to resolve a dispute over said assets.

28.  WAIVERS AGAINST ACQUISITION OF ASSETS SUBSEQUENT TO THE WITHIN AGREEMENT:  Each party waives any interest he or she may have in and to any assets acquired by the other party subsequent hereto and prior to the entry of any Final Judgment of Divorce.

29.  WAIVERS OF CLAIMS AGAINST ESTATES:  Each party waives and relinquishes any and all rights that he or she may now have, or hereafter may have to bear as spouses, in the other party's estate, or to act as a legal representative thereof.

30.  MUTUAL RELEASES:  The parties mutually release each other from any and all claims and demands of every nature which either ever had, now has or hereafter may have for or by reason of anything whatsoever from the beginning of the world to the day and the date of these presents, provided, however, that nothing in this Agreement shall operate as a release from any of the obligations or as a waiver of any of the rights arising out of the provisions of this Agreement, or operate as a release, waiver, abandonment or condonation of any grounds which either party has, or may have against the other for an absolute divorce under the laws of any jurisdiction in the United States.

31.  VOLUNTARY EXECUTION:  Each of the parties feel that the within Agreement is fair and equitable and affirmatively represents that the Agreement is voluntarily entered into by him and her respectively.  Each party shall sign any and all documents necessary to effectuate the intent and purpose of this Agreement.

12

MP
SP
ATTEST

32.   ENTIRE AGREEMENT:   This Agreement constitutes the entire agreement between the parties and may not be modified in any manner, except by the mutual consent, in writing, of the Husband and the Wife. This Agreement shall be binding upon the parties hereto and their respective legal representatives and assigns.

33.   SEPARATE CONTRACT:   This Agreement shall be incorporated by reference and not merged in any Interlocutory Decision Pending Entry of Final Judgment and Final Judgment of Divorce. It is the intention of the parties that this Agreement survive as a separate contract between the parties and shall have independent legal significance.

34.   BANKRUPTCY:   The parties acknowledge that each has accepted the provisions of this Agreement in consideration of each of their obligations to make any and all payments provided in this Agreement, and with the parties' mutual understanding and belief that neither of their obligations to make any and all said payments are dischargeable in bankruptcy pursuant to 11 USC Section 523(a)(15). If either party seeks a discharge in bankruptcy from claims of creditors, such party shall execute a reaffirmation agreement in favor of the other as provided for by Section 524(C) of the United States Bankruptcy Court, reaffirming their obligations under this Agreement.

IN WITNESS WHEREOF, the said Margarita Palange and Steven Palange have hereunto set their hands and seals to this Agreement, and to duplicate originals thereof, the day and date written in the acknowledgements below.

_____            _____
WITNESS                                                         Margarita Palange

_____            _____
WITNESS                                                         Steven Palange

13

STATE OF RHODE ISLAND
COUNTY OF WASHINGTON

In Wakefield, Rhode Island on the 20th day of August, 2013, before me personally appeared Margarita Palange, known to me to be the person executing the foregoing instrument, and she acknowledged said instrument by her executed, to be her free act and deed.

NOTARY PUBLIC: Kristy J. Garside

STATE OF RHODE ISLAND
COUNTY OF WASHINGTON

In Wakefield, Rhode Island on the 20th day of August, 2013, before me personally appeared Steven Palange known to me to be the person executing the foregoing instrument, and he acknowledged said instrument by him executed, to be his free act and deed.

NOTARY PUBLIC: Bethany Macktaz

9-27-15

14

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

WASHINGTON, SC.                           FAMILY COURT


* * * * * * * * * * *

**MARGARITA PALANGE**

            vs.                    F.C. NO.
                                   W20120361
**STEVEN PALANGE**

* * * * * * * * * * *


**H E A R D** before

The Honorable Associate Judge Sandra A. Lanni

in the Washington County Family Court

on May 30, 2018.


**APPEARANCES:**

FOR THE
PLAINTIFF ..... **RICHARD E. UPDEGROVE, JR., ESQUIRE**


FOR THE
DEFENDANT ..... **TANYA M. GRAVEL, ESQUIRE**

CAROLE A. MALAGA, STENOGRAPHER (401) 782-4191

1   MARGARITA PALANGE   vs.   STEVEN PALANGE

2   F.C. NO. W20120361

3   MAY 30, 2018

4

5   THE COURT:  Okay.  Go ahead.  I did have a

6   chambers conference with your attorneys.  So go

7   ahead, Mr. Updegrove.

8   MR. UPDEGROVE:  Your Honor, after the

9   chambers conference, we've agreed on a few things

10   for today.  The subpoena that I had served on

11   Mr. Palange will be complied with within two weeks.

12   All orders regarding child support will be

13   retroactive to this date.  I will exchange and

14   provide to counsel for Mr. Palange copies of the

15   videos that are in my possession.

16   The existing visitation order whereby

17   visitation has been suspended with the minor child

18   with the exception of texting, e-mail, and FaceTime

19   shall continue in full force and effect.  In

20   addition, the existing restraining orders whereby

21   Mr. Palange is restrained and enjoining from

22   bothering, harassing, or interfering with the

23   Plaintiff and the minor child at any time and place

24   will also continue in full force and effect.

25   Your Honor, we did speak about the prospect of

1   complex drug testing for Mr. Palange, as well as a

2   neuropsych evaluation.  It's my understanding that

3   since just counsel entered, that she just needs

4   some time to review the evidence before she weighs

5   in on those issues.

6           **THE COURT:**  And you have some videos that

7   you're going to share with her?

8           **MR. UPDEGROVE:**  Yes, I did -- I indicated

9   I would.

10          **THE COURT:**  Okay.  And there is financial

11  information that you're going to share?

12          **MS. GRAVEL:**  Yes, the DR6 and the tax

13  statement, I will provide within the two weeks.

14  My client just wanted me to let you know that he

15  doesn't want me to see the videos.

16          **MR. PALANGE:**  He doesn't want to discuss

17  them.

18          **MS. GRAVEL:**  He doesn't want the videos

19  discussed.  But I advised him that it's best that

20  I do see those videos.  But he doesn't want those

21  discussed, as well as if he has to submit to the

22  complex drug examination and the neuropsych

23  evaluation, he wants Mrs. Palange to do the same.

24  He just wanted me to express that to the Court

25  today.

1          **THE COURT:**  Well, let me just say a couple

2     of things.  The reason that Mr. Updegrove is

3     providing copies of the videos to your attorney,

4     Mr. Palange, is because he wants to introduce them

5     in evidence.  And it would be a grave disadvantage

6     to your attorney if she didn't get to see them

7     before a hearing in which he tried to introduce

8     them as evidence because he may very well get them

9     in as evidence.

10         So you would be disadvantaging yourself if you

11    didn't have your attorney see them.  She really

12    needs to see them, and that will help her represent

13    you and will put her in a better position to figure

14    out what to do next.

15         So I don't know if -- it sounds like there is

16    not an agreement at this point in time with regard

17    to either drug testing or a neuropsych eval.  But

18    perhaps with a short continuance, a review of the

19    information that the parties are exchanging, by the

20    next time you're here you'll -- everybody will have

21    a better sense of where to go next.

22         **MR. UPDEGROVE:**  That's correct.  And I

23    will inquire, in the meantime, Your Honor, as to

24    appropriate agencies to render those services.  So

25    hopefully, if we do reach an agreement, we'll be

1    able to hit the ground running when we come back.

2            THE COURT:  And you may be able to find

3    some that are covered by medical insurance.

4            MR. UPDEGROVE:  Right.

5            THE COURT:  Okay.  So how much time do you

6    want?

7            MR. UPDEGROVE:  13th or -- I'm available

8    on the 13th of June or the 27th of June, if that's

9    enough time.

10            THE COURT:  The 27th I am away.

11            MS. GRAVEL:  I can do the 13th.

12            MR. UPDEGROVE:  13th?

13            THE COURT:  How many cases are on on the

14    13th?

15            THE CLERK:  18.

16            THE COURT:  18.  Okay.  June 13.

17            MR. UPDEGROVE:  13th.

18            MS. GRAVEL:  13th.

19            THE COURT:  Only because parenting time is

20    suspended and we haven't had a hearing yet.

21            MR. UPDEGROVE:  That's correct.

22            THE COURT:  And, of course, the other

23    problem with today, Mr. Palange and Ms. Palange, is

24    that in addition to the fact that your attorney

25    hasn't seen these videos, and that would seriously

1    delay any hearing because she'd have to see them

2    before the Court saw them, if Mr. Updegrove was

3    trying to introduce them, I have a trial that I'm

4    in the midst of that's going forward this

5    afternoon, so we can't do it this afternoon.

6         Okay.   June 13.   Thank you very much.

7              MR. UPDEGROVE:   Thank you, Your Honor.

8              MR. PALANGE:   Thank you.

9              MS. GRAVEL:   Thank you.

10

11

12

13

              ( COURT HEARING ADJOURNED FOR THE DAY )

14

15

16

17

18

19

20

21

22

23

24

25

1

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

WASHINGTON, SC.                              FAMILY COURT


*   *   *   *   *   *   *   *   *   *   *

**MARGARITA PALANGE**

            vs.                         F.C. NO.
                                        W20120361
**STEVEN PALANGE**

*   *   *   *   *   *   *   *   *   *   *




**H E A R D** before

The Honorable Associate Judge Sandra A. Lanni

in the Washington County Family Court

on February 18, 2019.




APPEARANCES:


FOR THE
   PLAINTIFF ....... **RICHARD E. UPDEGROVE, ESQUIRE**



FOR THE
   DEFENDANT ....... **SELF-REPRESENTED LITIGANT**


CAROLE A. MALAGA, STENOGRAPHER  (401) 782-4191

1          MARGARITA PALANGE   vs.   STEVEN PALANGE

2                     F.C. NO. W20120361

3                     FEBRUARY 18, 2019

4

5          THE COURT:   Okay.  So I'm going to do the

6     same thing I did last time we were here.

7          MR. PALANGE:   Your Honor, on record I

8     object.  I'm being taken out of the courtroom by

9     the Sheriff's Department.  So I clearly object to

10    being dragged out of the courtroom.

11          THE SHERIFF:   I'm not dragging you, sir.

12          THE COURT:   I haven't even said what, what

13    I'm ordering yet.  What I'm ordering -- excuse me,

14    sir.  I'm going to order that both parties turn

15    over all devices capable of recording to the

16    Sheriffs.

17       Do you have your notes now on a legal pad or

18    are they still on your iPad?

19          MR. PALANGE:   They're on paper, Your Honor.

20          THE COURT:   Okay.  Go with the -- go

21    ahead.  No, lawyers, lawyers are subject to the

22    Supreme Court rules.  Go ahead, go out in the

23    corridor.  I think they want to go out in the

24    corridor.

25          MR. PALANGE:   I object to that on record --

1      **THE COURT:** Okay. Objection is noted.

2      **MR. PALANGE:** -- taking me out in the

3  corridor, when I can simply hand over my phones.

4      **THE COURT:** Both parties are going to go

5  out to the corridor --

6      **MR. PALANGE:** Thank you, Your Honor.

7      **THE COURT:** -- with the sheriffs.

8      **MR. PALANGE:** Sorry. My apologies. I

9  misunderstood. We weren't both being targeted.

10      **(PLAINTIFF AND DEFENDANT EXIT COURTROOM)**

11      **(PLAINTIFF AND DEFENDANT REENTER COURTROOM)**

12      **THE COURT:** Okay. Thank you very much.

13      **THE SHERIFF:** Thank you, Your Honor.

14      **THE COURT:** All right. So this case is

15  set down for trial today for the purpose of hearing

16  the motions relating to financial issues. There

17  were a couple of clean-up things that I think that

18  we had held over --

19      **MR. PALANGE:** Objection. I'd like it

20  noted for the record that I object to the

21  proceedings. I particularly object to a financial

22  hearing today. I think there's so many violations

23  of my Constitutional --

24      **THE COURT:** Stand up.

25      **MR. PALANGE:** -- of my Constitutional

1  motions, objections; and I was traumatized by the
2  Sheriff's Department before I came in.  Anything
3  that transpired during that hearing should not be
4  admissible in any way.  I apologize, Your Honor.
5        MR. UPDEGROVE:  If I may, Your Honor, the
6  October 31 order was filed at the time that he was
7  represented by counsel.
8        MR. PALANGE:  Misrepresented by counsel,
9  Your Honor.  I can prove that in a court of law.
10       THE COURT:  Well, I know -- I can't put my
11  hands on it right now.  I know that when we were
12  here in January, there were a couple of things that
13  I said I had to hold off on because I needed the
14  transcript from October 31, which I now have.
15       MR. UPDEGROVE:  Your Honor, I believe it
16  may have been Mr. Palange's pro se motion.  He
17  filed a motion, objection, and general objection to
18  the integrity of the proceedings; and I believe the
19  Court had indicated that it wanted to address the
20  order of October 31 in light of that motion.
21       THE COURT:  What was the date of that
22  motion; do you remember?
23            (COURT PERUSING COURT FILE)
24       MR. UPDEGROVE:  Well, it was scheduled --
25  let's see.

9

1     **THE COURT:**   No, when it was filed.   Do you
2     remember?

3          **MR. UPDEGROVE:**   If the Court will bear
4     with me, I'll check.

5          (ATTORNEY UPDEGROVE PERUSING DOCUMENTS)

6          **MR. PALANGE:** Your Honor, I want to object,
7     that we're actually retrying a case that was
8     already tried, an exact same duplicate of the case.

9          **THE COURT:**   I don't know what you're
10    talking about, Mr. Palange.   I'm trying to address
11    something that you filed that hasn't been addressed
12    yet.   And I'm just trying to locate it, that's all.

13         **MR. PALANGE:**   Yes, Your Honor.

14         (COURT PERUSING COURT FILE)

15         **THE COURT:**   Oh, here it is.   So there was
16    some issue that came up on January 24 with regard
17    to payment of the psychological evaluation.   And
18    you said, and I quote from Page 35 of the
19    transcript, that the first time -- "No, I've had
20    nothing but my Constitutional rights violated from
21    day one" -- we're talking about Dr. Myers now.   "I
22    was bullied, intimidated.   My lawyer lied at me
23    constantly, and she even lied to Your Honor,
24    because on June 7, the first time we met, I said
25    'No, I'll never submit to a psychological

1   evaluation,' and she told you, 'We'll think about

2   it.'" And then I indicated that I thought you had

3   agreed on the record to that.

4       And I said that I was going to order the

5   transcript so I could determine whether you agreed

6   to that. And you said that you never agreed. And

7   then there was a part of the order, also from

8   October 31, that each party would contribute

9   one-half of the most recent Guardian Ad Litem

10  invoice of $3,761. I know the Plaintiff paid her

11  share. I asked, Mr. Palange, whether you paid your

12  share; and you said you were in debt, you didn't

13  have access to that money, and I said, "I believe

14  you were in court. You were ordered to pay it and

15  you agreed to it."

16          **MR. PALANGE:** While I was being

17  misrepresented, Your Honor.

18          **THE COURT:** Well --

19          **MR. PALANGE:** While I was being

20  misrepresented. Since I've taken over my case, I

21  won't be misrepresented again. But anything that

22  transpired before today is clearly a

23  misrepresentation. And you combined two different

24  topics. The first time we met, I turned, and I

25  don't remember who was in the court, but I turned

1   to my lawyer and I whispered in her ear, something

2   I cannot repeat in court, when it was asked would

3   I go see blah, blah, blah.  And I told her,

4   basically, "Tell Your Honor absolutely not, in no

5   way will I give up my fundamental rights, my

6   Constitutional rights.  I'm innocent, and I'm going

7   to profess my innocence by saying no."

8          **THE COURT:**  Okay.  Well, nevertheless,

9   Mr. Palange, on October 31 you did, in fact,

10  agree to see a psychiatrist that was upon the

11  recommendation of the Guardian Ad Litem.  And

12  Miss Gravel said, "He wants to know if it's going

13  to be a court evaluator, psychiatrist."  I said,

14  "We don't have court evaluators."  The transcript

15  indicates that you and Miss Gravel were conferring,

16  and she said -- and you were standing right there,

17  so you certainly could have said, "No, she's not

18  representing what I said."  But she indicated,

19  "He's fine with that.  He prefers East Greenwich,

20  but he knows he's going to have to work with the

21  Guardian Ad Litem to find a psychiatrist."  And

22  then --

23          **MR. PALANGE:**  In regards to --

24          **THE COURT:**  Excuse me, I'm not done yet.

25  And I'm not going to have a long argument on this.

1       Honor."  And then I said, "You may enter an order."

2            I do all of that pretty routinely when there

3       are agreed orders so I can be sure that each of the

4       litigants, in fact, has entered into the order

5       freely and voluntarily, wants it to be made a court

6       order, and it is agreeable to him or her.  And that

7       was why I wanted the October 31st transcript,

8       because I wanted to make sure that I had, in fact,

9       done that; and that you had an opportunity to speak

10      that day, which you did; and that you agreed to all

11      of these.

12           So now I have a letter from Ms. Iannone that

13      her bill has still not been paid.

14           **MR. PALANGE:**  Is she still unavailable for

15      deposition or cross-examination at trial?

16           **THE COURT:**  She is court excused, yes.

17      She's court excused from all court matters until

18      July 31.

19           **MR. PALANGE:**  I'd like to go on record

20      that I think that's an extreme violation of my

21      civil rights, my Constitutional rights, to make her

22      unavailable for cross-examination in front of the

23      three women that told her I was an innocent man.

24      That report should be published for the public to

25      see how --

1        **THE COURT:**  It better not be.  I have
2    already addressed this.  I'm not addressing it
3    again.  It better be off the Internet, off of your
4    servers, off of everything that you previously
5    published it on.  I spent a long time on January 24
6    discussing the fact that Guardian Ad Litem reports
7    are never public records, never, ever.  They are
8    highly confidential because of the impact that they
9    conceivably could have on a child.  And --
10        **MR. PALANGE:**  I'd like --
11        **THE COURT:**  -- that is why -- and I
12    understand that you disagree with the, with the
13    fact that Ms. Iannone is excused.  But,
14    nevertheless, she is excused and that's the end of
15    that.
16        **MR. UPDEGROVE:**  Your Honor, if I may just
17    make one comment on that --
18        **MR. PALANGE:**  I object, Your Honor.  I
19    object to everything that was said.  I object to
20    everything that transpired on October 31.  I was
21    misrepresented --
22        **MR. UPDEGROVE:**  Your Honor, may I have an
23    opportunity to speak?
24        **MR. PALANGE:**  Sorry, he interrupted me.
25        **MR. UPDEGROVE:**  I think I started.

1    him.

2            **MR. PALANGE:**  Your Honor, I'd like to go

3    on record that I object to the fact that I really

4    have no idea, absolutely, why I'm here today.  What

5    evidence has been presented against me for me to

6    lose my child?

7            **THE COURT:**  You're going to have a hearing

8    today with evidence, with testimony, as I indicated

9    previously, with regard to financial matters.

10           Now, do you --

11           **MR. PALANGE:**  But I object to the

12   financial -- sorry to interrupt.  I object to

13   having a hearing on my financial matters when I

14   have no idea why my child was taken from me.  I

15   should not be here.

16           **THE COURT:**  Okay.  Your objection is

17   overruled.  You may sit down.

18           So, for the record, Mr. Palange did file on

19   January 25 an affidavit indicating he had deleted

20   all copies of the Guardian Ad Litem report from all

21   electronic devices, all back-up devices, all online

22   storage services; that he has no paper copies of it

23   or any place else that he could access of it --

24   access it.  So I'm hoping that it's down.

25           Mr. Palange also filed on January 23, a motion

served on Bank -- again, just by agreeing, I would never agree to that order if I'm not traumatized because it's against my Constitutional rights. I didn't do anything wrong. I'm an innocent father.

      **THE COURT:** You didn't --

      **MR. PALANGE:** Defendant's Motion to Accept --

      **THE COURT:** You didn't agree to it. Mr. Updegrove had the records already so --

      **MR. PALANGE:** I would have objected on, on record.

Defendant's Motion to Accept Late Filing Fees is denied. I would have objected because I was misrepresented from the very beginning. What I was being told about Family Court was so far from the truth that I see today that I never would have agreed to them.

No. 5. Defendant's Motion for Certified Copies -- I don't object to that.

No. 6. Defendant's Motion for Declaration of Rights and Jury Trial. I absolutely would support No. 6.

      **THE COURT:** I've already ruled on that, sir.

      **MR. PALANGE:** No. 7. Defendant's Pro Se

1   Objection -- Integrity of Transcripts -- I still

2   feel there was things said to the Defendant that

3   did not make the transcripts, that I'm not going to

4   put on transcript now.  But, actually, I would like

5   it put on transcript now what I could not find in

6   the transcripts was Your Honor's advising me that

7   it was in my best interest to hire an attorney

8   before I went to trial in Family Court.

9           **MR. UPDEGROVE:**  I don't see where that's

10  part of the order, Your Honor.

11          **THE COURT:**  It's not.

12          **MR. PALANGE:**  No. 8.  The Guardian Ad

13  Litem Order -- the Guardian Ad Litem's report, I

14  will be making a motion, and I will be following

15  through, that it should be made public to show the

16  public what is being done to people in Family

17  Court.

18          **MR. UPDEGROVE:**  It's already been ruled

19  on, Your Honor.

20          **MR. PALANGE:**  So, No. 8, I object -- I

21  would have objected more strenuously on January 24,

22  had I not been harassed by the Sheriff's

23  Department.

24          **MR. UPDEGROVE:**  Your Honor, are we going

25  to go through --

1      **MR. PALANGE:**  No. 9.  All medical -- he's

2   interrupting.

3      No. 9.  All medical, psychological,

4   counseling, psychiatric evaluations -- again,

5   that's a violation of my unalienable rights, my

6   fundamental rights.  I haven't been -- I haven't

7   even been accused yet.  I don't even know why I'm

8   here.  What due cause justifies me being here

9   today?

10      No. 10.  The Court holds on the issue of

11   payment of the Guardian -- skip that for the time

12   being.

13      No. 11.  Defendant shall forthwith provide to

14   counsel -- again, it's a violation of everything,

15   my liberty, that copies of my entire life through

16   my financial records -- we all know that ATMs track

17   everything you do, everywhere you go all day long.

18   The Plaintiff's entire family now has copies of all

19   my financial documents, for what just cause.

20      So I absolutely object to everything on the

21   proposed order from January 24.

22      **THE COURT:**  Okay.  I already went through

23   all of these objections on January 24, which is

24   when I ruled on them, which is the purpose of the

25   order.  So the order may enter.

CAROLE A. MALAGA, STENOGRAPHER  (401) 782-4191

1    **MR. UPDEGROVE:**  Thank you, Your Honor.

2    **THE COURT:**  Thank you.  So --

3    **MR. PALANGE:**  I object, Your Honor.

4    **THE COURT:**  I understand that.

5    **MR. PALANGE:**  I don't understand why the

6    order has been entered.

7    **THE COURT:**  Your objection is noted for

8    the record.

9    **MR. PALANGE:**  And I think it's --

10    **THE COURT:**  You may sit down.

11    **MR. PALANGE:**  -- a violation of all my

12    Constitutional rights and those of my daughter.

13    **THE COURT:**  Okay.  Then we have a motion

14    to order the Sheriffs' Department to treat the

15    Defendant and the Plaintiff equal.  I don't know

16    what that's supposed to be, but it appears that I

17    think they did that today.

18    **MR. PALANGE:**  Your Honor, can I put it on

19    record that they were going to isolate me.  They

20    were going to take me out of here alone,

21    communicating to the entire courtroom that I'm the

22    criminal, I'm the one that needs to be punished.

23    **THE COURT:**  There's no one in this

24    courtroom, other than the people involved in this

25    case, and the Supervisory Clerk from the Clerk's

1      Office, that's it, and the Sheriffs and the court

2      staff.

3              MR. PALANGE:  By treating me like a

4      criminal compels the Court to convict me like a

5      criminal.  I should be treated equal.  I haven't

6      done anything different than the Plaintiff has

7      done, except not take a child from a loving parent

8      with no justification, no due process.

9              THE COURT:  I think last time and today I

10     ordered all electronic devices go, other than those

11     of the attorneys.  So I think that that motion is

12     moot at this point.

13         Motion to Order Defendant To Submit an

14     Affidavit and For Emergency Hearing on Affidavit.

15     I don't -- if you want to submit an affidavit, I

16     guess you can.  But, you know, I mean, we're going

17     to eventually have a hearing on everything.

18         Okay.  So I think that's it on the motions.

19              MR. PALANGE:  I'm --

20              THE COURT:  So --

21              MR. PALANGE:  Your Honor, but there's

22     other motions that I had submitted that I have

23     copies of.

24              THE COURT:  I don't have any other motions

25     that were submitted to the Court.  If you submitted

1    them yesterday, they're probably not in the file

2    yet, nor are they timely.  So all I have is what I

3    went through.  Today we're going to have a hearing

4    on the financial motions in the order.

5        So let me start with discovery for a minute.

6    Do you have everything that you need?

7        MR. UPDEGROVE:  I have everything I need

8    for today, Your Honor.

9        THE COURT:  Okay.  So I just want to note

10   on the record that the first -- what I have is a

11   Motion For Emergency And Other Relief filed on

12   May 9 of 2018 that included a request for child

13   support.  I have two DR-6s:  One filed by the

14   Plaintiff and one filed by the Defendant.  I don't

15   know if either of you want those to be exhibits.

16       MR. UPDEGROVE:  Well, Your Honor, I do.  I

17   would be asking, actually, that both -- I'm going

18   to be cross-examining Mr. Palange as to his and I

19   will be asking my client as to hers.

20       THE COURT:  Okay.  Sir, do you have any

21   objection to the Statement of Assets, Liabilities,

22   Income and Expenses, which have already been filed

23   with the court, which were under oath and which, it

24   looks like, you signed on May 23, 2018, and

25   Ms. Palange's which it appears that she signed on

**MR. PALANGE:** -- present an affidavit --

**THE COURT:** It actually was by agreement of the parties on May 30. And then I have -- let's see.

(COURT PERUSING COURT FILE)

**THE COURT:** I have a non-prejudicial child support order in the amount of $1,395 per month retroactive to the month of May. And since that is non-prejudicial, both parties can clearly submit evidence that would suggest to the Court that it should be lower or higher than the non-prejudicial amount.

**MR. PALANGE:** Your Honor, I object to that. I can present evidence to the Court that it should not be paid in any way at all. And I can present all that evidence at a jury trial when I am found innocent and it is found the opposite of what I suspect I'm being accused of today.

**THE COURT:** The Family Court doesn't have jury trials. These motions clearly belong in Family Court; we are the court with jurisdiction. And there are no jury trials with regard to matters relating to child support, which we -- is what we are here for today.

**MR. PALANGE:** However, I'd like to object

1    that under the Uniform Declaratory Judgment Act,

2    I am afforded a jury trial.

3         **THE COURT:**  I ruled on that January 24.

4    Take a look at the order.

5         **MR. PALANGE:**  I'd like to go on record

6    that I object to anything that transpired on

7    January 24 because I was under PTSD.  I can jack --

8    I can, I can violate the rights of any of these

9    Sheriffs in this building and get them upset enough

10   that they won't even know what their name is right

11   now.

12        I object to anything that transpired on the

13   24th, because if I had the opportunity to defend

14   myself, I can, obviously, do it fairly well.

15        **THE COURT:**  Thank you.  Your objection is

16   noted and overruled.

17        Mr. Updegrove, are you ready to proceed?

18        **MR. UPDEGROVE:**  I am ready to proceed,

19   and I call Steven Palange to the -- to the stand,

20   Your Honor.

21        **THE COURT:**  Mr. Palange, take the stand,

22   please.

23        **MR. PALANGE:**  Your Honor, I'd like it

24   noted for the record that the transcripts do not

25   reflect, because they're written, the feelings, the

34

| | |
|---|---|
| 1 | Wakefield, Rhode Island 02879, I do. |
| 2 | Q. Okay.  And I asked if it was a rental property.  Is |
| 3 | that correct? |
| 4 | A. Ah, yes, it is. |
| 5 | Q. Okay.  And do you live there alone? |
| 6 | A. I do. |
| 7 | Q. Okay.  And you've lived there for how long? |
| 8 | A. I've lived there for five years where four days a |
| 9 | week my daughter was with me and three days every |
| 10 | single solitary week my girlfriend, her nanny, and |
| 11 | everyone will testify that the daughter spent about |
| 12 | four days a week with me for the last five years. |
| 13 | MR. UPDEGROVE:  Your Honor, if I may, only |
| 14 | because I spent last Friday in a deposition with |
| 15 | Mr. Palange -- and it's apparent that he does not |
| 16 | answer questions without having to get his say |
| 17 | in -- I would just ask the Court to admonish Mr. |
| 18 | Palange to be responsive only, because the latter |
| 19 | part of that answer I will move to strike as |
| 20 | nonresponsive. |
| 21 | MR. PALANGE:  I will, Your Honor. |
| 22 | THE COURT:  It is not responsive and |
| 23 | Mr. -- it may be stricken as not responsive.  And, |
| 24 | Mr. Palange, you will just answer the questions. |
| 25 | You'll have your opportunity to question yourself. |

MR. **PALANGE:** All electronic devices were taken aware from me. I don't -- oh, because he's an attorney, that's why he has his.

MR. **UPDEGROVE:** I have two matters in Newport, Your Honor. I could be here at two.

**THE COURT:** Two, it would be at two. Could you let Mr. Palange get whatever device his calendar is on, please.

MR. **PALANGE:** And if I could use the restroom very quickly.

**THE COURT:** Well, we're going to -- we're done.

MR. **PALANGE:** Oh.

**THE COURT:** And then you can use the restroom. I just need to get a date.

MR. **PALANGE:** Most likely I don't. Thursday?

**THE COURT:** Thursday, March 7. We're still going to come back Friday. But Thursday, March 7 would be an additional trial day at 2 P.M.

MR. **PALANGE:** I'm available. I know I am, without even looking.

**THE COURT:** Okay. March 7.

So, Mr. Palange, I want you to listen to me. When Mr. Updegrove is finished questioning you, we

1

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

WASHINGTON, SC.                               FAMILY COURT


\* \* \* \* \* \* \* \* \* \* \*

**MARGARITA PALANGE**

       VS.                          F.C. NO.
                          W20120361
**STEVEN PALANGE**

\* \* \* \* \* \* \* \* \* \* \*



**H E A R D** before

The Honorable Associate Judge Sandra A. Lanni

in the Washington County Family Court

on February 22, 2019.



**APPEARANCES:**


FOR THE
  PLAINTIFF ....... **RICHARD E. UPDEGROVE, ESQUIRE**


FOR THE
  DEFENDANT ....... **SELF-REPRESENTED LITIGANT**

CAROLE A. MALAGA, STENOGRAPHER (401) 782-4191

1    original agreement from 2012.  So for me to answer

2    that question would violate my Constitutional

3    right.

4         **THE COURT**:  Okay.  Then, are you

5    suggesting that in any way that what is in this

6    order is not consistent with what the Court

7    ordered?

8         **MR. PALANGE**:  I'm implying that I would

9    need more time to look at and think about how to

10   address this topic and ask for more time for

11   discovery for that.

12        **THE COURT**:  That has nothing -- discovery

13   is not relevant to the entry of the order, sir.

14   It is not.  And I will tell you that there are

15   statutes that prevent frivolous motions.  So if I

16   start seeing frivolous motions, I can apply

17   sanctions to those frivolous motions.

18        And let me just suggest to you, because you

19   keep repeating this, the fact that you had an

20   agreement, whenever it was you reached it, the

21   Court always has the ability to modify agreements

22   to the extent they relate to children.  That is

23   within the Court's jurisdiction.  The parties

24   cannot take that jurisdiction away from the Court

25   by reaching an agreement.

1    And that is why you hear the words often

2    "incorporated but not merged" when you're talking

3    about property settlement agreements except as it

4    relates to children, because the Court always has

5    the jurisdiction to modify court orders relating to

6    children regardless of the parties' agreement.

7         MR. PALANGE:  Which I respect, Your Honor,

8    when they have just cause and have extended due

9    process.  And I simply object to the question and

10   don't wish to answer it, and unless you order me

11   to answer it "yes" or "no," I'd still like to say

12   that I do respect the Court's right to modify child

13   custody, but I don't see any due cause, and I'm

14   going to stand on my right of its relevancy and

15   it's a violation of my Constitutional rights.

16        THE COURT:  Okay.  You may take the stand.

17   You were in the middle of testifying.

18        MR. PALANGE:  Your Honor, I'd like to

19   object to the fact that I even have to take the

20   stand.  There has been no evidence to prove that

21   the agreement of 2012 should be reviewed, and I

22   object based on relevancy.

23        THE COURT:  Your objection is overruled.

24   Take the stand and be sworn in.  And we'll pick up

25   where we left off.

CAROLE A. MALAGA, STENOGRAPHER (401) 782-4191

1    and lunch; and I did the same thing in Pennsylvania

2    when I was there to the people that I was working

3    with.  These are all food purchases for my company

4    employees.  I can prove that; I have video of that.

5  Q.  And when you were in Pennsylvania, you had no

6    employees that you were paying in Pennsylvania,

7    is that correct?

8         MR. PALANGE:  Again, I object.  We should

9    not be talking at any point about me being in

10   Pennsylvania.  We should be talking about you being

11   in Thailand --

12        THE COURT:  Overruled.  Overruled.  Answer

13   the question.

14  Q.  When you were in Pennsylvania --

15        MR. PALANGE:  I object to the Sheriff

16   stepping toward me in a threatening manner when the

17   Judge simply said "overruled" when I was going to

18   answer a question.

19        THE COURT:  Mr. Palange, I'm going to have

20   Carole read the question back.  I don't need the

21   extended commentary.  Answer the question right

22   now.  You are a witness.  Answer the question.

23              (QUESTION ON PAGE 29 LINE 5

24               READ BY STENOGRAPHER)

25        THE COURT:  That's a "yes" or "no" answer.

1    on my financials pending trial of my child. I did

2    not realize I was on trial for contempt of court

3    for, relating to any -- my financials or any

4    violations that I have appealed to prior.

5           THE COURT: I don't know why you didn't

6    understand that. But a trial and a hearing with

7    testimony, there's no real difference between the

8    two. So this is a trial on the financial motions

9    which was set down quite awhile ago.

10       So answer the question, please.

11  A.  My answer --

12          THE COURT: It had to do with a resort in

13    Boiling Springs.

14          MR. PALANGE: My answer is I haven't had

15    time to do proper discovery for a trial. I thought

16    this was just for a pro se person discovery. I

17    thought this was discovery and not a trial --

18          THE COURT: We don't do discovery in the

19    courtroom, sir. Answer the question.

20  A.  I don't know. I don't know what the answer is.

21    I don't know how to answer, given that anything I

22    say is a violation of my Constitutional rights.

23  Q.  Okay. The question is whether these two charges

24    were made by you.

25  A.  I believe they were.

1    example, and do, say, one-hour webinar trainings

2    to your sales employees, or they post things on

3    YouTube, or you simply like their legal blog.  And

4    you subscribe to legal blog and you sign up with

5    Patreon; and then Patreon takes $10 from them every

6    month for subscribing to your blog.

7  Q.  Is it fair to say that you were the one who

8    subscribed to the Patreon company and incurred

9    these charges?

10  A.  Most likely, yes.

11  Q.  Okay.  Now we're going to go to the next line.

12    Tell me --

13          THE WITNESS:  Can we break?  I'm dying of

14    thirst.

15          THE COURT:  The Sheriff will give you some

16    water.

17          THE WITNESS:  Thank you.

18      And I still wish to object for the record that

19    I did not have any idea I was here for a trial.

20          THE COURT:  I've heard you, sir.

21          MR. PALANGE:  I just want --

22          THE COURT:  Mr. Updegrove, next question.

23          MR. PALANGE:  -- the record to reflect.

24          THE COURT:  The record has reflected it

25    multiple times.

```
 1              MR. UPDEGROVE:  Actually, this is here to
 2         establish child support, just so that you
 3         understand it.  Okay?
 4              MR. PALANGE:  Thank you for letting me
 5         clarify that I object --
 6              MR. UPDEGROVE:  There you go.
 7              MR. PALANGE:  -- based on the child
 8         support.
 9    Q.   Okay.  Because you don't want to pay it, is that
10         accurate?
11    A.   Because I have an agreement in place, and we've
12         been sharing months at a time with the child.  Why
13         should I have to pay her to do something I'm
14         willing to do for the next 12 months?  And I hope
15         to do when I get my child back.
16    Q.   You remember that the Court has made several orders
17         about your obligation to pay child support since
18         we've started this process in May; don't you
19         remember that?
20    A.   Misrepresentation.  All those orders should be
21         appealed and --
22    Q.   And ignored by you?
23    A.   And appealed to the higher court.  I have appeals
24         in place, and I'll be filing more appeals based on
25         those.
```

1   A.   25 percent.

2   Q.   Of your contribution?

3   A.   Yes, correct.

4   Q.   Is that included in the $18,000 or separate from

5        the 18,000?

6   A.   Separate.

7   Q.   And getting back to your W2 -- I'm sorry, your W2.

8        Your DR-6, the second page there, at the bottom

9        you'll see a line number or line lettered "w".   It

10       says, Contribution from household members.

11  A.   Yes.

12  Q.   There is an entry there.   How much on a monthly

13       basis?

14  A.   It's $800.

15  Q.   And who does that contribution come from?

16  A.   It comes from Michael Garretson, my boyfriend.

17  Q.   And he's been contributing that for how long?

18  A.   For over a year.

19  Q.   Okay.   Now, I also see Line "s".   It says, Child

20       Support.   It's blank.   Is that accurate?

21  A.   Yes.

22  Q.   At any time since the commencement of this

23       proceeding in May of 2018, has your ex-husband,

24       Steven Palange, paid you any child support?

25  A.   No.

1   Q.  Is it fair to say that you're using the camps

2       in lieu of day care during the summertime?

3   A.  Yes.

4   Q.  What's your normal work schedule in terms of time?

5   A.  I -- my work starts at 8:30 and ends at 5.

6   Q.  Okay.  And do you have the ability to do any work

7       from home?

8   A.  Sometimes when my daughter is sick I stay home and

9       work from home.

10  Q.  But other than that, you can't -- can you do it on

11      a regular basis?

12  A.  No, I cannot.

13              MR. UPDEGROVE:  I have no further

14      questions of this witness, Your Honor.

15              THE COURT:  Okay.  We are going to break

16      for the day.  You may step down.

17              (PLAINTIFF STEPS DOWN FROM WITNESS STAND)

18              MR. UPDEGROVE:  Your Honor, can we

19      return -- I forgot to retrieve the documents from

20      Mr. Palange.

21              THE COURT:  Well, let's start with what

22      she's been looking at.

23              MR. UPDEGROVE:  I ask that that be marked

24      full, subject to cross.

25              THE COURT:  Any objection, sir?

1    reschedule the March 7 date.  So I believe,

2    although I am not a hundred percent sure, that

3    March 21 will be available in the afternoon.  I

4    will know definitively on Monday.  So we can vacate

5    March 7.

6              MR. UPDEGROVE:  Your Honor, I am in

7    Newport that day, and I have one, two, three, four

8    -- I have six cases.

9              THE COURT:  Can you be here at two?

10             MR. UPDEGROVE:  One of them is with

11   Mr. McIntyre scheduled for a hearing.  Depends on

12   how reasonable he is.

13             THE COURT:  Is it supposed to be a hearing

14   with testimony?

15             MR. UPDEGROVE:  Yes.

16             THE COURT:  Well, my next available date

17   after that currently is April 8, which is Monday.

18        (ATTORNEY UPDEGROVE CONFERRING WITH PLAINTIFF)

19             MR. UPDEGROVE:  Your Honor, my client is

20   suggesting that she would prefer perhaps to take

21   the Court's --

22        (DEFENDANT EXITING COURTROOM)

23             THE COURT:  Where are you going, sir?

24             MR. PALANGE:  I'm sorry.  I didn't realize

25   that I wasn't supposed to do that.  I was going to

1

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

WASHINGTON, SC.                         FAMILY COURT

\* \* \* \* \* \* \* \* \* \* \*

**MARGARITA PALANGE**

       vs.                         F.C. NO.
                                        W20120361
**STEVEN PALANGE**

\* \* \* \* \* \* \* \* \* \* \*

**H E A R D** before

The Honorable Associate Judge Sandra A. Lanni

in the Washington County Family Court

on March 7, 2019.

**APPEARANCES**:

FOR THE
  PLAINTIFF ....... **RICHARD E. UPDEGROVE, ESQUIRE**

FOR THE
  DEFENDANT ....... **SELF-REPRESENTED LITIGANT**

1    MARGARITA PALANGE   vs.   STEVEN PALANGE

2            F.C. NO. W20120361

3              MARCH 7, 2019

4

5        THE COURT:  Palange vs. Palange.

6        Okay.  So the parties can go out with the

7    Sheriffs, and they can give the Sheriffs all their

8    electronics, any recording devices, anything like

9    that.

10           (PLAINTIFF AND DEFENDANT EXIT COURTROOM)

11           (PLAINTIFF AND DEFENDANT REENTER COURTROOM)

12        THE COURT:  Sorry we're starting late, but

13    we went until 1:30 this morning.  And I no longer

14    have to leave at 3:45, so we can go till 4:30.

15               (COURT PERUSING COURT FILE)

16        THE COURT:  I think we were last here on

17    February 22; and since then, some things have been

18    filed.  So let me address those briefly.

19        So the first thing I have is an Objection to

20    Parental Alienation and a Motion For An Emergency

21    Hearing On Parental Alienation that was filed on

22    February 26.  As I have said before, all issues

23    relating to custody, placement, and other parenting

24    time of the minor child will be heard in due

25    course; but first we're going to finish this

1   hearing, which is a hearing on the financials.  And
2   part of the reason for that is that neither of the
3   parties wanted to pay for another Guardian Ad Litem
4   to complete Ms. Iannone's work.  Mr. Palange
5   indicated that he wanted to cross-examine
6   Ms. Iannone, and Ms. Iannone is court excused until
7   July.
8          So that Objection To Parental Alienation and
9   Motion For Emergency Hearing On Parental Alienation
10  will need to wait at this point in time.
11         MR. PALANGE:  Your Honor, may I, for the
12  record, object because being the reason for the
13  parental alienation, I find that the reason I made
14  the motion or the objection was the severity of the
15  situation.  And I do understand and I do look
16  forward and want to go to trial, but just hope that
17  somehow, for a matter of record and a matter of
18  appeal, that I note that I think there's plenty of
19  evidence to prove that there's extreme parental
20  alienation currently going on that should be
21  addressed, that's not being addressed; and I just
22  want it as a matter of record.
23         THE COURT:  Thank you.  We'll hear all of
24  the pending motions in due course.
25         MR. PALANGE:  Thank you, Your Honor.

1      **THE COURT:**  The next thing that was filed

2   was Plaintiff's Objection To The Integrity Of The

3   Docket Sheet and Ex Parte Chamber Conferences.

4      So I want to state on the record that never

5   did the Court have an ex parte chamber conference

6   during the course of this case once the, once the

7   Defendant was served.  The only time the Court has

8   an ex parte conference is in an emergency situation

9   at the beginning of the case when there is an

10  emergency and the other party has not yet been

11  notified.  Those are the court rules, and that's

12  what is followed.

13     Every chambers conference that the Court had

14  in this case took place when the Defendant was

15  represented by counsel and when both Plaintiff's

16  counsel and Defendant's counsel were present.  I

17  believe there were some that Ms. Iannone was also

18  present.  There was one at which counsel for the

19  child's school was present; but in that particular

20  case, the Defendant was represented by counsel.

21  Plaintiff was represented by counsel.

22     And I saw your representations, sir, that your

23  attorney told you she was there but didn't

24  participate.  I don't know what that means.  She

25  was there.  She was representing you in the case.

```
 1    To the extent that she chose or not chose to say
 2    something, that's up to her.  But there were no ex
 3    parte conferences.
 4        Chambers conferences are not put on the docket
 5    sheet, as I understand it, as separate items.
 6            THE CLERK:  That's correct.
 7            THE COURT:  That's the court -- that's the
 8    way the court functions.  The individual judges
 9    don't have anything to do with that.  The docket
10    sheet is handled the same way in all cases.  And
11    there are many chambers conferences in Family
12    Court, and they do not go on the docket sheet.
13        So I don't know, it was called an objection,
14    but I'm just responding to that on the record.
15            MR. PALANGE:  For the record, may I state
16    that I'd like the person's name from the school to
17    go on the record or at least be presented to me so
18    that I can offer some type of defense as to
19    whatever was potentially said --
20            THE COURT:  I don't even remember what was
21    said in that conference, sir.  It was a chambers
22    conference in the midst of a case where your
23    attorney was there.  As you know, when both sides
24    are represented by attorneys, there are often
25    chambers conferences.  Both attorneys are present.
```

1    They are only held when the attorneys ask for them

2    and agree to them.  That's the only time they're

3    held.

4         So the Court, you know, the Court doesn't,

5    sua sponte, decide on a chambers conference.  If an

6    attorney asks for it and the other attorney doesn't

7    object, we have a chambers conference.  We've had

8    chambers conferences in this case when you were

9    represented.  I don't recall the name of the

10   attorney from your child's school who was present

11   at one of them.  I remember one of them when there

12   was an attorney present from your child's school.

13   So I can't help you there.

14            MR. PALANGE:  Thank you, Your Honor.

15        For the record, and for appeal, my attorney,

16   in my opinion, should have objected to anyone from

17   anywhere being -- because it's testimony.  It's

18   non-courtroom testimony.  She didn't object, and

19   she should have.  So for appeal purposes, I would

20   like to object.

21            THE COURT:  Okay.  Sir, have a seat.  Your

22   objection is noted for the record.  It is not

23   testimony.  It is not evidence.  Nothing that

24   happened -- nothing that an attorney says is

25   evidence in a case, whether it happens in chambers

1    **THE COURT:** Sir, the only mediation that

2    the Court ever orders is to our appointed -- our

3    court mediators. We don't order people to go to

4    outside mediation. That is a choice people make.

5    And coming to an agreement in mediation is also not

6    binding. It's a choice people make. If the two of

7    you decide outside of the courtroom to go to

8    private mediation, I certainly would support that

9    effort. But you don't have to agree to that. And

10   I'm not going to order you to go to a court

11   mediator. Okay?

12   **MR. PALANGE:** I understand, Your Honor.

13   And I do want to point out on the record, or for

14   the record, and certainly for appeal, that I'm

15   simply asking for what I had in the beginning,

16   50/50 custody, 50/50 placement, and get my child

17   back right away, and everything goes the same.

18   Where she's asking for sole custody, sole

19   placement, no visitation, and I look forward to

20   the evidence that she presents to justify that

21   position.

22   **THE COURT:** Okay. Well, right now we're

23   going to continue with the financial part of this.

24   So are you ready, Mr. Updegrove?

25   **MR. UPDEGROVE:** Yes, Your Honor. I

1    everything here, and it shows that I'm very

2    cooperative in every way.  And once I found someone

3    that I thought might want to buy her condo, I

4    immediately put the two together on the phone.

5             THE COURT:  The issue here, sir, is your

6    child support.

7             MR. PALANGE:  And I was simply showing --

8             THE COURT:  You can't pay child support by

9    introducing her to a buyer for the condo.

10            MR. PALANGE:  Your Honor, I object.  I

11   don't owe child support; and I want to go for

12   matter of record, matter of appeal, that I don't

13   even know what I'm being charged with.  I never

14   should have lost my child in the first place.

15            THE COURT:  You're not being charged with

16   anything.  This is a hearing on financial matters

17   which basically is child support.

18            MR. PALANGE:  Thank you, Your Honor.  But,

19   for the record, I shouldn't have to pay any child

20   support once the trial shows that I'm a hundred

21   percent innocent.

22            THE COURT:  Well, you know, there's no

23   guilt or innocence, sir.  This is not a criminal

24   trial.  If in the future you obtain shared

25   placement again of your child, then the child

26

support order would change.  But the fact is, that right now and for the last number of months, you have not -- Ms. Palange has had primary placement of your child.  A child support order was entered.  That is what we're here on, whether or not it was without prejudice, I think, as to the amount.

So we're here to determine what the correct amount should have been, what the correct amount is now, and what your arrearage is and whether you have willfully failed to pay that arrearage.  Those are the issues that are before the Court right now.

The fact that you introduced a buyer for the condo is not relevant.  The objection is sustained.  Please move on.

**MR. PALANGE:**  I wish to object to the fact that I'm on trial for child support when the child should never have been taken in the first place.

**THE COURT:**  You have objected to that multiple times.  We are here on this trial.  Please move on.  Your objection has been noted --

**MR. PALANGE:**  I only have to object --

**THE COURT:**  Excuse me.

**MR. PALANGE:**  Sorry.

**THE COURT:**  Your objection has been noted for the record.  Now you need to move on.  Ask your

1        MR. PALANGE:  Your Honor, I know it's a

2    control hearing but will I --

3        THE COURT:  It's not a control hearing.

4    I don't know what you're -- you keep saying that.

5    This is a trial or a hearing, whatever you want to

6    call it, on the financial motions that are filed.

7    This is it.  Everybody is going to present their

8    evidence on those motions.  Then the Court will

9    take that evidence into consideration and there

10   will be court orders.  And there may or may not be

11   findings of contempt for violating prior court

12   orders.  This is the trial on the financial aspects

13   of this case.  I have now said this every single

14   time that we've been here.

15       MR. PALANGE:  Please let the record

16   reflect that I did not mean to anger The Honor, I

17   simply used the wrong words.

18       THE COURT:  Well, when you say "control,"

19   you suggested before that you didn't think this was

20   a trial.

21       MR. PALANGE:  This is a trial, yup.

22       THE COURT:  I want to make sure you

23   understand that it is.

24       MR. PALANGE:  I understand, Your Honor.

25       THE COURT:  Okay.

1      **MR. PALANGE:**  But I would like to state

2    for the record I'm on trial for child support for a

3    child that I never ever get to see, and there's no

4    evidence been presented as to why I should not be

5    with my child.

6         **THE COURT:**  Okay.  So here's what I have

7    to say to that.  The issues of child support and

8    parenting time, the Supreme Court has ruled, are

9    two separate and distinct issues.  They are not

10   tied together.  That's number one.

11        Number two, as I stated at the beginning of

12   the afternoon, unfortunately, we are dealing with a

13   situation with the Guardian Ad Litem.  So I offered

14   and had found someone who could replace the

15   Guardian Ad Litem.  My recollection is that neither

16   you nor your former wife were willing to pay that

17   person.  So I can't do anything about that.

18        And Ms. Iannone is court excused into and

19   maybe through the month of July.  I can't remember

20   the exact date.  So if you're going to call her --

21   if you just want her report to be admitted, that's

22   fine, because the statute allows that.  But you're

23   entitled to cross-examine on the record, and you've

24   indicated that you want to do that.  Therefore, I

25   can't -- you know, I can't do anything about that

1    right now.  Perhaps by the time we finish this, it

2    will be time to start the other part of this case.

3          MR. PALANGE:  I -- Your Honor, thank you

4    very much, and I appreciate that.  And I want to

5    object for the record that I've been on trial for

6    child support for what I hope in the end will be a

7    child that I'm granted full custody, full

8    placement, which I will not accept.  I would only

9    accept 50/50.

10          THE COURT:  Well, if that happened, then

11    any child support orders the Court ordered would be

12    modified at that point in time based on all of this

13    testimony and evidence and the Court's findings as

14    to what your respective incomes are.

15          The Court can always modify child support.

16    But the reason it was modified to begin with, to

17    the child support order that was put in place, is

18    because currently you do not have shared placement.

19    So, therefore, there was a modification put in

20    place.

21          If, in the future, shared placement comes

22    back, then child support will automatically be

23    modified at that time as part of that.

24          MR. PALANGE:  Thank you.  And may I state

25    for the record that I, I am very aware of the child

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

WASHINGTON, SC.                              FAMILY COURT


\* \* \* \* \* \* \* \* \* \* \*

**MARGARITA PALANGE**

       vs.                         F.C. NO.
                              W20120361
**STEVEN PALANGE**

\* \* \* \* \* \* \* \* \* \* \*




**H E A R D** before

The Honorable Associate Judge Sandra A. Lanni

in the Washington County Family Court

on April 8, 2019.




**APPEARANCES:**


FOR THE
   PLAINTIFF ....... **RICHARD E. UPDEGROVE, ESQUIRE**


FOR THE
   DEFENDANT ....... **SELF-REPRESENTED LITIGANT**


CAROLE A. MALAGA, STENOGRAPHER (401) 782-4191

1    Court's ability to sanction for frivolous motions.

2         I also received today a jury demand from Mr.

3    Palange.  Again, a jury demand was filed and denied

4    in January.  So it's in a different format this

5    time, but there was a motion requesting a jury; and

6    that motion was denied back in January on the

7    grounds that there is no right to a jury trial in

8    an equitable case; and, therefore, I'm not granting

9    a jury trial.

10        Finally, just so everybody is aware,

11   apparently, Mr. Palange has decided that he's not

12   filing transcripts with his appeal; and, therefore,

13   the Clerk has transmitted the record to the

14   Supreme Court, the record of appeal.  So for the

15   sake of Mr. Palange, I will tell you that the

16   appeals are not docketed immediately upon

17   transmittal.

18        I understand that the Supreme Court Clerk is

19   out today, and this appeal was just transmitted; so

20   I'm quite certain that it has not been docketed

21   yet.  That while the appeal has been transmitted

22   but not docketed, both the Supreme Court and the

23   Family Court have concurrent jurisdiction; so we

24   are going forward today with the trial.

25        So are there any other preliminary issues that

1     need to be addressed before the Court resumes the

2     trial?

3            **MR. UPDEGROVE:** Your Honor, I noticed

4     that -- I was in court in Newport, and I ran back

5     to my office and noticed that there had been an

6     answer and a counterclaim filed, I believe, today

7     as well, without the accompanying motion to enter

8     them out of time.  Just for the record, I will be

9     objecting to those motions.  It's obviously almost,

10    almost a year.  Completely out of time at this

11    point.

12            **THE COURT:** Okay.  Well, you can file --

13    you know --

14            **MR. PALANGE:** And, Your Honor, to not let

15    me answer whether I didn't give her lunch and a

16    field trip, which I think was the third most

17    important thing, or whether I did bring her late to

18    school, I think it's important that I get to answer

19    those charges that deprive me of my daughter for a

20    year, because those were the charges on the

21    emergency motion.  He's acting --

22            **THE COURT:** I agree.  We need a trial.

23    The reason that we're not yet having a trial is

24    because Ms. Iannone, the Guardian Ad Litem, is

25    court excused until July by the Chief Judge of the

1    Rhode Island Family Court.  This Court must abide

2    by the Chief Judge's decision.  You, Mr. Palange,

3    have indicated that you want to cross-examine

4    Ms. Iannone.  I cannot bring her into court for

5    cross-examination while she is court excused.

6         By statute, her report is admitted as evidence

7    in the case.  However, you have a right to

8    cross-examine her.  I tried -- I say this, I think,

9    every time we come here.  I have asked both parties

10   if they're willing to have another Guardian Ad

11   Litem appointed; and while both parties said yes,

12   neither party wants to pay for that Guardian Ad

13   Litem.  So the Court is in a quandary here.

14        So we are at least going forward with part of

15   the trial that we can go forward on, which is the

16   financial piece, which would normally be part of

17   the entire trial; but since we have to separate out

18   these two pieces, we are having the hearing on the

19   financial part.

20        And just so you know, Mr. Palange, once your

21   appeal is docketed, all matters in this court

22   will cease, while the Supreme Court only has

23   jurisdiction of the case unless and until the

24   Supreme Court sends it back.  So there won't be

25   any other trial dates once the case is docketed,

until it's either dismissed or the court goes

forward with it or the court remands the case based

on somebody's motion.

    **MR. PALANGE:**  Your Honor, am I allowed to,

at recess, discuss that with the Plaintiff's

attorney?

    **THE COURT:**  Discuss what?

    **MR. PALANGE:**  What you just said.

    **THE COURT:**  I'm sorry?

    **MR. PALANGE:**  How we go forward with the

appeal to the Supreme Court.

    **THE COURT:**  I don't think there's a "we."

You can discuss anything you want with the

Plaintiff's attorney.  But the fact of the matter

is that you and the Plaintiff cannot agree that

this court's trial will go forward or anything will

go forward in this court.  It is only the -- once

the appeal is docketed, only the Supreme Court can

make those decisions.  You can't; Mr. Updegrove

can't; you can't by agreement; and this Court

can't.

    The case is before the Supreme Court once it

is docketed.  And the court will act on any motions

that are filed when they deem fit.  But beyond

that, it's outside of the jurisdiction of me or the

parties by agreement to say, well, the case is
going to go forward in Family Court while the
appeal is pending.  It doesn't happen that way.

      **MR. PALANGE:**  I understand.

      **THE COURT:**  Okay?

      **MR. PALANGE:**  Can --

      **THE COURT:**  Again, Mr. Palange, you are,
unfortunately, doing yourself a grave disservice by
representing yourself in this case.

    So I think when we finished, that you were in
the midst of your direct examination of yourself.
That is my recollection from March 7.

      **MR. PALANGE:**  Your Honor, I object to
continuing to cross-examine myself because I'm not
prepared to go forward with this trial.  It's not
simply being able to read the transcripts, but it's
more -- obviously, you just documented that I could
use the help of a professional Family Court lawyer,
that even a little more time, which appears I will
be getting, would do justice to my daughter, which
is what this should be all about.

      **THE COURT:**  This is about child support.

      **MR. PALANGE:**  Your Honor, let the record
reflect that I don't owe child support.  We have a
shared custody/shared placement, and we've always

1    shared that child for even months at a time.  I

2    don't owe child support because I forgot to pack a

3    bag lunch for one of her field trips.  There's no

4    just cause.  There's no evidence of just cause.

5        So, therefore, we continue to have shared

6    placement, and I've been deprived of my child for

7    a year without just cause and due process.

8            **THE COURT:**  Mr. Updegrove, I really don't

9    need to hear from you at this moment in time.

10            **MR. UPDEGROVE:**  Thank you, Your Honor.

11            **THE COURT:**  So you can sit down.

12            **MR. UPDEGROVE:**  Okay.

13            **THE COURT:**  We are going to proceed with

14    the trial today.

15            **MR. UPDEGROVE:**  I'm prepared.

16            **THE COURT:**  If you would like to continue

17    your direct -- it's not cross-examination.  I

18    think it's --

19            **MR. PALANGE:**  It's direct.

20            **THE COURT:**  It's direct examination,

21    because I believe Mr. Updegrove rested, now you're

22    putting on your case, Mr. Palange.  It was direct

23    examination of yourself.  If you would care to

24    continue with that, you may come up and take the

25    stand.

1    MR. PALANGE:  Thank you, Your Honor.  And

2    let the record reflect, let the record reflect,

3    that the next witness that I'd like to call, in

4    order to effectively defend myself, is Ms. Iannone.

5        THE COURT:  You're not -- you're not --

6    first of all, you're not done with the examination

7    of yourself, sir.  You were in the midst of

8    directly examining yourself.  You were on the stand

9    when we broke.  And what I have is that there was

10   not yet any cross-examination of you so --

11       MR. PALANGE:  Again, I still think I have

12   the legal right to, to say I don't want to continue

13   and reserve the right to examine myself at a later

14   date, but currently --

15       THE COURT:  No, no.  You have the right to

16   say "I'm done questioning myself."  You don't have

17   the right to say "I reserve my right to question

18   myself at a later date because I'm not ready to go

19   forward today."  You have the right -- you have two

20   choices.  You take the stand and you continue your

21   direct testimony of yourself, or you say "I'm done

22   with questioning myself" and you take the stand

23   and Mr. Updegrove questions you.  Those are your

24   choices.

25       MR. PALANGE:  I'm sorry.  Thank you,

Your Honor.  Can you repeat the last part.

THE COURT:  You either take the stand and continue your direct examination or you say "I don't have any more questions for myself," and Mr. Updegrove will then have the opportunity to cross-examine you.

MR. PALANGE:  Thank you, Your Honor.

(BRIEF PAUSE)

MR. PALANGE:  For the record, it's truly imperative for my defense against child support that I cross-examine -- that I examine Ms. Iannone, who I understand is not available till July 1.

THE COURT:  Ms. Iannone is not the issue today, sir.  Today the issue is:  Are you going to -- do you have any more direct examination of yourself, because you were in the middle of it when we broke, or are you done?

MR. PALANGE:  I have more direct examination questions.

THE COURT:  Then come up and take the stand --

MR. PALANGE:  Thank you.

THE COURT:  -- and the Clerk will swear you in.

(DEFENDANT TAKES WITNESS STAND)

1  due process, that there's no written agreements.
2  It specifically states in our divorce agreement
3  that anything related to that has to be a written
4  agreement.
5          THE COURT: The Court sustained the
6  objection. Please move on to your next question.
7  Q.  Mr. Palange, can you summarize why you feel the
8  affidavit justifies you not paying child support
9  for the last, I think it's now, ten months that
10  you haven't had any visitation at all with your
11  daughter with the understanding that it was
12  punishment from Providence, you were told by
13  Rhode Island State Police.
14          MR. UPDEGROVE: Objection, Your Honor.
15          THE COURT: Sustained.
16 A.  And I'm going to say that --
17          THE COURT: Sustained.
18 Q.  To move on, answer the question in regards to give
19  me a summation.
20 A.  Summation is there's no just cause. Late for
21  school, late for --
22          MR. UPDEGROVE: Objection, Your Honor.
23          THE COURT: Sir, this is argument. This
24  is not testimony.
25          MR. PALANGE: I understand, Your Honor.

1    **THE COURT:**   This is argument.   You will be

2    free to make a closing argument when we're done

3    with the testimony.   But right now this is

4    testimony.   So please continue with your testimony.

5 Q.  Mr. Palange, can you read from the marital

6    settlement agreement --

7    **MR. UPDEGROVE:**   Objection as to relevancy,

8    Your Honor.

9 Q.  -- that costs $30,000 to draft --

10    **MR. UPDEGROVE:**   Objection as to relevancy,

11    Your Honor.

12 Q.  -- that specifically prohibits any verbal

13    contractual agreements being made regards.   Can

14    you find the section in --

15    **THE COURT:**   Sir, sir, child support is

16    always modifiable by the court regardless of what

17    your agreements are.   Anything dealing with your

18    minor child is modifiable by the court regardless

19    of what your agreements are.   That's the law in

20    Rhode Island.   So you may recall, or you may not

21    recall, that when you entered that property

22    settlement agreement, somebody would have asked

23    you, "Do you understand this agreement is

24    incorporated but not merged?   It's a separate

25    independent contract, other than matters relating

to your child which are always modifiable." That
is the law.

So the fact that there is something in your
property settlement agreement dealing with child
support or dealing with verbal or nonverbal
agreements, the Family Court always has
jurisdiction over your child, and you cannot waive
that in your agreement.

Now I'm done giving you legal advice. The
Court can read your property settlement agreement
if it wants to. The Court has it here. But the
basis of the child support motion was that
circumstances have changed, and the circumstance
that has changed is that your wife has had physical
placement of your child since whenever the order
entered, and a motion for child support was filed,
and that you don't have shared placement at this
time.

      MR. PALANGE:  Which she --

      THE COURT:  So please --

      MR. PALANGE:  Sorry.

      THE COURT:  This is not the time to argue,
sir.  I will tell you that at the last hearing you
said you were done with your direct examination.
So if you're not done and you'd like to present

1        **THE COURT:**  Okay.  Mr. Palange, do you

2  have any other witnesses?

3        **MR. PALANGE:**  I do, Your Honor, and I

4  apologize in advance for upsetting Your Honor, but

5  I'm going to insist upon calling Mr. Updegrove for

6  examination and not wait until the end of the trial

7  because I believe that his prosecution of me has

8  been malicious and vexatious and his pleadings

9  filed in violation of Rule 1, Truth in Pleadings,

10  So, therefore, my cross-examination or my direct

11  examination of him in regards to child support and

12  in regards to legal fees directly relates to his

13  truth in pleadings.

14        So, for the record, or let the record reflect

15  that I object to waiting until the end of the trial

16  to examine Mr. Updegrove.

17        **THE COURT:**  Okay.  You would certainly

18  need to convince me that there is some legitimate

19  reason for you to call Mr. Updegrove as a fact

20  witness on the motion for child support.  Let's

21  leave the attorneys fees aside for a moment.  A

22  fact witness.  Not as a witness you can argue with,

23  not as a witness you can complain about ethical

24  violations with, a fact witness.

25        So you need to put on the record for me what

1   facts relative to child support, which would be

2   Plaintiff's income, Plaintiff's expenses,

3   Defendant's income, Defendant's expenses.  What

4   facts relating to those things do you expect

5   Mr. Updegrove to be able to present different from

6   what you or your former wife were able to present

7   that would not impinge on the attorney/client

8   confidentiality?

9        Because, off the top of my head, I cannot

10  imagine any information, any factual information,

11  that Mr. Updegrove would have with regard to his

12  client's income or expenses that were not provided

13  to him by his client, which is protected by the

14  attorney/client privilege, or which would not be

15  within the realm of your knowledge which you could

16  testify to.

17       **MR. PALANGE:**  Your Honor, I think that

18  his testimony would elicit evidence that at the

19  beginning of this trial, both before and during the

20  emergency motion and subsequently, that he has

21  maliciously and vexatiously litigated this matter,

22  contributing to significant more child support than

23  would have been necessary had it been not -- had it

24  not been maliciously and vexatiously prosecuted.

25       **THE COURT:**  The motions that Mr. Updegrove

CAROLE A. MALAGA, STENOGRAPHER (401) 782-4191

1       **THE COURT:** We're not doing this. We're

2   on trial now, Mr. Palange. You don't seem to

3   understand that. You keep talking about discovery.

4   The motions were filed months ago. The trial was

5   set down months ago. We're going to finish the

6   trial relating to child support.

7       Now, he has rested his case. He has put on

8   the evidence that he felt was necessary in order to

9   support a claim for child support. You are in the

10   midst of your case, or maybe you're done with your

11   case, with regard to child support. That's what

12   we're here for right now. With regard to any other

13   issues including custody, placement, and parenting

14   time, those issues right now are not before the

15   Court.

16       So, do you have, again, any evidence that

17   Mr. Updegrove has fact information that would make

18   him a fact witness relating to income and expenses

19   of either you or Ms. Palange that would not be

20   protected by the attorney/client privilege?

21       **MR. PALANGE:** To answer your question,

22   Your Honor, no, I do not.

23       **THE COURT:** Okay. Then you can't call him

24   as a witness; he's her attorney in this case.

25       So for purposes of going forward on the issue

1    of child support, do you have any other witnesses?

2              MR. PALANGE:  I just want the record to

3    reflect that I feel, if I could call Lois Iannone,

4    that her testimony would be supportive that I don't

5    owe child support.

6              THE COURT:  Okay.  What fact

7    information -- she -- her role as Guardian Ad Litem

8    had nothing to do with Ms. Palange's income and

9    expenses or your income and expenses.  So right

10   now, what fact information do you have, do you

11   believe that Ms. Iannone has, relating to income

12   and expenses of you or Miss Palange that could not

13   be put on through other witnesses?

14             I understand you have a right to call her in

15   terms of the custody, placement, and parenting

16   time.  I've already said we're putting that aside

17   because you want to call her.  But what facts, what

18   information do you believe she would have, because

19   that is outside the scope of her role as Guardian

20   Ad Litem.

21             MR. PALANGE:  Your Honor, the same as

22   Mr. Updegrove, without time to think about it and

23   do more research, I don't have --

24             THE COURT:  Sir, you've had a month since

25   the last trial date.  I'm not giving you more time,

1   because I believe that you are trying deliberately

2   to delay the conclusion of this trial.  You've had

3   a month to think about who you wanted to put on as

4   witnesses.

5       Do you have any other witnesses to put on with

6   regard to the issue of child support?

7           MR. PALANGE:  I do not.  And I object to

8   the Judge characterizing me as trying to slow down

9   anything.  I'm trying to be the best, most

10  aggressive defense of the child's interest,

11  including, if that means having to upset the

12  Judge constantly.  But I'm honestly doing what I

13  think is in the best interest of the child.

14          THE COURT:  You're not upsetting me

15  constantly, Mr. Palange, but that is my

16  observation.  Today it is quarter after three.  We

17  had today set aside as trial.  You've known about

18  the date for a month.

19      Do you have any other witnesses with regard

20  to the child support issue?  Because if you do not,

21  I'm going to go back to Mr. Updegrove to see if he

22  has any rebuttal.

23          MR. PALANGE:  I do not, Your Honor.

24          THE COURT:  Thank you.  You rest?  You

25  rest?

1          (NO RESPONSE HEARD)

2          THE COURT:  Mr. Palange, I'm asking you a

3    question.

4          MR. PALANGE:  Oh, my God, I didn't know.

5    I'm sorry.

6          THE COURT:  You rest?

7          MR. PALANGE:  Yes, I do.

8          THE COURT:  Okay.

9          MR. PALANGE:  Yes, I do, Your Honor.

10         THE COURT:  Okay.  Mr. Updegrove?

11         MR. UPDEGROVE:  No rebuttal, Your Honor.

12         THE COURT:  No rebuttal.  Then what I'm

13   going to need is a proposed child support guideline

14   worksheet.  Have you done that, Mr. Updegrove?

15         MR. UPDEGROVE:  Yes, I have, Your Honor.

16   If the Court will bear with me, I have to find it.

17         (ATTORNEY UPDEGROVE PERUSING DOCUMENTS)

18         MR. PALANGE:  And, Your Honor, I have some

19   updated financials that I'd like to enter as an

20   exhibit.

21         THE COURT:  Well, that's when you're a

22   witness, sir.

23         MR. PALANGE:  Yes, I know.

24         THE COURT:  So are you telling me that you

25   need to be -- that you need to testify more?

1    your apartment when your divorce was finalized,

2    that you purchased through a loan at Cardi's, which

3    is financed through, as I recall your testimony,

4    Synchrony Bank, which paid -- which your company

5    paid $7,394 towards in 2018, again, out of TLIC

6    2472, is that a business expense as well?

7  A.  I don't know.  I'd have to look at that closely.

8              MR. UPDEGROVE:  Okay.  Okay.

9  A.  But, if anything, it shows that I do take care of

10   the best interest of the child.  And I maybe have

11   over-purchased on her bedroom, which the Ad Litem

12   never saw, by the way, because she never visited my

13   home.

14             THE COURT:  Sir, please confine yourself

15   to the question.

16             MR. PALANGE:  Sorry.  Thank you.

17 Q.  Now --

18             THE COURT:  If you think you're helping

19   yourself by just talking, you're not.

20             MR. PALANGE:  I understand, Your Honor.

21 Q.  Now, your American Express account that is listed

22   in the name of TLIC Worldwide, Inc., second line

23   Steve Palange, that account we put all of 2018

24   statements into evidence.

25             Do you recall that?

CAROLE A. MALAGA, STENOGRAPHER  (401) 782-4191

1                MR. UPDEGROVE:  No.

2                THE COURT:  Okay.  So have you prepared a

3  proposed child support guideline worksheet?

4                MR. UPDEGROVE:  Yes, I have, Your Honor,

5  I'm --

6                THE COURT:  Okay.

7                (DOCUMENT HANDED TO DEFENDANT)

8                MR. UPDEGROVE:  May the record reflect I'm

9  providing Mr. Palange with a copy of the child

10  support guidelines worksheet that I had prepared,

11  and I've provided one to the Clerk to provide to

12  the Court.

13                (DOCUMENT HANDED TO THE CLERK)

14                MR. PALANGE:  And, Your Honor, as a matter

15  of record, I do object to it because it was

16  composed prior to getting any updated financials

17  from my company.  What I was able to pay a year ago

18  is five full-time employees less than I'm able to

19  generate today.

20                THE COURT:  Mr. Palange, this is simply

21  part of what I would call Mr. Updegrove's argument.

22  I asked for a proposed child support guideline

23  worksheet, which he has provided, which I am

24  assuming, Mr. Updegrove, you're suggesting

25  Mr. Palange should pay beginning from the time you

1   filed your motion to now?

2          MR. UPDEGROVE:  That's correct, Your

3   Honor.  There is an outstanding order from the

4   31st, I believe, of October that made all child

5   support orders retroactive to the date of the

6   filing in May.  In fact, that order specifically

7   set an amount of child support that Mr. Palange was

8   supposed to pay.  It was based on $120,000 a year

9   annual income, because we had not been able to

10  obtain any financial information from him.  Since

11  we've received that, Your Honor, and those

12  documents are in evidence, which is his TLIC

13  account statements, his Amex statements, and his,

14  at least, 2017 corporate income tax returns,

15  Your Honor, this information is consistent with

16  those exhibits.

17         THE COURT:  Okay.  So that order, as I

18  recall, was a nonprejudicial order --

19         MR. UPDEGROVE:  That's correct.

20         THE COURT:  -- because he didn't have all

21  the information.  And you are asking that the child

22  support be set at the amount set forth in your

23  proposed child support guideline worksheet

24  retroactive to May of 2019?

25         MR. UPDEGROVE:  That's correct.

CAROLE A. MALAGA, STENOGRAPHER  (401) 782-4191

1          **THE COURT:**   And your position is that

2    Mr. Palange has not paid any child support.   Is

3    that correct?

4          **MR. UPDEGROVE:**   Absolutely.

5          **THE COURT:**   Well, Mr. Palange, have you

6    prepared proposed child support guideline

7    worksheets, one or more?

8          **MR. PALANGE:**   Your Honor, my case is I

9    wouldn't prepare a worksheet like that because I

10   don't owe child support because this is a violation

11   of res judicata.   We've already litigated, spent

12   $30,000 litigating the exact same thing here before

13   us today, whether I provide lunch for my daughter

14   or whether I get her to school on time, and shared

15   placement, shared custody, everything else.   I

16   don't owe child support today because this is --

17   my case is -- that I will prove -- it's a violation

18   of res judicata and collateral estoppel.

19         **THE COURT:**   Okay.   So your position is,

20   just so I'm clear, that it doesn't matter how much

21   money you're making or not making, that you don't

22   owe any child support based on the agreement that

23   you made with your former wife when you got

24   divorced, neither one of you owes any child support

25   to the other?

1      MR. PALANGE: No, that's not true,

2  Your Honor.

3          THE COURT: Okay.

4      MR. PALANGE: I don't owe child support

5  because there was no just cause, and there was

6  violations of due process since May 9, 2018.

7          THE COURT: I thought you just said you

8  were arguing res judicata because there was an

9  agreement. Didn't you just say that a minute ago,

10 that that was your argument?

11     MR. PALANGE: I -- they are both the same,

12 Your Honor. I'm sorry, I didn't know I was

13 exclusive. But there is multiple, multiple --

14 including violations of due process -- multiple

15 reasons why I don't owe child support currently.

16         THE COURT: Okay. So the first reason is?

17     MR. PALANGE: Just cause.

18         THE COURT: And the just cause is?

19     MR. PALANGE: Who's to say I didn't, did

20 not provide her lunch on that field trip, or how

21 many times I was late as compared to the Plaintiff.

22 I had my child taken away because, the fourth item

23 on the complaint was, "he's late to school." Well,

24 how many times was the Plaintiff late to school?

25 And is that just cause to lose custody of your

1    child for a year?

2              THE COURT:  So your argument, your first

3    argument, is that you don't owe child support

4    because the shared placement never should have been

5    changed?

6              MR. PALANGE:  Correct, yes, Your Honor.

7              THE COURT:  And what's your second

8    argument?

9              MR. PALANGE:  My second argument, there

10   was no just -- actually, my first argument is no

11   just cause.  There was simply no just cause to take

12   my child and then force me into paying her

13   boyfriend an income.

14             THE COURT:  We just said that.  What's

15   your second argument?

16             MR. PALANGE:  Second argument is

17   misrepresentation by my attorney, which was

18   excusable neglect for me not filing a variety of

19   these back in the May/June time frame and trusting

20   a lawyer who obviously misrepresented and

21   bordering on malpractice.

22             THE COURT:  What's that got to do with

23   whether you owe child support?

24             MR. PALANGE:  Had I not been misrepresented

25   from the very beginning, I feel we would not be

1    here today and my child would be with me today.

2              **THE COURT:**  Okay.  So your second argument

3    is that were it not for your attorney's actions or

4    inaction, the shared placement never would have

5    been changed and, therefore, you don't owe child

6    support?

7              **MR. PALANGE:**  Correct.

8              **THE COURT:**  Okay.  Any other arguments?

9              **MR. PALANGE:**  I'm sure there are other

10   legal valid reasons.  I only care about valid legal

11   reasons, not even moral, ethical.  But I guarantee

12   that over -- throughout our trial, I will present

13   evidence of additional reasons.

14             **THE COURT:**  The trial, as far as I'm

15   concerned, is done, because you had rested, and

16   Mr. Updegrove had no rebuttal.  And then you had

17   forgotten about this additional financial

18   information that you wanted to put in; so I allowed

19   you to come back on the stand.  You finished asking

20   yourself questions.  Mr. Updegrove cross-examined

21   you.  And then you rested again, and he rested

22   again.  And he has no rebuttal, and you have

23   nothing further.  You're all done with evidence

24   on this issue.

25             **MR. PALANGE:**  Correct.

1      **THE COURT:**  But at this point in time,

2    we're dealing with child support, based on the

3    current circumstances.  You told me your two

4    arguments, which are:  One, shared placement never

5    should have been changed and, therefore, you don't

6    owe child support.  Number two, the attorney you

7    had, by her actions or inactions, put you in this

8    situation; and if she had done her job, you would

9    never have owed child support because shared

10   placement wouldn't have been changed.

11       Those are the two arguments I have from you.

12   And I want to know if you have any other arguments.

13       **MR. PALANGE:**  I do.  Plaintiff lied in her

14   complaint and affidavit, which prompted the judge

15   to believe her facia-something and take my child

16   way, therefore, immediately making sure I give her

17   boyfriend money.  She lied on her complaint and

18   affidavit.  It's not true about the late more, and

19   I think it is true about the lunch too, school

20   trip.  But the rest of the things on the complaint

21   and the affidavit are all lies.  And they're all

22   meant maliciously and vexatiously in order to get

23   child support so that she has some income, because

24   her boyfriend doesn't get -- a make a penny.

25       **THE COURT:**  Anything else, Mr. Palange?

CAROLE A. MALAGA, STENOGRAPHER  (401) 782-4191